Shawn Larsen-Bright, OSB 130051
Dorsey & Whitney LLP
701 Fifth Avenue, Suite 6100
Seattle, WA 98104-7043
(206) 903-8800
larsen.bright.shawn@dorsey.com

Christopher G. Karagheuzoff (pro hac vice
forthcoming)
karagheuzoff.christopher@dorsey.com
Christopher Paolino (pro hac vice forthcoming)
paolino.christopher@dorsey.com
John Mixon (pro hac vice forthcoming)
Mixon.John@dorsey.com
Dorsey & Whitney LLP
51 West 52nd Street
New York, NY 10019
Telephone: (212) 415-9200

*Attorneys for Defendant Feel the
World, Inc. d/b/a Xero Shoes*

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

**PORTLAND DIVISION**

| | |
|---|---|
| LEON WEINGRAD, individually and on behalf of a class of all persons and entities similarly situated, | Civ. No. 3:26-cv-00001-SB |
| Plaintiff, | |
| vs. | **DEFENDANT'S MOTION TO DISMISS THE COMPLAINT AND/OR STRIKE OR DISMISSS PLAINTIFF'S CLASS ALLEGATIONS** |
| FEEL THE WORLD, INC. d/b/a XERO SHOES, | |
| Defendant. | |

DEFENDANT'S MOTION TO DISMISS AND/OR STRIKE
Civ. No. 3:26-cv-00001-SB

**TABLE OF CONTENTS**

LR 7-1 CERTIFICATION ...................................................................................................1

LR 7-2(b) CERTIFICATION ..............................................................................................1

MOTION TO DISMISS .......................................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES .......................................................1

I.      PRELIMINARY STATEMENT ...............................................................................1

II.     FACTUAL BACKGROUND....................................................................................5

      A.      Plaintiff Consented to Xero Shoes' Text Messages...................................5
      B.      The Complaint's Misrepresentations ........................................................8
      C.      Plaintiff Is a Serial TCPA Plaintiff who Manufactured this Lawsuit ......9

III.    ARGUMENT ...........................................................................................................10

      A.      The Court Should Consider the Text Message Log, Plaintiff's  Prior TCPA
      Complaints, and Plaintiff's Prior Judicial Admissions. ..........................10

            1.      The Text Message Log...................................................................10
            2.      Plaintiff's Prior TCPA Complaints ...............................................12
            3.      Plaintiff's Prior Judicial Admissions ............................................14

      B.      Legal Standard ........................................................................................15

            1.      Rule 12(b)(6)..................................................................................15
            2.      Rule 12(f) .......................................................................................16

      C.      Plaintiff's Complaint Must Be Dismissed under Rule 12(b)(6) .............17

            1.      Plaintiff's Claims Fail Because He Consented to Xero Shoes'
                 Texts.................................................................................................17

                   a.      Plaintiff Consented to Xero Shoes' Texts.......................17
                   b.      Plaintiff Did Not Revoke his Consent .............................18

            2.      Separately, the Second Cause of Action Fails Because Xero Shoes
                Transmitted a CPN or ANI that Allowed Do-Not-Call Requests to
                Be Made During Regular Business Hours ......................................21
            3.      Separately, the First Cause of Action Fails Because Plaintiff Does
                 Not Allege that He Registered His Phone Number on the National
                DNC Registry..................................................................................23

i

DEFENDANT'S MOTION TO DISMISS AND/OR STRIKE
Civ. No. 3:26-cv-00001-SB

D.      Plaintiff's Class Allegations for Each of the Three Proposed Classes Should Be Stricken under Rule 12(f)........................................................................24

       1.     Plaintiff's Allegations Relating to the Proposed National DNC Class Must Be Stricken Because the Class Is Overbroad and Lacks Predominance..............................................................................................24

       2.     For Several Independently Sufficient Reasons, Plaintiff's Allegations Relating to the Proposed "Telemarketing Caller ID Class" Should Be Stricken..........................................................................28

       3.     For Several Independent Reasons, Plaintiff's Allegations Relating to the Proposed "Internal Do Not Call Class" or "Stop Class" Must Be Stricken..............................................................................................32

E.      Plaintiff's Class Allegations for Each of the Three Proposed Classes Must Be Dismissed under Rule 12(b)(6) ........................................................35

CONCLUSION......................................................................................................................36

ii

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ABC Distrib., Inc. v. Living Essentials LLC*,
  2017 WL 2603311 (N.D. Cal. Apr. 7, 2017) ........................................................................32

*B.N. v. Oregon Reproductive Medicine, LLC*,
  2025 WL 3165965 (D. Or. Nov. 12, 2025).............................................................................15

*Barnes v. Coca-Cola Company*,
  2025 WL 1027431 (E.D. Cal. Apr. 7, 2025)...........................................................................16

*Barton v. LeadPoint, Inc.*,
  2022 WL 123352 (W.D. Wash. Jan. 13, 2022), *aff'd*, 2023 WL 4646103 (9th
  Cir. July 20, 2023) ................................................................................................................17

*Brown v. Nano Hearing Tech Opco, LLC*,
  2024 WL 3367536 (S.D. Cal. July 9, 2024) ..........................................................................29

*Chehalem Physical Therapy, Inc. v. Coventry Health Care, Inc.*,
  2011 WL 13253445 (D. Or. Jan. 21, 2011) ...........................................................................26

*Chennette v. Porch.com, Inc.*, 50 F. 4th 1217 (9th Cir. 2022)
  50 F. 4th 1217 (9th Cir. 2022) ..............................................................................................31

*Cubbage v. Talbots, Inc.*,
  2010 WL 2710628 (W.D. Wash. July 7, 2010) ......................................................................28

*Dobronski v. SelectQuote Insurance Services*,
  2024 WL 3843119 (E.D. Mich. June 27, 2024)......................................................................24

*Eldridge v. Cabela's Inc.*,
  2017 WL 4364205 (W.D. Ky. Sept. 29, 2017)........................................................................34

*Epps v. Earth Fare, Inc.*,
  2017 WL 1424637 (C.D. Cal. Feb. 27, 2017)................................................................. *passim*

*Ginwright v. Exeter Fin. Corp.*,
  280 F. Supp. 3d 674 (D. Md. 2017)........................................................................................27

*Hornberger v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
  2015 WL 13310465 (C.D. Cal. Jan. 22, 2015), *aff'd*, 677 F. App'x 336 (9th
  Cir. 2017)...............................................................................................................................14

*Hovila v. Tween Brands, Inc.*,
2010 WL 1433417 (W.D. Wash. Apr. 7, 2010).................................................................28

*Kirts v. Green Bullion Fin. Servs., LLC*,
2010 WL 3184382 (S.D. Fla. Aug. 3, 2010).....................................................................30

*Kraetsch v. United Serv. Auto. Ass'n*,
2015 WL 1457015 (E.D. Mo. Mar. 30, 2015) ..................................................................32

*Leon v. Loandepot.com, LLC*,
2025 WL 2632396 (C.D. Cal. Aug. 22, 2025) (9th Cir. 2010).....................................16, 25

*Leyse v. Bank of Am., Nat'l Ass'n*,
2020 WL 1227410 (D.N.J. Mar. 13, 2020), *aff'd*, 856 F. App'x 408 (3d Cir.
2021) .................................................................................................................................27

*Lindsay Transmission, LLC v. Off. Depot, Inc.*,
2013 WL 275568 (E.D. Mo. Jan. 24, 2013) .....................................................................27

*Mad Rhino, Inc. v. Best Buy Co.*,
2008 WL 8760854 (C.D. Cal. Jan. 14, 2008) ..................................................................32

*Mantolete v. Bolger*,
767 F.2d 1416 (9th Cir. 1985) ..........................................................................................30

*Murch v. GPS Cap. Markets, LLC*,
2025 WL 2466576 (D. Or. June 6, 2025), *report and recommendation
adopted in part, rejected in part on other grounds*, 2025 WL 2770190 (D. Or.
Sept. 26, 2025) .......................................................................................................... *passim*

*National Labor Relations Board v. Oregon*,
2020 WL 5994997 (D. Or. Oct. 9, 2020)..........................................................................15

*Naylor v. Flavan*,
2009 WL 1468708(C.D. Cal. May 19, 2009) ...................................................................15

*Nyachira v. New Prime, Inc.*,
2022 WL 19239768 (W.D. Mo. Nov. 7, 2022)...................................................................32

*Parkinson v. Hyundai Motor Am.*,
258 F.R.D. 580 (C.D. Cal. 2008)......................................................................................31

*Pepka v. Kohl's Dep't Stores, Inc.*,
2016 WL 8919460 (C.D. Cal. Dec. 21, 2016) ..................................................................26

iv

DEFENDANT'S MOTION TO DISMISS AND/OR STRIKE
Civ. No. 3:26-cv-00001-SB

*Rando v. Edible Arrangements Int'l, LLC*,
2018 WL 1523858 (D.N.J. Mar. 28, 2018)..............................................................................20

*Revitch v. Citibank*,
2019 WL 1903247 (N.D. Cal. Apr. 28, 2019) .........................................................................27

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*,
442 F.3d 741 (9th Cir. 2006) ..................................................................................................12

*Rogers v. Assurance IQ, LLC*,
2023 WL 2646468 (W.D. Wash. Mar. 27, 2023) ...................................................................23

*Rombough v. Robert D. Smith Ins. Agency, Inc.*,
2022 WL 2713278 (N.D. Iowa June 9, 2022)..........................................................................23

*Sallie Holly v. Alta Newport Hosp., Inc.*,
2020 WL 6161457 (C.D. Cal. Oct. 21, 2020).........................................................................30

*Schroeder v. Envoy Air, Inc.*,
2016 WL 11520388 (C.D. Cal. Sept. 27, 2016) .....................................................................32

*Selby v. Ocwen Loan Servicing, LLC*,
2017 WL 5495095 (S.D. Cal. Nov. 16, 2017) ........................................................................31

*Somers v. Apple, Inc.*,
729 F.3d 953 (9th Cir. 2013) ..................................................................................................15

*Sorsby v. TruGreen Limited Parnership*,
2023 WL 130505 (N.D. Ill. Jan. 9, 2023)...............................................................................28

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016)................................................................................................................31

*Stewart v. Network Cap. Funding Corp.*,
549 F. Supp. 3d 1058 (C.D. Cal. 2021) .................................................................................21

*Taylor v. Penske Logistics, LLC*,
No. 5:20-cv-02623, 2021 WL 4288525 (C.D. Cal. Sept. 21, 2021)......................................35

*Todd v. Whitaker*,
2016 WL 4216777 (D. Or. Aug. 8, 2016)...........................................................................15, 16

*Van Patten v. Vertical Fitness Grp., LLC*,
847 F.3d 1037 (9th Cir. 2017) ...........................................................................................19, 21

v

*Viggiano v. Kohl's Dep't Stores, Inc.*,
   2017 WL 5668000 (D.N.J. Nov. 27, 2017) ........................................................................20, 21

*Zemel v. CSC Holdings LLC*,
   2018 WL 6242484 (D.N.J. Nov. 29, 2018) ............................................................................18

**Statutes**

47 U.S.C. § 227(c)(5)..............................................................................................................24

47 C.F.R. § 64.1200(c)(2).................................................................................................23, 24

47 C.F.R. § 64.1200(f)(15) .....................................................................................................24

47 C.F.R. § 64.1601(e)(1).......................................................................................................22

Fed. R. Civ. P. 12(b)(1)...........................................................................................................11

Fed. R. Civ. P. 12(b)(6)................................................................................................... *passim*

Fed. R. Civ. P. 12(f)........................................................................................................ *passim*

Fed. R. Civ. P. 23(a)(3)...........................................................................................................29

Fed. R. Civ. P. 23(b)(3)...........................................................................................................26

Local Rule 7-2(b)......................................................................................................................1

## LR 7-1 CERTIFICATION

On March 11, 2026, counsel for Defendant Feel the World, Inc. d/b/a Xero Shoes ("Xero Shoes" or "Defendant") conferred with counsel for Plaintiff Leon Weingrad ("Plaintiff" or "Weingrad") via telephone, and discussed all of the disputed issues asserted in this Motion to Dismiss the Complaint and/or Strike or Dismiss Plaintiff's Class Allegations (the "Motion"), but the parties were unable to reach a resolution, thus necessitating this Motion.

## LR 7-2(b) CERTIFICATION

I hereby certify that this brief complies with the applicable word-count limitation under Local Rule 7-2(b) because it contains 10,263 words, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of cases and authorities, signature block, exhibits, and any certificates of counsel.

## MOTION TO DISMISS

Xero Shoes respectfully submits this Motion to (1) dismiss Plaintiff's putative class action Complaint (Dkt. 1) in its entirety, pursuant to Fed. R. Civ. P. 12(b)(6); or, alternatively, (2) dismiss or strike Plaintiff's class allegations pursuant to Fed. R. Civ. P. 12(b)(6) and/or 12(f), respectively, as facially uncertifiable. Xero Shoes respectfully submits the following Memorandum of Points and Authorities in support of this Motion.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    PRELIMINARY STATEMENT

This is a classic "manufactured" lawsuit brought by serial plaintiff, Leon Weingrad – who has filed approximately 32 similar lawsuits under the Telephone Consumer Protection Act ("TCPA"). In his latest abuse of the judicial system, Plaintiff alleges three TCPA claims based on

1

DEFENDANT'S MOTION TO DISMISS AND/OR STRIKE
Civ. No. 3:26-cv-00001-SB

purportedly "unwanted" promotional text messages that Xero Shoes sent to Plaintiff.  Complaint, ¶ 40.  However, the log of text messages between Plaintiff and Xero Shoes ("Text Message Log"), which is incorporated by reference in the Complaint, makes clear that the Complaint is littered with blatant misrepresentations and frivolous allegations that are plainly contradicted by the parties' messages.  The texts irrefutably establish that Plaintiff consented to Xero Shoes' texts and that Xero Shoes' texts provided the requisite CPN or ANI information (*i.e.*, "caller identification information") and allowed Plaintiff to make a do-not-call request during regular business hours.  As a result, his claims fail as a matter of law.

While Plaintiff characterizes the messages as "unwanted," he conceals that he voluntarily engaged and frequently interacted with Xero Shoes in response to Xero Shoes' texts, including by responding "Ok," "Thanks," "Nice!" and "Hello" to receiving Xero Shoes' promotional texts, and by responding "I am" to Xero Shoes' message asking whether Plaintiff was receiving Xero Shoes' texts.  Based on these and other repeated and voluntary interactions with Xero Shoes, Plaintiff consented to receiving and invited further messages from Xero Shoes, such that he cannot state a TCPA claim.

Plaintiff also never revoked this consent.  He similarly conceals that Xero Shoes' messages repeatedly instructed "Reply STOP to stop" or explained that "If you would like to unsubscribe from all future messages, reply STOP," and that he never attempted to comply with these simple opt-out instructions.  Instead – and in a clear attempt to manufacture a TCPA claim – he responded "Wrong number" following his repeated interactions with Xero Shoes.  Further, when Xero Shoes affirmatively offered to assist Plaintiff with changing his account, which would include unsubscribing from Xero Shoes' future messages, Plaintiff ignored Xero Shoes' offer and did not

2

DEFENDANT'S MOTION TO DISMISS AND/OR STRIKE
Civ. No. 3:26-cv-00001-SB

mention that he wanted the messages to stop. The law is clear that where defendant offers a simple means by which plaintiff can opt-out of future communications, such as replying "STOP," and plaintiff fails to follow those instructions, as here, plaintiff's revocation is ineffective.

Regarding Plaintiff's Second Cause of Action, Plaintiff alleges that Xero Shoes violated the TCPA by sending marketing texts "without proving [sic] a CPN or ANI that allowed any individual to make a do-not-call request during regular business hours." Complaint, ¶ 76. However, Plaintiff's own allegations and the Text Message Log doom this claim. Plaintiff expressly alleges that Xero Shoes' text messages "transmitted the Caller ID, in the form of both CPN and ANI, as 65099" (Complaint, ¶ 25) and the Text Message Log makes clear that Xero Shoes' 65099 number permitted Plaintiff to make a "do-not-call request" during regular business hours (indeed, at any time Plaintiff wanted) by simply replying "STOP." Plaintiff deliberately elected not to properly submit a "do-not-call request."

Plaintiff's class allegations separately fail under either Rule 12(b)(6) and/or 12(f). Plaintiff proposes three classes, which generally cover: (1) individuals whose telephone numbers were on the National Do Not Call Registry ("National DNC Registry") but received certain communications from Xero Shoes ("National DNC Class"); (2) individuals who received communications from Xero Shoes, which either (a) did not transmit a CPN or ANI at all or (b) transmitted a CPN or ANI that did not allow an individual to make a do-not-call request during regular business hours ("Telemarketing Caller ID Class"); and (3) individuals who received messages from Xero Shoes, but previously asked for Xero Shoes' texts to stop ("Internal Do Not Call Class" or "Stop Class").

3

DEFENDANT'S MOTION TO DISMISS AND/OR STRIKE
Civ. No. 3:26-cv-00001-SB

The National DNC Class fails because, *inter alia*, it is overbroad, as the proposed class would cover individuals even if they had an existing business relationship with Xero Shoes or consented to Xero Shoes' texts, and thus, who have no viable TCPA claim against Defendant.

The Telemarketing Caller ID Class fails because, *inter alia*, the Complaint fails to allege facts suggesting that Xero Shoes sent any marketing texts without providing a CPN or ANI that allowed recipients to make a do-not-call request during regular business hours. Moreover, even assuming *arguendo* that Xero Shoes had sent such texts, Plaintiff would not be a member of this class and so cannot bring a claim on its behalf.

The Stop Class fails because, *inter alia*, the Complaint fails to allege facts suggesting that Xero Shoes improperly texted anyone who had actually asked for Xero Shoes' texts to stop. Again, even assuming *arguendo* that Xero Shoes had sent such texts, Plaintiff would not be a member of this class either and so cannot bring a claim on its behalf.

The putative class claims also fail because the Complaint makes clear that common questions of law and fact would be swamped by individual class member issues, including as to issues of consent, the revocation of consent, and the existence of a business relationship.

For the foregoing reasons, as further detailed below, the Complaint should be dismissed in its entirety. At a minimum, the class claims should be stricken.

DEFENDANT'S MOTION TO DISMISS AND/OR STRIKE
Civ. No. 3:26-cv-00001-SB

## II.    FACTUAL BACKGROUND

### A.    Plaintiff Consented to Xero Shoes' Text Messages

Plaintiff's purported TCPA claims arise from Xero Shoes' texts to Plaintiff's "503-telephone number" ("503 Number"). Complaint, ¶ 4.[1] "[Plaintiff] obtained the [503 Number] in July of 2024." Karagheuzoff Dec., Ex, A, ¶ 6. Thereafter, Xero Shoes sent promotional texts to the 503 Number, and Plaintiff alleges that these texts "transmitted the Caller ID, in the form of both CPN and ANI, as 65099." Complaint, ¶ 25.

Plaintiff has been engaged in mutual text exchanges with Xero Shoes. In response to Xero Shoes' messages, he made it appear (presumably, falsely) that he was interested in Xero Shoes' products, and invited further texts from Xero Shoes. *See* Sega Dec., Ex. 1, p. 3. For example, in August 2024, Xero Shoes sent a text stating "Xero Shoes: Save 20%+ on new Xero Shoes fall styles. PLUS...save an EXTRA 5% when you buy 2 or more new styles. Shop now!" *Id*. Plaintiff responded "Ok" to receiving this promotional text. *Id*. Xero Shoes responded "Xero Shoes: This is an automated message from Xero Shoes. If you need additional help, email us at support@xeroshoes.com. Reply STOP to stop." *Id*. Plaintiff did not reply "STOP"; instead, he continued interacting with Xero Shoes. *Id.*

---

[1] The full, unredacted 503 Number is disclosed on the docket in a separate TCPA lawsuit that Plaintiff commenced. *See* the Declaration of Christopher G. Karagheuzoff, sworn to on March 17, 2026 ("Karagheuzoff Dec."), Ex, B, pp. 1, 3. Plaintiff's number identified in *Weingrad v. QuoteWizard.com, LLC* is identical to the number associated with the Text Message Log and thus, the number that Xero Shoes texted. *Compare id.*, p. 1 *with* the Declaration of Andrew Sega, sworn to on March 16, 2026 ("Sega Dec."), ¶ 3.

DEFENDANT'S MOTION TO DISMISS AND/OR STRIKE
Civ. No. 3:26-cv-00001-SB

Xero Shoes then texted Plaintiff "Xero Shoes: Hi!  How can I assist you today?"  *Id*.  When Xero Shoes did not obtain a response, Xero Shoes sent a follow-up text stating "Xero Shoes: Hi Joseph, We hope you are doing well!  We messaged you a few days ago but haven't heard back.  We wanted to check in to see if you are receiving our messages.  Let us know if there is anything else we can do to help."  *Id*.[2]  Plaintiff responded "I am," yet he did not seek Xero Shoes' "help" to stop future texts.  Sega Dec., Ex. 1, p. 3.  Xero Shoes, again, responded "Xero Shoes: This is an automated message from Xero Shoes.  If you need additional help, email us at support@xeroshoes.com.  Reply STOP to stop."  *Id.*  Plaintiff, again, did not reply "STOP"; instead, he continued interacting with Xero Shoes.  *Id*.  Xero Shoes responded "Xero Shoes: Thank you for letting us know.  Have a great day!"  Plaintiff responded "You two [sic]."  *Id*.  Xero Shoes, again, responded "Xero Shoes: This is an automated message from Xero Shoes.  If you need additional help, email us at support@xeroshoes.com.  Reply STOP to stop."  *Id*.  Again, Plaintiff did not reply "STOP."  *Id*.

In November 2024, Xero Shoes texted Plaintiff "Xero Shoes: Say so long to 2024 and start gearing up for 2025. Save 10% or more when you shop Xero Shoes today. https://xeroshoes.attn.tv/aSU_gJIx4CPa."  *Id*.  Instead of replying "STOP," Plaintiff responded "Nice!" – continuing to lead Xero Shoes to believe that he was interested in Xero Shoes' products and inviting further texts from Xero Shoes.  *Id*.  Xero Shoes, again, responded "Xero Shoes: This is an automated message from Xero Shoes. If you need additional help, email us at

---

[2] As set forth in Plaintiff's March 5, 2025 Declaration in *Weingrad v. QuoteWizard.com, LLC*, "[Plaintiff] believe[s]" that an individual named "Joseph Arnold" "was the previous person to whom [his 503 Number had been] assigned."  *See* Karagheuzoff Dec., Ex, A, ¶ 28.

6

DEFENDANT'S MOTION TO DISMISS AND/OR STRIKE
Civ. No. 3:26-cv-00001-SB

support@xeroshoes.com.  Reply STOP to stop."  Plaintiff, again, did not reply "STOP"; instead, he continued interacting with Xero Shoes, texting back "Hello," which clearly invited a further response from Xero Shoes.  *Id*.  Xero Shoes responded "Xero Shoes: How can we help today?"  *Id*.  Plaintiff did not respond to Xero Shoes' offer to help.  *Id*.

In December 2024, Xero Shoes texted Plaintiff "Xero Shoes: Need an easy gift idea?  Give the gift of life-changing comfort with a Xero Shoes eGift Card.  https://xeroshoes.attn.tv/alq-NczgB2Wy."  *Id*.  Plaintiff texted back "Thanks."  *Id*.  Xero Shoes, again, responded "Xero Shoes: This is an automated message from Xero Shoes.  If you need additional help, email us at support@xeroshoes.com. Reply STOP to stop."  Xero Shoes also texted "Xero Shoes: Hi Joseph, no problem.  Should you have any further questions or concerns, please don't hesitate to reach out.  Take care!"  *Id*.  Again, Plaintiff did not reply "STOP" and did not respond with any "concerns," including any purported concerns that he had about receiving Xero Shoes' texts.

In November 2025, Xero Shoes texted "Xero Shoes: Our Gift Guide just dropped!  Holiday-ready styles for men, women & kids - all built for natural comfort. Shop Now: xeroshoes.attn.tv/a9iPlMDIbFkI."  *Id*.  Plaintiff did not reply "STOP," as Xero Shoes previously made clear would end further Xero Shoes communications; he simply texted "Wrong number."  *Id*.  Xero Shoes responded "Xero Shoes: If you would like to unsubscribe from all future messages, reply STOP."  *Id*.  Again, Plaintiff did not reply "STOP."  *Id*.  Xero Shoes followed up with Plaintiff, stating "Xero Shoes: Hi Joseph, Thanks for reaching out!  Feel free to let us know if you have any questions or need an account change.  We'd be happy to help!"  *Id*.  Plaintiff never responded to Xero Shoes' offer to assist with an account change, including unsubscribing from Xero Shoes' future texts.  *Id*.

DEFENDANT'S MOTION TO DISMISS AND/OR STRIKE
Civ. No. 3:26-cv-00001-SB

Instead, on January 30, 2026, nearly ***three weeks after*** Xero Shoes' last text message to Plaintiff, Plaintiff sent an unprompted text message to Xero Shoes stating "Please halt these texts please. They are disturbing my life." Sega Dec., Ex. 1, p. 4.

**B.      The Complaint's Misrepresentations**

On January 1, 2026, Plaintiff filed the Complaint, alleging three TCPA claims. In the Complaint, he (falsely) claims that he only sent Xero Shoes one text message – *i.e.*, the "wrong number" text. Complaint, ¶ 21. In so doing, Plaintiff conceals his repeated interactions with Xero Shoes, specifically in response to Xero Shoes' promotional texts, which cannot be construed as anything other than an interest in Xero Shoes' products and an invitation for further texts.

Plaintiff also conceals Xero Shoes' multiple messages that made clear that "If [Plaintiff] [wanted] to unsubscribe from all future messages," all he needed to do was simply "reply STOP." Instead, Plaintiff falsely alleges that "[i]t is not possible to send a text message to [Xero Shoes' 65099] number and lodge a Do Not Call request during regular business hours" (Complaint, ¶ 28), and does not inform the Court that he never replied "STOP," despite Xero Shoes' standard, clear instructions on how to submit a do-not-call request. Plaintiff also conceals that Xero Shoes sent additional messages directly in response to each of Plaintiff's messages that offered assistance, to which Plaintiff, again, could have simply replied "STOP" to end all text message communication.

Plaintiff falsely alleges "Nor will anybody texting or calling that [65099] telephone number receive an alternate number to call to lodge a Do Not Call request during regular business hours." Complaint, ¶ 29. However, in response to Plaintiff's texts to Xero Shoes, Xero Shoes also repeatedly responded "If you need additional help, email us at support@xeroshoes.com." Sega

DEFENDANT'S MOTION TO DISMISS AND/OR STRIKE
Civ. No. 3:26-cv-00001-SB

Dec., Ex. 1, p. 3.  Plaintiff does allege that he emailed support@xeroshoes.com to submit a do-not-call request.

Plaintiff falsely alleges that his "wrong number" message "was ignored."  Complaint, ¶ 28. In response to that message, not only did Xero Shoes explain that "If you would like to unsubscribe from all future messages, reply STOP," but Xero Shoes also sent Plaintiff a separate message specifically offering to assist Plaintiff with any account changes.  Sega Dec., Ex. 1, p. 3.  Ironically, it was Plaintiff who "ignored" Xero Shoes' simple opt-out instructions and offer of assistance. Given his propensity to file these TCPA text message lawsuits, it is clear that he did so to further his attempt to manufacture grounds for yet another one.

The Complaint also includes a "Class Action Statement" (Complaint pp. 8-11), wherein Plaintiff formulaically recites class allegations, in conclusory fashion, regarding three defined classes.  As discussed below, the Complaint lacks any factual allegations and reasonable inferences that establish the plausibility of Plaintiff's class allegations.  *Infra*, 24-36.  In such circumstances, this Court previously has granted the defendant's motion to strike class allegations.  *See Murch v. GPS Cap. Markets, LLC*, 2025 WL 2466576, at *16-18 (D. Or. June 6, 2025) (recommending that the Court either dismiss under Rule 12(b)(6) or strike under Rule 12(f) Plaintiff's class allegations), *report and recommendation adopted in part, rejected in part on other grounds*, 2025 WL 2770190 (D. Or. Sept. 26, 2025).

### C.    Plaintiff Is a Serial TCPA Plaintiff who Manufactured this Lawsuit

Plaintiff has filed at least 32 similar TCPA class action lawsuits across the country, each alleging that Plaintiff received purportedly unwanted communications from various businesses. *See* Xero Shoes' Request for Judicial Notice, submitted contemporaneously herewith ("RJN"), pp.

9

3-4, 8-12.  Against this backdrop and in light of Plaintiff's voluntary engagement and repeated interactions with Xero Shoes, as well as his refusal to comply with Xero Shoes' simple opt-out instructions or respond to Xero Shoes' offers to assist with any account changes, it is clear that Plaintiff manufactured his TCPA claim.  Indeed, long after Plaintiff received any messages from Xero Shoes, Plaintiff – in furtherance of his attempt to manufacture a TCPA claim – sent an unprompted message to Xero Shoes stating "Please halt these texts please.  They are disturbing my life."  Sega Dec., Ex. 1, p. 4.  Tellingly, Plaintiff used the word "halt," not "STOP."  *Id.*

## III.    ARGUMENT

### A.    The Court Should Consider the Text Message Log, Plaintiff's Prior TCPA Complaints, and Plaintiff's Prior Judicial Admissions.

#### 1.    *The Text Message Log*

The Court should consider the text messages between Plaintiff and Xero Shoes in the Text Message Log because those messages are incorporated by reference in the Complaint.  Specifically, Plaintiff quotes these messages in the Complaint, he relies on them as the basis for his claim, and the log includes the full record of messages between the parties.  *See* RJN, 4-6; Sega Dec., Ex. 1, p. 3.

In *Epps v. Earth Fare, Inc.*, 2017 WL 1424637 (C.D. Cal. Feb. 27, 2017), the court took judicial notice of a similar log of text messages between a TCPA plaintiff and defendant (No. 2:16-cv-08221-SJO-SS, Dkt. 24-3, pp. 31-34), reasoning that:

> [T]he Court takes judicial notice of the text message log…because Plaintiff cites excerpts from and refers to these messages in the FAC.  *See Cotto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010) (considering materials incorporated into the complaint on a motion to dismiss)….  It is in the interest of justice for the Court to take judicial notice of the text message log because it is a full record of the messages—including Defendant's opt-out instructions, notably omitted from Plaintiff's FAC—that form the basis of Plaintiff's claims.  *See, e.g., Coto*, 593 F.3d

10

at 1038 (extending doctrine of incorporation by reference "where the complaint necessarily relies upon a document or the contents of the document are alleged in a complaint, the document's authenticity is not in question and there are no disputed issues as to the document's relevance").

*Id*., at \*2 (other citations omitted).

This Court considered a call transcript between a TCPA plaintiff and defendant on similar grounds on a motion under Rule 12(b)(1), 12(b)(6), and 12(f). *See Murch v. GPS Cap. Markets, LLC*, 2025 WL 2466576, at \*2, n.3 (D. Or. June 6, 2025), *report and recommendation adopted in part, rejected in part on other grounds*, 2025 WL 2770190 (D. Or. Sept. 26, 2025) ("The Court finds that it is appropriate to consider Murch's call transcript as incorporated by reference into her complaint based on her quotations from the call in the complaint and reliance on the call's content as the basis for her claim.") (citing *Branch v. Tunnell*, 14 F.3d 449, 453-54 (9th Cir. 1994) ("[D]ocuments whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss."), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002)); *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018) ("The [incorporation-by-reference] doctrine prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims.") (citations omitted).

Here, there can be no dispute that the messages between the parties in the Text Message Log are referred to in the Complaint (Complaint, ¶ 32), form the basis of Plaintiff's claims and are relevant (*see generally* Complaint), and that the Text Message Log provides a full record of the parties' communications – including Plaintiff's repeated interactions with Xero Shoes and Xero Shoes' instructions on how to submit a do-not-call request, which are notably omitted from the

11

Complaint. There also can be no dispute regarding the Text Message Log's authenticity as it concerns the messages between Plaintiff and Xero Shoes, as Plaintiff sent or received these messages. *See*, *e.g.*, Complaint, ¶ 32.

### 2. *Plaintiff's Prior TCPA Complaints*

The Court should judicially notice the 32 other TCPA complaints that Plaintiff has separately filed, which Xero Shoes introduces not for the truth of their contents, but to establish the complaints' existence and the similarity of their allegations and claims to those in this lawsuit. *See* RJN, pp. 3-4, 8-12. The *Epps* court similarly took judicial notice of plaintiff's prior TCPA complaints, where the defendant argued that plaintiff – a serial TCPA plaintiff, like Plaintiff here – "manufactured" his lawsuit. *Epps*, 2017 WL 1424637, at \*3. *Epps* explained:

> The Court takes judicial notice of Exhibits 1-3, which Defendant introduces solely for their existence and the similarity of the allegations and claims with those in this matter…. These three complaints are public documents filed in the District Court for the Central District of California, which are proper matters for judicial notice. *See*, *e.g.*, *In Re Icenhower*, 755 F.3d 1130, 1142 (9th Cir. 2014). Without considering the truth of their contents, the Court judicially notices the fact that, including the instant action, Plaintiff filed four TCPA lawsuits in district court between November 3, 2016 and December 6, 2016…. The complaints, including the instant one, each allege that: Plaintiff consented to receive automated commercial text messages from the respective defendants, the defendant sent these messages using an ATDS, and Plaintiff subsequently withdrew consent to receive further messages but continued to receive the messages.

*Id*., at \*2; *see also Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 (9th Cir. 2006) ("We may take judicial notice of court filings.").

Similar to this case, Plaintiff's 32 other complaints allege TCPA claims based on purportedly unwanted communications from the defendants in those cases. *See generally* RJN, pp. 3-4, 8-12. Many of the complaints allege claims arising from communications to Plaintiff's

12

DEFENDANT'S MOTION TO DISMISS AND/OR STRIKE
Civ. No. 3:26-cv-00001-SB

telephone number, which, like in this case, had a 503-area code.[3]  Certain of these complaints

allege that Plaintiff started receiving the purportedly unwanted communications to this number in

July of 2024 (*Leon Weingrad v. Yelp Inc.*, 1:24-cv-01330-YK, Dkt. 1 (M.D. Pa.), ¶¶ 23, 25; *Leon

Weingrad v. LifeWave, Inc.*, 3:25-cv-00752-AN, Dkt. 1 (D. Or.), ¶¶ 25, 29) – the same month that

Plaintiff admits that he obtained the 503 Number (Karagheuzoff Dec., Ex. A, ¶ 6).  As alleged in

certain of these "cut and paste" complaints, the defendants mistakenly referred to Plaintiff as

"Joseph" or "Joe," as Defendant did in this case.  *Compare Leon Weingrad v. BuyerLink Inc.*, 3:24-

cv-02114-IM, Dkt. 1 (D. Or.), ¶¶ 40, 42, 49; *Leon Weingrad v. LifeWave, Inc.*, 3:25-cv-00752-

AN, Dkt. 1 (D. Or.), ¶¶ 29, 30, 34 *with* Sega Dec., Ex. 1, p. 3.[4]

In certain complaints, Plaintiff quotes text messages that he allegedly received from the

defendants that include opt-out instructions that are similar to the ones in this case, yet by

Plaintiff's own allegations, he failed to comply with those instructions, as he did here.[5]  For

---

[3] *Leon Weingrad v. Denny's Inc.*, 3:26-cv-00342-JR, Dkt. 1 (D. Or.), ¶ 17; *Leon Weingrad v. BuyerLink Inc.*, 3:24-cv-02114-IM, Dkt. 1 (D. Or.), ¶ 28; *Leon Weingrad v. CHW Group, Inc.*, 3:25-cv-00370-HZ, Dkt. 1 (D. Or.), ¶ 26; *Leon Weingrad v. Tier One Insurance Company*, 4:25-cv-00124-CDL, Dkt. 1 (M.D. Ga.), ¶ 16; *Leon Weingrad v. Exact Care Pharmacy, LLC*, 2:25-cv-01843, Dkt. 1 (E.D. Pa.), ¶ 18; *Leon Weingrad v. Yelp Inc.*, 1:24-cv-01330-YK, Dkt. 1 (M.D. Pa.), ¶ 16; *Leon Weingrad v. SmartMatch Insurance Agency, LLC*, 1:24-cv-02067-YK, Dkt. 1 (M.D. Pa.), ¶ 19; *Leon Weingrad v. Quotewizard.com, LLC*, 1:25-cv-00002-YK, Dkt. 1 (M.D. Pa.), ¶ 28; *Leon Weingrad v. LifeWave, Inc.*, 3:25-cv-00752-AN, Dkt. 1 (D. Or.), ¶ 17; *Leon Weingrad v. DaBella Exteriors LLC*, 3:25-cv-00396-SI, Dkt. 1 (D. Or.), ¶ 16.

[4] As discussed above, "[Plaintiff] believe[s]" that an individual named "Joseph Arnold" "was the previous person to whom [his 503 Number had been] assigned."  Karagheuzoff Dec., Ex. A, ¶ 28.

[5] *Leon Weingrad v. Denny's Inc.*, 3:26-cv-00342-JR, Dkt. 1 (D. Or.), ¶¶ 21-22, 32; *Leon Weingrad v. Block Equity Group LLC*, 2:24-cv-02618-GRB-AYS, Dkt. 1 (E.D.N.Y.), ¶ 22; *Leon Weingrad v. Premium Merchant Funding One, LLC*, 2:24-cv-06247, Dkt. 1 (E.D. Pa.), ¶ 26; *Leon Weingrad v. Quotewizard.com, LLC*, 1:25-cv-00002-YK, Dkt. 1 (M.D. Pa.), ¶ 38; *Leon Weingrad v. Franchise Creator, LLC*, 1:25-cv-22746-CMA, Dkt. 1 (S.D. Fla.), ¶ 31.

13

DEFENDANT'S MOTION TO DISMISS AND/OR STRIKE
Civ. No. 3:26-cv-00001-SB

example, in *Weingrad v. Denny's Inc.*, Plaintiff quotes 12 messages that he allegedly received, all of which state: "Reply HELP for help or STOP to cancel." *Leon Weingrad v. Denny's Inc.*, 3:26-cv-00342-JR, Dkt. 1 (D. Or.), ¶ 32. Plaintiff does not allege that he responded by texting "STOP." Instead, Plaintiff alleges that "on November 1, 2025, the Plaintiff indicated to Defendant that it was likely communicating with a wrong number" (*id*. at ¶ 21) which is almost identical to Plaintiff's "wrong number" allegation in this case (Complaint, ¶ 21).[6] In *Weingrad v. Denny's Inc.*, Plaintiff also allegedly texted "No more texts please. This is disturbing my life," not "STOP." *Leon Weingrad v. Denny's Inc.*, 3:26-cv-00342-JR, Dkt. 1 (D. Or.), ¶ 22. Notably, Plaintiff sent a nearly identical text to Xero Shoes (unprompted) stating: "Please halt these texts please. They are disturbing my life." Sega Dec., Ex. 1, p. 4. Again, he deliberately used the word "halt," not "STOP." *Id.*

### 3. *Plaintiff's Prior Judicial Admissions*

The Court should consider Plaintiff's prior declaration that he filed in another TCPA lawsuit (*Weingrad v. QuoteWizard.com, LLC*, NO. 1:25-cv-00002-YK (M.D. Pa.)), along with a brief filed in that case. *See* RJN, pp 6-8; Karagheuzoff Dec., Exs. A-B. Specifically, the Court should consider Plaintiff's judicial admission – "declare[d] under penalty of perjury under the laws of the United States of America" – that "[Plaintiff] obtained the [503] [N]umber in July of 2024." *Weingrad v. QuoteWizard.com, LLC*, NO. 1:25-cv-00002-YK (M.D. Pa.), Dkt 16-2, ¶6, p. 6; *Hornberger v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 2015 WL 13310465, at *3 (C.D. Cal.

---

6 The only difference is that in this case, Weingrad sent his "wrong number" message on November 6, 2025 (Complaint, ¶ 21) – five days after the alleged "wrong number" text in *Weingrad v. Denny's Inc*.

DEFENDANT'S MOTION TO DISMISS AND/OR STRIKE
Civ. No. 3:26-cv-00001-SB

Jan. 22, 2015), *aff'd*, 677 F. App'x 336 (9th Cir. 2017) ("The Court will…consider the facts included in the Declaration as judicial admissions made by Plaintiff…. As judicial admissions these facts are conclusively binding upon the Plaintiff and may be considered in a motion to dismiss."); *Naylor v. Flavan*, 2009 WL 1468708, at *5 (C.D. Cal. May 19, 2009) (on Rule 12(b)(6) motion, considering admissions in plaintiff's declaration filed in separate action and holding that "Plaintiff's declaration under penalty of perjury in *Rainwater* constitutes a judicial admission that he was aware of that he had suffered bone density loss potentially caused by Lupron no later than the end of March 2003, following his bone density scan."); *see also supra*, n.1.

**B.      Legal Standard**

1.      *Rule 12(b)(6)*

Under Federal Rule of Civil Procedure 12(b)(6), "[w]here the plaintiff 'fails to state a claim upon which relief can be granted,' the court must dismiss the action." *National Labor Relations Board v. Oregon*, 2020 WL 5994997, *2 (D. Or. Oct. 9, 2020). Dismissal is warranted when a claim "either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013)). While courts must accept as true all factual allegations and draw all reasonable inferences in the non-moving party's favor, it need not accept as true "'threadbare recitals of a cause of action's elements, supported by mere conclusory statements.'" *B.N. v. Oregon Reproductive Medicine, LLC*, 2025 WL 3165965, *1 (D. Or. Nov. 12, 2025) (citation omitted). "'[A]llegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences'" are subject to dismissal. *Todd v. Whitaker*, 2016 WL 4216777, *2 (D. Or. Aug. 8, 2016) (citation omitted). The same is

15

true of allegations "'that contradict matters properly subject to judicial notice or by exhibit.'" *Id.* (citation omitted).

Courts will also "dismiss class allegations under the *Twombly/Iqbal* standard where the complaint 'lacks *any* factual allegations and reasonable inferences that establish the plausibility of class allegations.'" *Murch*, 2025 WL 2466576, at *14 (emphasis in original; collecting cases). "Dismissing class allegations under the *Twombly/Iqbal* standard 'does not test Plaintiff's compliance with Rule 23, and instead measures those claims under Rule 8(a)'s federal pleading standard.'" *Id.* (collecting cases). Thus, "'[i]f the class allegations are legally or factually defective,…dismissal is appropriate.'" *Id.* (collecting cases).

### 2. *Rule 12(f)*

Federal Rule of Civil Procedure 12(f) provides that courts "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "'The function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial….'" *Leon v. Loandepot.com, LLC*, 2025 WL 2632396, *2 (C.D. Cal. Aug. 22, 2025) (9th Cir. 2010) (citing *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010)). "'Where the complaint demonstrates that a class action cannot be maintained on the facts alleged, a defendant may move to strike the class allegations prior to discovery.'" *Murch*, 2025 WL 2466576, *16. "'[W]here the plaintiffs fail to make even a prima facie showing of Rule 23's prerequisites,…the burden is on the plaintiff to demonstrate that discovery measures are likely to produce persuasive information substantiating the class action allegations.'" *Murch*, 2025 WL 2466576, *16 (citing *Doniger v. Pac Nw. Bell, Inc.*, 564 F.2d 1304, 1313 (9th Cir. 1977)); *see also Barnes v. Coca-Cola*

16

DEFENDANT'S MOTION TO DISMISS AND/OR STRIKE
Civ. No. 3:26-cv-00001-SB

*Company*, 2025 WL 1027431, \*4 (E.D. Cal. Apr. 7, 2025) (noting that "'the plaintiff bears the burden of advancing a prima facie showing that the class action requirements of [Rule 23] are satisfied or that discovery is likely to produce substantiation of the class allegations'" on a pre-discovery motion to strike class allegations) (citing *Mantolete v. Bolger*, 767 F.2d 1416, 1424 (9th Cir. 1985)).

### C.    Plaintiff's Complaint Must Be Dismissed under Rule 12(b)(6)

#### 1.    *Plaintiff's Claims Fail Because He Consented to Xero Shoes' Texts*

All of Plaintiff's TCPA claims fail because he consented to Xero Shoes' texts and did not effectively revoke that consent.

#### a.    Plaintiff Consented to Xero Shoes' Texts

A TCPA claim requires that texts be sent "'***without the recipient's prior express consent***.'" *Epps*, 2017 WL 1424637, at \*4 (quoting *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012)) (emphasis in original).  Plaintiff cannot state any TCPA claim because he expressly consented to Xero Shoes' texts based on his repeated, receptive interactions with Xero Shoes that invited further texts from Xero Shoes.

*Barton v. LeadPoint, Inc.*, 2022 WL 123352 (W.D. Wash. Jan. 13, 2022), *aff'd*, 2023 WL 4646103 (9th Cir. July 20, 2023) is instructive.  There, similar to this case, "[plaintiff Nathan] Barton's TCPA case [arose] from an unsolicited text message he received," which "was addressed to someone else" named "Wendy."  *Id*. at \*1.  Also similar to this case, the message provided "TxtSTOPtoEnd."  The court held that plaintiff consented to further communications from defendants because rather than reply "STOP," plaintiff "visit[ed] and interact[ed] with the website linked in the first text."  *Id*. at \*2.  The court also agreed that plaintiff acted in a way to manufacture

his TCPA claim. *Id*. ("[Defendants] emphasize that had Barton replied 'STOP' to the first text he received, he would not have received the other calls, upon which his remaining TCPA claims against the remaining defendants rely…. They assert, persuasively, that Barton did so to 'manufacture' a claim for statutory TCPA damages.").

Here, Plaintiff similarly consented to receiving Xero Shoes' text messages and invited further communications from Xero Shoes. Rather than simply reply "Stop" – as Xero Shoes repeatedly told him would end all text communications from it – Plaintiff, by responding "Ok," "Nice!" "Thanks," and "Hello," etc., to receiving Xero Shoes' promotions, voluntarily engaged with Xero Shoes and made it appear as though he was interested in its products. In so doing, he invited further text messages from Xero Shoes. *Zemel v. CSC Holdings LLC*, 2018 WL 6242484, at *5 (D.N.J. Nov. 29, 2018) ("When an individual sends a message inviting a responsive text, there is no TCPA violation."). This constituted express consent by Plaintiff to engage in further communications with Xero Shoes. His attempt "to manufacture a claim for statutory TCPA damages" should be rejected, as it was in *Barton*.

b.    <u>Plaintiff Did Not Revoke his Consent</u>

Plaintiff did not effectively revoke his consent because he did not communicate his purported revocation by reasonable means, and the purported revocation itself was not a clear and express desire not to be texted.

To effectively revoke consent under the TCPA, the consent must be revoked by "reasonable" means. *Epps*, 2017 WL 1424637, at *5. When "assessing whether any particular means of revocation used by a consumer was reasonable," the court should consider:

> [T]he ***totality of the facts and circumstances*** surrounding that specific situation, including, for example, whether the consumer had a ***reasonable expectation that***

18

> ***he or she could effectively communicate his or her request for revocation to the caller in that circumstance***, and whether the caller could have implemented mechanisms to effectuate a requested revocation ***without incurring undue burdens***.

*Id*. (emphasis in original). Further "[r]evocation of consent must be clearly made and express a desire not to be called or texted." *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1048 (9th Cir. 2017).

Here, the means by which Plaintiff purportedly sought to revoke his consent was anything but reasonable. Here, again *Epps* is instructive. There, similar to Weingrad, plaintiff received numerous texts that provided "Text STOP to end." 2017 WL 1424637, at *2. Instead of simply texting "STOP":

> Plaintiff alleges that she revoked consent via the following five text messages sent over the course of two months:
>
> (1) "I would appreciate [it] if we discontinue any further texts;" (2) "Thank you but I would like the text messages to stop can we make this happen;" (3) "I'm simply asking for texts to stop. I would appreciate that. Thanks;" (4) "As I requested earlier I asked that the text would stop, I would greatly appreciate it. Thank you;" and (5) "I'm simply asking for texts to stop. I would appreciate that. Thanks."

*Id*. at *5. *Epps* held that this revocation was ineffective, reasoning that:

> The totality of the plausibly alleged facts, even when viewed in Plaintiff's favor, militate against finding that Plaintiff's revocation method was reasonable…. Without explanation, Plaintiff ignored Defendant's clear instruction to stop the messages. [H]eeding Defendant's opt-out instruction would not have plausibly been more burdensome on Plaintiff than sending verbose requests to terminate the messages.

*Id*. Here, Plaintiff engaged in the same noncompliance with simple opt-out instructions – only in a fashion that was more egregious. In *Epps*, plaintiff sent five separate text messages expressly "asking for texts to stop"; here, Plaintiff sent a single, vague, two-word message, simply stating "wrong number." Sega Dec., Ex. 1, p. 3. Plaintiff then ignored Xero Shoes' follow-up

19

communications, which reiterated that "If you would like to unsubscribe from all future messages, reply STOP," separately offered to assist Plaintiff with any "account change," and explained that Xero Shoes would "be happy to help" with implementing such changes. *Id.* Had Plaintiff acted reasonably, he would have simply texted "STOP" or responded to Xero Shoes' offer to make any changes to his account that he wanted. He did not do so.

*Rando v. Edible Arrangements Int'l, LLC*, 2018 WL 1523858 (D.N.J. Mar. 28, 2018) is similarly instructive. There, the court held that "Plaintiff…failed to allege facts supporting a plausible claim that she revoked her consent 'using [a] reasonable method,'" reasoning:

> When presented with the direction "Reply HELP for help. STOP to cancel," Plaintiff instead replied: "Take my contact info off please."…[;] "Thank you. I'd like my contact info to be removed"; "Checking in today to see if my information is removed"; "Haven't heard from this service"; "I want to confirm I have been removed off your contacts"; "I'd like to be removed from this"; "I asked to be removed from this service[.]"…

> The Court finds that, in the totality of the circumstances, a reasonable person seeking to revoke consent would have tried, at least at some point during the back-and-forth, simply replying "STOP" to cancel—as instructed, rather than ignoring Defendant's revocation method and sending ten long text messages to that effect, most of which did not include the word "stop" at all. There can be no question on these factual allegations but that Plaintiff did not comply, nor even attempt to comply, with the apparently simple directions repeatedly given to her: "Reply...STOP to cancel."

> The Court concludes that, given the factual circumstances alleged by Plaintiff, she does not plausibly state a claim that she used a reasonable means of revoking her consent, in part because it cannot be fairly said that she "had a reasonable expectation that...she could effectively communicate...her request for revocation to the caller in that circumstance[.]" Her failure to follow the apparently clear and apparently non-burdensome optout instructions remains unexplained.

*Id.* at *7-8. In *Viggiano v. Kohl's Dep't Stores, Inc.*, 2017 WL 5668000 (D.N.J. Nov. 27, 2017), the court similarly held that plaintiff's revocation was ineffective when she ignored texts "instructing her to text 'STOP' to opt out of future texts" (*Id.* at *4) "but instead sent several

20

sentence-long messages to inform Defendant she was opting out" (*Id*. at *3). *Rando* and *Viggiano* make clear that Plaintiff's revocation was ineffective because he failed to follow clear and nonburdensome opt-out instructions.

Moreover, Plaintiff's "wrong number" message was not only an unreasonable means by which to revoke consent, but the message itself was not even a "clear[]" and "express" "desire not to be…texted." *Van Patten*, 847 F.3d at 1048 (holding that plaintiff did not effectively revoke consent and explaining that consent could have been revoked, for example, by "plainly telling Defendants not to contact him on his cell phone when he called to cancel his gym membership or messaging 'STOP' after receiving the first text message"); *Stewart v. Network Cap. Funding Corp.*, 549 F. Supp. 3d 1058, 1060 (C.D. Cal. 2021) ("Plaintiff's statement that he did not have a house, at best, expressed disinterest in NCFC's services; it fell short of 'clearly express[ing]' his desire not to receive additional calls from NCFC."). If Plaintiff intended to provide a "clear[]" or "express" "desire not to be…texted," he would have simply replied "Stop" or plainly asked Xero Shoes to stop contacting him. Instead, he ignored Xero Shoes' messages so he could manufacture this litigation.

Accordingly, the Complaint should be dismissed in its entirety under Rule 12(b)(6).

      2.     <u>*Separately, the Second Cause of Action Fails Because Xero Shoes Transmitted a CPN or ANI that Allowed Do-Not-Call Requests to Be Made During Regular Business Hours*</u>

The Second Cause of Action alleges that Xero Shoes violated the TCPA by sending Plaintiff text messages that failed to include caller identification information in the form of either CPN or ANI that allowed Plaintiff to submit a do-not-call request during regular business hours. Separate and apart from Plaintiff's failure to revoke his express consent, this claim fails as a matter

21

DEFENDANT'S MOTION TO DISMISS AND/OR STRIKE
Civ. No. 3:26-cv-00001-SB

of law because the Complaint and Text Message Log make clear that Xero Shoes transmitted a CPN or ANI that allowed recipients to make do-not-call requests during regular business hours – *i.e.*, "If [Plaintiff] [wanted] to unsubscribe from all future messages," all he had to do was "reply STOP" to Xero Shoes' 65099 number at any time.  Sega Dec., Ex. 1, p. 3.

Pursuant to 47 C.F.R. § 64.1601(e)(1), "[a]ny person or entity that engages in telemarketing...must transmit caller identification information," which includes "either CPN or ANI, and, when available by the telemarketer's carrier, the name of the telemarketer."  Further, 47 C.F.R. § 64.1601(e)(1) requires that the provided telephone number "must permit any individual to make a do-not-call request during regular business hours."

Xero Shoes met these statutory requirements.  First, there is no dispute that Xero Shoes transmitted CPN or ANI, as the Complaint concedes that the text messages Xero Shoes sent to Plaintiff "transmitted the Caller ID, in the form of both CPN and ANI, as 65099."  Complaint, ¶25. Additionally, the Complaint makes clear (*see id.*, ¶32), and the Text Message Log further demonstrates, that Xero Shoes transmitted its name in all of its text messages to Plaintiff.  The Text Message Log also demonstrates that Xero Shoes repeatedly offered that "If you need additional help, email us at support@xeroshoes.com."

Second, the Text Message Log establishes that the CPN or ANI that Xero Shoes transmitted did permit Plaintiff to submit a do-not-call request during regular business hours.  As set forth above, Xero Shoes informed Plaintiff how he could submit a do-not-call request in multiple text messages.  These instructions were clear and nonburdensome.  Xero Shoes also specifically offered to assist Plaintiff personally with any changes that he wanted to make to his account, which would include unsubscribing Plaintiff from all future messages.  Despite these clear instructions on how

22

DEFENDANT'S MOTION TO DISMISS AND/OR STRIKE
Civ. No. 3:26-cv-00001-SB

to make a do-not-call request, Plaintiff never replied "STOP," and he ignored Xero Shoes' offer to make account changes.

Because Xero Shoes did permit Plaintiff to submit a do-not-call request during regular business hours (which Plaintiff elected not to follow), his second cause of action fails.

        *3.*      *Separately, the First Cause of Action Fails Because Plaintiff Does Not Allege that He Registered His Phone Number on the National DNC Registry*

The First Cause of Action arises from Plaintiff's receipt of Xero Shoes' text messages despite his phone number being registered on the National DNC Registry. However, this claim separately fails because Plaintiff does not allege that he (as opposed to someone else) registered the 503 Number on the National DNC Registry.

47 C.F.R. § 64.1200(c)(2) prohibits telephone solicitation to "[a] residential telephone subscriber **who has registered his or her telephone number** on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." *Id*. (emphasis added). Courts have held that where plaintiffs have not alleged that they registered their own number on the National DNC Registry, "as opposed to someone else placing their numbers on the list," the claims fail. *See, e.g.*, *Rogers v. Assurance IQ, LLC*, 2023 WL 2646468, *4 (W.D. Wash. Mar. 27, 2023); *Rombough v. Robert D. Smith Ins. Agency, Inc.*, 2022 WL 2713278, at *2-4 (N.D. Iowa June 9, 2022).

Here, Plaintiff has not alleged that he himself registered the 503 Number on the National DNC Registry. He simply alleges, in conclusory fashion, that (1) he is a member of the National DNC Class (Complaint, ¶53) and (2) Xero Shoes made telemarketing calls "to Plaintiff and

23

DEFENDANT'S MOTION TO DISMISS AND/OR STRIKE
Civ. No. 3:26-cv-00001-SB

members of the National Do Not Call Registry Class despite their numbers being on the National

Do Not Call Registry" (Complaint, ¶69).  Thus, the First Cause of Action fails.[7]

**D.    Plaintiff's Class Allegations for Each of the Three Proposed Classes Should Be Stricken under Rule 12(f)**

1.    *Plaintiff's Allegations Relating to the Proposed National DNC Class Must Be Stricken Because the Class Is Overbroad and Lacks Predominance*

The National DNC Class fails because it is overbroad and common questions of law and

fact would not predominate over individual issues.

First, the National DNC Class, as written, is overbroad because it plainly includes

individuals who consented to Xero Shoes' texts or had an established business relationship with

Xero Shoes and thus, would have no viable TCPA claim against Defendant.

Even where an individual has registered his or her number on the National DNC Registry,

if that individual consents to receiving telemarketing communications or has an established

business relationship with the defendant, the National DNC Registry registration is overridden by

such consent or relationship.  47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2), (f)(15) (excluding

from the term "telephone solicitation" "a call or message… (i) [t]o any person with that person's

prior express invitation or permission; [or] (ii) [t]o any person with whom the caller has an

established business relationship...."); *Dobronski v. SelectQuote Insurance Services*, 2024 WL

3843119, *10 (E.D. Mich. June 27, 2024) ("[T]hat online form would be deemed consent and

---

[7] Xero Shoes recognizes that because this Court previously rejected this argument in *Murch*, 2025 WL 2466576, at *13-14, and that other district courts located in the Circuit have as well, it is unlikely to grant the motion on this ground.  However, Xero Shoes respectfully raises this argument to, at a minimum, preserve it.

DEFENDANT'S MOTION TO DISMISS AND/OR STRIKE
Civ. No. 3:26-cv-00001-SB

override the National Do Not Call Registry"). Thus, courts have held that defining a class as individuals whose numbers are registered on the National DNC Registry, without excluding individuals who consented to the communications or have an established business relationship with defendant – as the National DNC Class is written – would be overbroad because that class would include individuals who have no viable TCPA claim. *Leon v. Loandepot.com, LLC*, 2025 WL 2632396, at *3 (C.D. Cal. Aug. 22, 2025).

In *Leon*, "[t]he proposed class include[d] all individuals in the United States with phone numbers on the National Do-Not-Call Registry" without limitations that addressed consent or whether there was a prior business relationship with Defendant. *Id*. The Court held that "[p]laintiff's proposed class include[d]…individuals who clearly ha[d] no cognizable claim against Defendant under the TCPA." *Id*.

> The Court explained that:

> Such a broad class includes individuals who gave Defendant consent to contact them [and] who had a prior business relationship with Defendant…, and who therefore have no viable claim against Defendant under the relevant TCPA provisions. Because the class fails to exclude these members who necessarily lack standing to sue under the TCPA, the class is overly broad. *See Brown v. Nano Hearing Tech Opco, LLC*, 2024 WL 3367536, at *8 (S.D. Cal. July 9, 2024) ("[The] class definition necessarily includes any individuals who have consented to calls…. [T]hese individuals would also lack standing.").

*Id*. The Court further reasoned that "the defects in the proposed class could not possibly be remedied through discovery" and "[b]ecause it is 'sufficiently obvious' that the class as currently defined cannot possibly be maintained, striking the class allegations is appropriate" on defendant's Rule 12(f) motion. *Id*.

Here, the National DNC Class suffers from this exact infirmity. Plaintiff defines the National DNC Class as:

DEFENDANT'S MOTION TO DISMISS AND/OR STRIKE
Civ. No. 3:26-cv-00001-SB

> All persons in the United States whose (1) telephone numbers were on the National Do Not Call Registry for at least 31 days, (2) but who received more than one telemarketing call or text message from or on behalf of Defendant encouraging the purchase of Xero Shoes goods or services, (3) within a 12-month period (4) at any time in the period that begins four years before the date of filing this Complaint to trial.

Complaint, ¶52. While Weingrad's class definition includes individuals whose phone numbers were on the National DNC Registry, the definition improperly fails to exclude individuals who consented to Xero Shoes' texts or have an established business relationship with Xero Shoes. Thus, the definition is overbroad.

Second, the National DNC Class should be stricken because common questions of law and fact would not predominate because the Court will need to undertake individualized inquiries concerning whether each class member (1) consented to Defendant's messages, (2) did not revoke that consent, and (3) maintained an existing business relationship with Defendant.

Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual member[s]." Under this Rule, common questions must "present a significant aspect of the case" and "be resolved for all members of the class in a single adjudication." *Chehalem Physical Therapy, Inc. v. Coventry Health Care, Inc.*, 2011 WL 13253445, at *9 (D. Or. Jan. 21, 2011) (quoting *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1022 (9th Cir. 1998)).

In TCPA cases, courts regularly hold, on lack of predominance grounds, that proposed classes that would require individual factual and legal inquiries regarding issues of consent, revocation of consent, and the existence of a business relationship are not certifiable. *See, e.g., Pepka v. Kohl's Dep't Stores, Inc.*, 2016 WL 8919460, at *4 (C.D. Cal. Dec. 21, 2016) ("[N]o matter what that discovery might show, the fact remains Plaintiff's allegations require an

26

DEFENDANT'S MOTION TO DISMISS AND/OR STRIKE
Civ. No. 3:26-cv-00001-SB

individualized inquiry into questions such as which of the class members granted consent in the first place, who among that group revoked consent, and whether such revocation was proper and put Defendant on notice."); *Ginwright v. Exeter Fin. Corp.*, 280 F. Supp. 3d 674, 688 (D. Md. 2017) ("Ginwright's claim revolves around individualized questions of consent and the revocation of consent."); *Revitch v. Citibank*, 2019 WL 1903247, at *4 (N.D. Cal. Apr. 28, 2019) (denying certification in TCPA case where "adjudicating whether or not members of the class consented to [the alleged] calls lack[ed] a common method of proof."); *Leyse v. Bank of Am., Nat'l Ass'n*, 2020 WL 1227410, at *8 (D.N.J. Mar. 13, 2020), *aff'd*, 856 F. App'x 408 (3d Cir. 2021) ("[T]he proposed class is rife with individualized issues such that questions common to the class do not predominate.… For any such putative class members, an individualized inquiry would be needed to establish that they were not BoA customers at the time of the calls."); *Lindsay Transmission, LLC v. Off. Depot, Inc.*, 2013 WL 275568, at *5 (E.D. Mo. Jan. 24, 2013) ("Determining class membership will require the kind of individualized determinations—the absence of prior consent and the absence of a prior business relationship—precluded by Rule 23.").

Here, there are several individual inquiries that must be made and resolved for each class member. As Plaintiff's own claims demonstrate, an individual inquiry is required to determine and resolve whether each member of a Stop Class (1) sufficiently consented to being contacted and/or (2) effectively revoked their consent. Indeed, the Court would have to examine every message that Xero Shoes received from potential class members to determine whether those messages constituted a clear and express desire not to be texted and whether the message was a reasonable means to communicate the revocation.

DEFENDANT'S MOTION TO DISMISS AND/OR STRIKE
Civ. No. 3:26-cv-00001-SB

Whether each National DNC Class member had an existing relationship with Defendant also requires an individualized inquiry. For example, one would need to determine whether each class member had previously purchased Xero Shoes' products, either in any retail store or online, and when those purchases took place. *Hovila v. Tween Brands, Inc.*, 2010 WL 1433417, *5 (W.D. Wash. Apr. 7, 2010) (finding that "plaintiff and defendant's relationship falls within the EBR exemption to the TCPA" because defendant's alleged calls to plaintiff occurred after plaintiff purchased items from defendant's retail stores, and dismissing plaintiff's TCPA claim on that basis); *Cubbage v. Talbots, Inc.*, 2010 WL 2710628, *3 (W.D. Wash. July 7, 2010) ("In this case, Mitchell purchased at least one product at a Talbots store within the eighteen months prior to April of 2009, the date of the call. Therefore, Mitchell and Talbots had an established business relationship."); *Sorsby v. TruGreen Limited Parnership*, 2023 WL 130505, *8 (N.D. Ill. Jan. 9, 2023) (granting motion to strike class allegations as "'facially and inherently deficient'" because "the Court's determination regarding the EBR [established business relationship] defense will likely predominate the Court's adjudication, making this case unsuitable for classwide resolution").

For all of the foregoing reasons, pursuant to Rule 12(f), the Court should strike this class.

> 2.    *For Several Independently Sufficient Reasons, Plaintiff's Allegations Relating to the Proposed "Telemarketing Caller ID Class" Should Be Stricken*

The Telemarketing Caller ID Class fails because: (1) it lacks typicality, as Plaintiff is not a member of the class; (2) it lacks numerosity, as there is no evidence that Xero Shoes committed the relevant violation whatsoever – let alone against a significant number of individuals, (3) it is

28

DEFENDANT'S MOTION TO DISMISS AND/OR STRIKE
Civ. No. 3:26-cv-00001-SB

overbroad, as it includes individuals who have no viable TCPA claim against Defendant; and (4) common questions of law and fact would not predominate.

*First*, the proposed Telemarketing Caller ID Class should be stricken on typicality grounds because Plaintiff is not a member thereof. A party may only bring a claim as a class representative if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). When a plaintiff is not a member of his own defined class, courts will strike those class allegations for lack of typicality. *See Murch*, 2025 WL 2466576, *16 (striking class allegations for lack of typicality where plaintiff was "not a member of the class"); *Brown v. Nano Hearing Tech Opco, LLC*, 2024 WL 3367536, *9 (S.D. Cal. July 9, 2024) (striking class allegations for lack of typicality because plaintiff "has not alleged that she falls into her own class definition").

> Plaintiff's Telemarketing Caller ID Class is defined as:
>
> All persons within the United States to whom: (1) Defendant (or a third-party acting on behalf of Defendant) sent (2) two or more telemarketing calls or text messages in a 12-month period, (3) which either (a) did not transmit a CPN or ANI at all or (b) transmitted a CPN or ANI that would not have allowed an individual to make a do not call request during regular business hours, (4) within the four years prior to the filing of the Complaint.

Complaint, ¶52. The Telemarketing Caller ID Class includes two subclasses: (1) those to whom Xero Shoes sent calls or text messages without transmitting a CPN or ANI, and (2) those to whom Xero Shoes sent calls or text messages that transmitted a CPN or ANI that did not allow submission of a do-not-call request. As discussed above, Plaintiff's own allegations and the Text Message Log make clear that Plaintiff is not a member of either subclass because Xero Shoes' texts to Plaintiff transmitted a CPN or ANI that allowed do-not-call requests during regular business hours. *Supra*, pp. 21-23. Thus, typicality is not satisfied.

29

*Second*, the proposed Telemarketing Caller ID Class should be stricken because Plaintiff does not plausibly allege any facts suggesting that Xero Shoes ever transmitted a CPN or ANI that did not allow do-not-call requests during regular business hours, such that the Telemarketing Caller ID Class fails on numerosity grounds. In *Sallie Holly v. Alta Newport Hosp., Inc.*, 2020 WL 6161457, at \*5 (C.D. Cal. Oct. 21, 2020), the court struck the Complaint's class allegations because the plaintiff "fail[ed] to allege any facts in the SAC to support numerosity and instead relie[d] on only the possibility of discovery to substantiate her allegations," and stated that "[t]he Court [was] unwilling to put both parties through costly discovery to permit [the plaintiff] further attempts to establish an implausible fact"). *Accord Murch*, 2025 WL 2466576, at \*18.

Similarly, Plaintiff here alleges that "[he] does not know the exact number of members in the Classes, but Plaintiff reasonably believes Class members number, at minimum, [sic] in the hundreds." Complaint, ¶ 58. But the Text Message Log conclusively establishes that Xero Shoes' 65099 number permitted Plaintiff to submit a do-not-call request at any time. Under these facts, Plaintiff fails to satisfy his "burden of advancing a prima facie showing that the class action requirements of [Rule] 23 are satisfied or that discovery is likely to produce substantiation of the class allegations." *Mantolete v. Bolger*, 767 F.2d 1416, 1424 (9th Cir. 1985); *see also Kirts v. Green Bullion Fin. Servs., LLC*, 2010 WL 3184382, at \*7 (S.D. Fla. Aug. 3, 2010) ("Plaintiffs have not met the numerosity requirement because they have not yet established that CG4 has actually committed the alleged wrongdoing with respect to a single individual Plaintiff.").

*Third*, even if Plaintiff had been a member of his proposed class (and he is not) and had made plausible allegations of conduct that would otherwise support a claim by putative members of this Class (and he did not), the proposed Telemarketing Caller ID Class should be stricken

30

because it is patently overbroad, as it includes individuals who would have no viable TCPA claim against Defendant.  For example, assuming *arguendo* that Xero Shoes transmitted a CPN or ANI that did not allow do-not-call requests during regular business hours, the proposed class would still encompass individuals who consented to receiving Xero Shoes' texts, wanted to receive Xero Shoes' text in order to learn about Xero Shoes' promotions, and most importantly, had no interest in submitting a do-not-call request and did not try to submit such a request.

The Supreme Court has held that a plaintiff will not satisfy Article III's standing requirements "by alleging a bare procedural violation" because a violation of "procedural requirements may result in no harm."  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 342 (2016); *see also Chennette v. Porch.com, Inc.*, 50 F. 4th 1217, 1221 (9th Cir. 2022) ("An allegation of a bare procedural violation is not enough to satisfy Article III") (citing *Spokeo*, 578 U.S. 330, 339, 340); *Selby v. Ocwen Loan Servicing, LLC*, 2017 WL 5495095, *3 (S.D. Cal. Nov. 16, 2017) (TCPA plaintiff lacked standing because her claim was based on allegations of "a bare procedural violation of the [TCPA] that is 'divorced from' the real harms that [the TCPA] is designed to prevent.") (citation omitted).

Here, Plaintiff's proposed Telemarketing Caller ID Class plainly includes individuals who had no interest in submitting a do-not-call request (and did not try to submit such a request) and thus, suffered no harm by Xero Shoes' alleged failure to allow those individuals to submit a do-not-call request.  Such a bare procedural violation does not confer Article III standing for these individuals.  Thus, this class is overbroad.

Fourth, the Telemarketing Caller ID Class fails on predominance grounds because individual inquiries must be made to determine whether each member even wanted and attempted

31

DEFENDANT'S MOTION TO DISMISS AND/OR STRIKE
Civ. No. 3:26-cv-00001-SB

to submit a do-not-call request. *Supra*, pp. 26-28; *see also Parkinson v. Hyundai Motor Am.*, 258 F.R.D. 580, 595 (C.D. Cal. 2008) ("a host of individual questions regarding warranty coverage preclude a finding that common questions of law and fact predominate" including "determining whether the class member ever even attempted to make a warranty claim"); *Kraetsch v. United Serv. Auto. Ass'n*, 2015 WL 1457015, at *5 (E.D. Mo. Mar. 30, 2015) ("Common issues do not and cannot predominate… [D]etermining whether each member of the putative class has a valid claim against USAA would require an individual inquiry into each of the putative class members' claims."). There is no practical way of determining whether each class member wanted or attempted to submit a do-not-call request other than by inquiring of each member individually. *Nyachira v. New Prime, Inc.*, 2022 WL 19239768, at *6 (W.D. Mo. Nov. 7, 2022) ("The Court further concludes this individual issue will predominate over the common issues, as it will require testimony from each member of the class.").

3.    *For Several Independent Reasons, Plaintiff's Allegations Relating to the Proposed "Internal Do Not Call Class" or "Stop Class" Must Be Stricken.*

The Stop Class allegations should be stricken because: (1) the proposed definition is vague and unintelligible; (2) Plaintiff is not a member of the Stop Class; (3) the Stop Class fails on numerosity grounds; and (4) common questions of law and fact would not predominate over individual ones.

*First*, the Stop Class definition fails because it is impermissibly vague. *See Mad Rhino, Inc. v. Best Buy Co.*, 2008 WL 8760854, at *3 (C.D. Cal. Jan. 14, 2008) ("Because at least two parts of this definition are impermissibly vague, neither class is ascertainable."); *ABC Distrib., Inc. v. Living Essentials LLC*, 2017 WL 2603311, at *4 (N.D. Cal. Apr. 7, 2017) ("class definition" was "impermissibly vague and confusing"); *Schroeder v. Envoy Air, Inc.*, 2016 WL 11520388, at

32

*8 (C.D. Cal. Sept. 27, 2016) ("'In order for a party to represent a class, the class sought to be represented must be adequately defined and clearly ascertainable…. A vague class definition portends significant manageability problems for the court.'") (citation omitted).

The Stop Class is defined as:

All persons within the United States to whom: (1) Defendant (or a third-party acting on behalf of Defendant) (2) but who received more than one telemarketing call from or on behalf of Defendant promoting Defendant's goods or services, (3) who were not current customers of the Defendant at the time of the calls, (4) who had previously asked for the calls to stop and (5) within the four years prior to the filing of the Complaint.

Complaint, ¶ 52. It is unclear what the first condition even means, as it simply refers to Xero Shoes or its agents, not anything that Xero Shoes did. Regarding the second condition, it is unclear what the term "but" qualifies, given that the first condition simply refers to Xero Shoes or its agent. Thus, the Stop Class is impermissibly vague.

*Second*, no matter how Plaintiff intended to state the class definition, the Stop Class fails on typicality grounds because Plaintiff is not a member of such class. *Supra*, pp. 29. Specifically, the Stop Class covers individuals "who had previously asked for the calls to stop." Complaint, ¶ 52. However, the Complaint and the Text Message Log demonstrate that Plaintiff did not ask Xero Shoes for the texts to "stop." *Supra*, pp. 17-21. Further, Plaintiff's means of communicating his purported desire that the text messages stop was entirely unreasonable. *Supra*, pp. 18-21. Thus, the Stop Class lacks typicality.

*Third*, the Stop Class fails on numerosity grounds. *Supra*, pp. 29-30. Plaintiff, again, alleges absolutely no facts suggesting that anyone who actually texted "stop" in response to Xero Shoes' messages – as Xero Shoes' opt-out instructions made clear – received any allegedly improper texts from Xero Shoes thereafter.

33

DEFENDANT'S MOTION TO DISMISS AND/OR STRIKE
Civ. No. 3:26-cv-00001-SB

*Fourth*, the Stop Class should be stricken because common questions of law and fact would not predominate. Revocation (and the effectiveness thereof) is a central determination to the Stop Class, and as Plaintiff's own claims make clear, the question of each proposed member's revocation could only be resolved by individual inquiries. *Eldridge v. Cabela's Inc.*, 2017 WL 4364205 (W.D. Ky. Sept. 29, 2017) is instructive. There, the court stuck two similar "Stop" classes pursuant to Rule 12(f), which involved persons who received calls "after such persons had informed Cabela's that they no longer wished to receive calls from Cabela's." *Id*. at *1. The Court held that "it is clear that caselaw favors striking the 'Stop' classes. In recent TCPA cellular-telephone cases, district courts have struck 'Revocation' classes from complaints or have denied class certification entirely." *Id*. at 9 (citing *Cholly v. Uptain Grp., Inc.*, 2017 WL 449176, at *4 (N.D. Ill. Feb. 1, 2017) ("[I]ndividual inquires necessary to determine class membership will 'inevitably predominate' over any common questions of fact. Consequently, the proposed revocation class fails to satisfy Rule 23(b)(3) and the class allegations are stricken.") (citation omitted); *Saulsberry v. Meridian Fin. Servs., Inc.*, 2016 WL 3456939, at *11 (C.D. Cal. April 14, 2016) ("Each of these forms of revocation of consent may give rise to its own evidentiary issues, rendering it difficult for the Court to resolve any questions on a class-wide basis.... The commonality requirement is therefore not met with regards to the TCPA Revocation Class."); *Wolfkiel v. Intersections Ins. Servs., Inc.*, 303 F.R.D. 287, 293 (N.D. Ill. 2014) ("The Revocation Class fails to satisfy the predominance requirement. In order to determine whether each potential class member did in fact revoke his or her prior consent at the pertinent time, the Court would have to conduct class-member-specific inquiries for each individual.").

DEFENDANT'S MOTION TO DISMISS AND/OR STRIKE
Civ. No. 3:26-cv-00001-SB

Here (and again, as Plaintiff's own circumstances demonstrate), the Stop Class would similarly involve individual inquiries regarding whether each member effectively communicated their revocation or their request to stop further communications from Defendant, which will predominate over any common questions of law and fact.

Because, even at this early stage of the litigation, it is patently clear that none of the classes Plaintiff proposes is viable, the Complaint's class allegations should be struck under Rule 12(f).

### E.    Plaintiff's Class Allegations for Each of the Three Proposed Classes Must Be Dismissed under Rule 12(b)(6)

The three proposed classes also fail under Rule 12(b)(6) for similar reasons, as the Complaint "lacks *any* factual allegations and reasonable inferences that establish the plausibility of class allegations."  *Murch*, 2025 WL 2466576, at *14 (emphasis in original).  By way of example, and as set forth above:

- The National DNC Class's proposed definition includes individuals who clearly have no cognizable TCPA claim against Defendant (*i.e.*, those who consented to Defendant's texts or had an existing relationship with Defendant), and these defects cannot be remedied through discovery.  *Supra* pp. 24-28.

- With respect to the Telemarketing Caller ID Class, Plaintiff's allegations and the Text Message Log establish that Xero Shoes did, in fact, transmit a CPN or ANI that allowed do-not-call requests during regular business hours.  And because Complaint does not allege any facts suggesting that Xero Shoes ever violated the relevant TCPA provision as to any other individual, Plaintiff has not pled "the plausibility of class allegations."  *Supra*, pp. 28-32.  *Murch*, 2025 WL 2466576, at *15 (emphasis added); *Taylor v. Penske Logistics, LLC*, No. 5:20-cv-02623, 2021 WL 4288525, at *4 (C.D. Cal. Sept. 21, 2021) ("[The plaintiff] merely alleges what happened to him personally and asks the Court to extrapolate and assume, without any additional facts, that [the defendant] treated other employees in a similar fashion.  This 'logical disconnect' renders the class claim subject to dismissal.").

DEFENDANT'S MOTION TO DISMISS AND/OR STRIKE
Civ. No. 3:26-cv-00001-SB

- With respect to the Stop Class, Plaintiff pleads no facts suggesting that Xero Shoes texted anyone after they actually texted "Stop," such that, again, Plaintiff has not pled "the plausibility of class allegations." *Supra*, pp. 32-35.

## CONCLUSION

For all of the foregoing reasons, the Court should dismiss the Complaint, or in the alternative, strike and/or dismiss its class action allegations.

Dated: March 17, 2026

DORSEY & WHITNEY LLP

*/s/ Shawn Larsen-Bright*
Shawn Larsen-Bright, OSB 130051

Dorsey & Whitney LLP
701 Fifth Avenue, Suite 6100
Seattle, WA 98104-7043
(206) 903-8800
larsen.bright.shawn@dorsey.com

Christopher G. Karagheuzoff (pro hac vice forthcoming)
karagheuzoff.christopher@dorsey.com
Christopher Paolino (pro hac vice forthcoming)
paolino.christopher@dorsey.com
John Mixon (pro hac vice forthcoming)
Mixon.John@dorsey.com
Dorsey & Whitney LLP
51 West 52nd Street
New York, NY 10019
Telephone: (212) 415-9200

*Attorneys for Defendant Feel the World, Inc. d/b/a Xero Shoes*

36

DEFENDANT'S MOTION TO DISMISS AND/OR STRIKE
Civ. No. 3:26-cv-00001-SB

## CERTIFICATE OF SERVICE

I hereby certify that on this date, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the attorneys of record registered on the CM/ECF system.

Dated this 17th day of March, 2026.

*/s/ Molly Price*
Molly Price, Legal Assistant

37

DEFENDANT'S MOTION TO DISMISS AND/OR STRIKE
Civ. No. 3:26-cv-00001-SB