Shawn Larsen-Bright, OSB 130051
Dorsey & Whitney LLP
701 Fifth Avenue, Suite 6100
Seattle, WA 98104-7043
(206) 903-8800
larsen.bright.shawn@dorsey.com

Christopher G. Karagheuzoff (admitted pro hac vice)
karagheuzoff.christopher@dorsey.com
Christopher Paolino (pro hac vice forthcoming)
paolino.christopher@dorsey.com
Dorsey & Whitney LLP
51 West 52nd Street
New York, NY 10019
Telephone: (212) 415-9200

*Attorneys for Defendant Feel the
World, Inc. d/b/a Xero Shoes*

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

# PORTLAND DIVISION

| | |
|---|---|
| LEON WEINGRAD, individually and on behalf of a class of all persons and entities similarly situated, | Civ. No.  Civ. No. 3:26-cv-00001-SB |
| Plaintiff, | |
| vs. | **DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT AND/OR STRIKE OR DISMISSS PLAINTIFF'S CLASS ALLEGATIONS** |
| FEEL THE WORLD, INC. d/b/a XERO SHOES, | |
| Defendant. | |

DEFENDANT'S MOTION TO DISMISS AND/OR STRIKE
Civ. No. 3:26-cv-00001-SB
4904-2198-1859\4

**TABLE OF CONTENTS**

LR 7-1 CERTIFICATION ..................................................................................................1

LR 7-2(b) CERTIFICATION ............................................................................................1

MOTION TO DISMISS ....................................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ...................................................1

I.    PRELIMINARY STATEMENT .............................................................................1

II.   FACTUAL BACKGROUND ..................................................................................5

    A.    Plaintiff Consented to Xero Shoes' Text Messages.................................5
    B.    Procedural History and Plaintiff's Misrepresentations ...........................7
    C.    Plaintiff Is a Serial TCPA Plaintiff who Manufactured this Lawsuit .....9

III.  ARGUMENT............................................................................................................10

    A.    The Court Should Consider Plaintiff's Prior TCPA Complaints...........10
    B.    Legal Standard .......................................................................................11

        1.    Rule 12(b)(6)................................................................................11
        2.    Rule 12(f) .....................................................................................12

    C.    The FAC Should Be Dismissed in Its Entirety Pursuant to Rule 12(b)(6). ...........13

        1.    Plaintiff's Claims Fail Because He Consented to Xero Shoes' Texts...........13

            a.    Plaintiff Consented to Xero Shoes' Texts....................................13
            b.    Plaintiff Did Not Revoke his Consent .........................................15

        2.    Separately, the Second Cause of Action Fails Because Xero Shoes Transmitted a CPN or ANI that Allowed Do-Not-Call Requests to Be Made During Regular Business Hours................................................19
        3.    Separately, the First Cause of Action Fails Because Plaintiff Does Not Allege that He Registered His Phone Number on the National DNC Registry.........................................24

    D.    Plaintiff's Class Allegations for Each of the Three Proposed Classes Should Be Stricken under Rule 12(f)................................................25

        1.    Plaintiff's Allegations Regarding the Proposed National DNC Class Must Be Stricken Because the Class Is Overbroad and Lacks Predominance........................................25

DEFENDANT'S MOTION TO DISMISS AND/OR STRIKE
Civ. No. 3:26-cv-00001-SB
4904-2198-1859\4

2.     For Several Independently Sufficient Reasons, Plaintiff's Allegations Regarding the Proposed "Telemarketing Caller ID Class" Should Be Stricken ...................................................................30

3.     For Several Independent Reasons, Plaintiff's Allegations Regarding the Proposed "Internal Do Not Call Class" or "Stop Class" Must Be Stricken ...................................................................33

E.     Plaintiff's Class Allegations for Each of the Three Proposed Classes Must Be Dismissed under Rule 12(b)(6) ...................................................................35

CONCLUSION...................................................................36

DEFENDANT'S MOTION TO DISMISS AND/OR STRIKE
Civ. No. 3:26-cv-00001-SB
4904-2198-1859\4

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ABC Distrib., Inc. v. Living Essentials LLC*,
2017 WL 2603311 (N.D. Cal. Apr. 7, 2017) .......................................................................33

*Airs Aromatics, LLC v. Victoria's Secret Stores Brand Mgmt., Inc.*,
744 F.3d 595 (9th Cir. 2014) ...........................................................................................21

*B.N. v. Oregon Reproductive Medicine, LLC*,
2025 WL 3165965 (D. Or. Nov. 12, 2025).........................................................................11

*Barton v. LeadPoint, Inc.*,
2022 WL 123352 (W.D. Wash. Jan. 13, 2022), *aff'd*, 2023 WL 4646103 (9th
Cir. July 20, 2023) .......................................................................................................13, 14

*Brown v. Nano Hearing Tech Opco, LLC*,
2024 WL 3367536 (S.D. Cal. July 9, 2024) ...................................................................27, 30

*Chehalem Physical Therapy, Inc. v. Coventry Health Care, Inc.*,
2011 WL 13253445 (D. Or. Jan. 21, 2011) ........................................................................28

*Chennette v. Porch.com, Inc.*,
50 F. 4th 1217 (9th Cir. 2022) .........................................................................................32

*Cubbage v. Talbots, Inc.*,
2010 WL 2710628 (W.D. Wash. July 7, 2010) ...................................................................29

*Dobronski v. SelectQuote Insurance Services*,
2024 WL 3843119 (E.D. Mich. June 27, 2024)...................................................................26

*Dolemba v. Kelly Servs., Inc.*,
2017 WL 429572 (N.D. Ill. Jan. 31, 2017) .........................................................................18

*Eldridge v. Cabela's Inc.*,
2017 WL 4364205 (W.D. Ky. Sept. 29, 2017).....................................................................34

*Emanuel v. Los Angeles Lakers, Inc.*,
2013 WL 1719035 (C.D. Cal. Apr. 18, 2013) .....................................................................22

*Epps v. Earth Fare, Inc.*,
2017 WL 1424637 (C.D. Cal. Feb. 27, 2017)................................................................ *passim*

*Ginwright v. Exeter Fin. Corp.*,
280 F. Supp. 3d 674 (D. Md. 2017) ..................................................................................28

iii

*Hovila v. Tween Brands, Inc.*,
    2010 WL 1433417 (W.D. Wash. Apr. 7, 2010)..........................................................................29

*Hulett v. Eyebuydirect, Inc.*,
    2025 WL 1677071 (N.D.N.Y. June 13, 2025)...........................................................................19

*Kirts v. Green Bullion Fin. Servs., LLC*,
    2010 WL 3184382 (S.D. Fla. Aug. 3, 2010)............................................................................31

*Leon v. Loandepot.com, LLC*,
    2025 WL 2632396 (C.D. Cal. Aug. 22, 2025)....................................................................12, 26

*Leyse v. Bank of Am., Nat'l Ass'n*,
    2020 WL 1227410 (D.N.J. Mar. 13, 2020), *aff'd*, 856 F. App'x 408 (3d Cir.
    2021) ......................................................................................................................................29

*Lindsay Transmission, LLC v. Off. Depot, Inc.*,
    2013 WL 275568 (E.D. Mo. Jan. 24, 2013) ...........................................................................28

*Mad Rhino, Inc. v. Best Buy Co.*,
    2008 WL 8760854 (C.D. Cal. Jan. 14, 2008) .........................................................................33

*Mantolete v. Bolger*,
    767 F.2d 1416 (9th Cir. 1985) ...............................................................................................31

*Menin v. Star Markets Co., Inc.*,
    2024 WL 4123522 (D. Mass. Sept. 9, 2024) .........................................................................19

*Moskowitz v. Am. Sav. Bank, F.S.B.*,
    37 F.4th 538 (9th Cir. 2022) ..................................................................................................22

*Mosqueda v. Am. Honda Motor Co., Inc.*,
    443 F. Supp. 3d 1115 (C.D. Cal. 2020) ..................................................................................14

*Murch v. GPS Cap. Markets, LLC*,
    2025 WL 2466576 (D. Or. June 6, 2025), *report and recommendation
    adopted in part, rejected in part on other grounds*, 2025 WL 2770190 (D. Or.
    Sept. 26, 2025) ................................................................................................................. *passim*

*National Labor Relations Board v. Oregon*,
    2020 WL 5994997 (D. Or. Oct. 9, 2020)................................................................................11

*Nyachira v. New Prime, Inc.*,
    2022 WL 19239768 (W.D. Mo. Nov. 7, 2022).................................................................29, 32

*Parkinson v. Hyundai Motor Am.*,
    258 F.R.D. 580 (C.D. Cal. 2008)............................................................................................32

*Payton v. Kale Realty, LLC*,
    164 F. Supp. 3d 1050 (N.D. Ill. 2016) ......................................................................................18

*Pepka v. Kohl's Dep't Stores, Inc.*,
    2016 WL 8919460 (C.D. Cal. Dec. 21, 2016) ........................................................................28

*Rando v. Edible Arrangements Int'l, LLC*,
    2018 WL 1523858 (D.N.J. Mar. 28, 2018)..........................................................17, 22, 23, 24

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*,
    442 F.3d 741 (9th Cir. 2006) ...................................................................................................10

*Rogers v. Assurance IQ, LLC*,
    2023 WL 2646468 (W.D. Wash. Mar. 27, 2023) ....................................................................25

*Rombough v. Robert D. Smith Ins. Agency, Inc.*,
    2022 WL 2713278 (N.D. Iowa June 9, 2022)..........................................................................25

*Rote v. New Jersey Judiciary*,
    2025 WL 2308608 (D. Or. June 17, 2025) ..............................................................................14

*Sallie Holly v. Alta Newport Hosp., Inc.*,
    2020 WL 6161457 (C.D. Cal. Oct. 21, 2020)..........................................................................31

*Selby v. Ocwen Loan Servicing, LLC*,
    2017 WL 5495095 (S.D. Cal. Nov. 16, 2017) .........................................................................32

*Somers v. Apple, Inc.*,
    729 F.3d 953 (9th Cir. 2013) ...................................................................................................11

*Sorsby v. TruGreen Limited Parnership*,
    2023 WL 130505 .......................................................................................................................29

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016).................................................................................................................32

*Stewart v. Network Cap. Funding Corp.*,
    549 F. Supp. 3d 1058 (C.D. Cal. 2021) ..................................................................................18

*Taylor v. Penske Logistics, LLC*,
    2021 WL 4288525 (C.D. Cal. Sept. 21, 2021) .......................................................................35

*Todd v. Whitaker*,
    2016 WL 4216777 (D. Or. Aug. 8, 2016)................................................................................12

*Van Patten v. Vertical Fitness Grp., LLC*,
    22 F. Supp. 3d 1069 (S.D. Cal. 2014), *aff'd*, 847 F.3d 1037 (9th Cir. 2017).........................18

v

DEFENDANT'S MOTION TO DISMISS AND/OR STRIKE
Civ. No. 3:26-cv-00001-SB
4904-2198-1859\4

*Van Patten v. Vertical Fitness Grp., LLC,*
   847 F.3d 1037 (9th Cir. 2017) ...................................................................16, 18

*Viggiano v. Kohl's Dep't Stores, Inc.,*
   2017 WL 5668000 (D.N.J. Nov. 27, 2017) ................................................17, 24

*Walker v. Portland Pub. Sch. Dist. No. 1J,*
   2022 WL 3335529 (D. Or. Aug. 12, 2022)...........................................................13

*Zemel v. CSC Holdings LLC,*
   2018 WL 6242484 (D.N.J. Nov. 29, 2018) .........................................................14

**Statutes**

47 U.S.C. § 227(c)(5).............................................................................................267

**Other Authorities**

47 C.F.R. § 64.1200(c)(2)...................................................................................24, 26

47 C.F.R. § 64.1200(f)(15) .......................................................................................26

47 C.F.R. § 64.1600 .................................................................................................20

47 C.F.R. § 64.1600(b), (e).......................................................................................22

47 C.F.R. § 64.1601(e)..............................................................................................24

47 C.F.R. § 64.1601(e)(1).....................................................................................20, 23

47 C.F.R § 64.1200(a)(10)........................................................................................19

Fed. R. Civ. P. 12(b)(6)................................................................................... *passim*

Fed. R. Civ. P. 12(f)........................................................................................ *passim*

Fed. R. Civ. P. 15(a)(1)(B) ........................................................................................8

Fed. R. Civ. P. 23 .....................................................................................................12

Fed. R. Civ. P. 23(a)(3).............................................................................................30

Fed. R. Civ. P. 23(b)(3).............................................................................................27

*In Re Ruless & Reguls. Implementing the Tel. Consumer Prot. Act of 1991,*
   18 F.C.C. Rcd. 14014 (2003)..............................................................................20

*In the Matter of Rules & Reguls. Implementing the Tel. Consumer Prot. Act of
   1991,* 20 F.C.C. Rcd. 3788 (2005)......................................................................20

Local Rule 15(b)(2)..................................................................................................................21

Local Rule 7-2(b).......................................................................................................................1

DEFENDANT'S MOTION TO DISMISS AND/OR STRIKE
Civ. No. 3:26-cv-00001-SB
4904-2198-1859\4

**LR 7-1 CERTIFICATION**

On April 23, 2026, counsel for Defendant Feel the World, Inc. d/b/a Xero Shoes ("Xero Shoes" or "Defendant") conferred with counsel for Plaintiff Leon Weingrad ("Plaintiff" or "Weingrad") via videoconference, and discussed all of the disputed issues asserted in this Motion to Dismiss the First Amended Complaint ("FAC") (Dkt. 1) and/or Strike or Dismiss Plaintiff's Class Allegations (the "Motion"), but the parties were unable to reach a resolution, thus necessitating this Motion.

**LR 7-2(b) CERTIFICATION**

I hereby certify that this brief complies with the applicable word-count limitation under Local Rule 7-2(b) because it contains 10,999 words, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of cases and authorities, signature block, exhibits, and any certificates of counsel.

**MOTION TO DISMISS**

The FAC does not cure the defects in the Original Complaint ("OC"), so Xero Shoes respectfully submits this Motion to (1) dismiss Plaintiff's FAC in its entirety, pursuant to Fed. R. Civ. P. 12(b)(6); or, alternatively, (2) dismiss or strike Plaintiff's class allegations in the FAC pursuant to Fed. R. Civ. P. 12(b)(6) and/or 12(f), respectively, as facially uncertifiable. Xero Shoes respectfully submits the following Memorandum of Points and Authorities in support of this Motion.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    PRELIMINARY STATEMENT**

This is a classic "manufactured" lawsuit brought by serial plaintiff, Leon Weingrad – who has filed approximately 32 similar lawsuits under the Telephone Consumer Protection Act

1

DEFENDANT'S MOTION TO DISMISS AND/OR STRIKE
Civ. No. 3:26-cv-00001-SB
4904-2198-1859\4

("TCPA").  In his latest abuse of the judicial system, Plaintiff alleges three TCPA claims based on purportedly "unwanted" promotional text messages that Xero Shoes sent to him.  FAC, ¶ 55. However, the log of text messages between Plaintiff and Xero Shoes, Exhibit A to the FAC ("Text Message Log"), makes clear that the FAC is littered with blatant misrepresentations and frivolous allegations that are plainly contradicted by the parties' messages.  The texts establish that Plaintiff consented to Xero Shoes' texts and that Xero Shoes' texts provided the requisite CPN or ANI information (*i.e.*, "caller identification information") and allowed Plaintiff to make a do-not-call request during regular business hours.  Thus, his claims fail as a matter of law, and the FAC does not come close to curing the infirmities in Plaintiff's OC.

While Plaintiff characterizes the messages as "unwanted," he voluntarily engaged and frequently interacted with Xero Shoes in response to Xero Shoes' texts, including by responding "Ok," "Thanks," "Nice!" and "Hello" to receiving Xero Shoes' promotional texts, and by responding "I am" to Xero Shoes' message asking whether Plaintiff was receiving Xero Shoes' texts.  Based on these and other voluntary interactions with Xero Shoes, Plaintiff consented to receiving and invited further messages from Xero Shoes, such that he cannot state a TCPA claim.

Plaintiff also never revoked this consent.  Xero Shoes' messages repeatedly instructed "Reply STOP to stop" or explained that "If you would like to unsubscribe from all future messages, reply STOP," yet Plaintiff never attempted to comply with these simple opt-out instructions. Instead – in a clear attempt to manufacture a TCPA claim – he responded "Wrong number" following his repeated interactions with Xero Shoes.  Further, when Xero Shoes affirmatively offered to assist Plaintiff with changing his account, including unsubscribing Plaintiff from Xero Shoes' messages, Plaintiff ignored Xero Shoes' offer and did not request that the messages stop. The law is clear that where defendant offers a simple means to opt-out of future communications,

such as replying "STOP," and plaintiff fails to follow those instructions, as here, plaintiff's revocation is ineffective. The FAC does not (and no additional future amendment could) cure these deficiencies.

Regarding Plaintiff's Second Cause of Action, Plaintiff alleges that Xero Shoes violated the TCPA by sending marketing texts "without proving [sic] a CPN or ANI that allowed any individual to make a do-not-call request during regular business hours." FAC, ¶ 91. However, this claim is refuted by the Text Message Log, which demonstrates that Xero Shoes transmitted CPN or ANI and permitted Plaintiff to make a "do-not-call request" during regular business hours (indeed, at any time) by simply replying "STOP." Plaintiff just chose not to do so. In his OC, ¶ 25, Plaintiff also conceded that Xero Shoes' texts "transmitted the Caller ID, in the form of both CPN and ANI, as 65099." In the FAC, however, Plaintiff deletes this allegation and improperly alleges the exact opposite position. FAC, ¶¶ 33, 35. Plaintiff cannot cure defects in his OC by omitting allegations or asserting contradictory allegations in his FAC, and such contradictory allegations should be disregarded.

Plaintiff's class allegations separately fail under Rule 12(b)(6) and/or 12(f), and the FAC does nothing to cure the OC's deficiencies here either. Plaintiff proposes three classes, which cover: (1) individuals whose telephone numbers were on the National Do Not Call Registry ("National DNC Registry") but received certain communications from Xero Shoes ("National DNC Class"); (2) individuals who received communications from Xero Shoes, which either (a) did not transmit a CPN or ANI or (b) transmitted a CPN or ANI that did not allow do-not-call requests during regular business hours ("Telemarketing Caller ID Class"); and (3) individuals who received messages from Xero Shoes but "had previously asked for the calls to stop and/or that Defendant was contacting a wrong number" ("Internal Do Not Call Class" or "Stop Class").

3

As was the case in the OC, the National DNC Class still fails because, *inter alia*, it is overbroad, as the proposed class would cover individuals even if they had an established business relationship with Xero Shoes or consented to Xero Shoes' texts and thus, have no viable TCPA claim against Defendant.

The Telemarketing Caller ID Class still fails because, *inter alia*, the FAC fails to allege facts suggesting that Xero Shoes sent any texts without providing a CPN or ANI that allowed recipients to make a do-not-call request during regular business hours. Moreover, even assuming that Xero Shoes sent such texts, Plaintiff would not be a member of this class.

The Stop Class still fails because, *inter alia*, the FAC fails to allege facts suggesting that Xero Shoes improperly texted anyone who had actually asked for Xero Shoes' texts to "STOP." The Stop Class is also overbroad because it covers individuals who previously consented to Xero Shoes' communications but subsequently responded "wrong number"; such individuals did not validly revoked their consent and thus, would not have a TCPA claim. The FAC also fails to allege facts suggesting that anyone else would have tried to revoke their consent by replying "wrong number," rather than "STOP," as Xero Shoes' opt-out instructions made clear. Only someone trying to manufacture a TCPA claim would provide such a response.

The putative class claims also fail because common questions of law and fact would be swamped by individual class-member issues, including issues regarding consent, revocation, and established business relationships.

Accordingly, the FAC should be dismissed in its entirety, or at a minimum, the class claims should be stricken.

DEFENDANT'S MOTION TO DISMISS AND/OR STRIKE
Civ. No. 3:26-cv-00001-SB
4904-2198-1859\4

## II.   FACTUAL BACKGROUND

### A.   Plaintiff Consented to Xero Shoes' Text Messages

Plaintiff's alleged TCPA claims arise from Xero Shoes' purportedly "unwanted" texts to Plaintiff's "503-telephone number" ("503 Number").  FAC, ¶¶ 4, 55.  However, Plaintiff voluntarily and consensually engaged in mutual text exchanges with Xero Shoes.  In response to Xero Shoes' messages, Plaintiff made it appear (falsely) that he was interested in Xero Shoes' products and invited further texts from Xero Shoes.  FAC, Ex. A, p. 1.  For example, in August 2024, Xero Shoes sent a text stating "Xero Shoes: Save 20%+ on new Xero Shoes fall styles.  PLUS...save an EXTRA 5% when you buy 2 or more new styles.  Shop now!"  *Id*.  Plaintiff responded "Ok" to receiving this promotional text.  *Id*.  Xero Shoes responded "Xero Shoes: This is an automated message from Xero Shoes.  If you need additional help, email us at support@xeroshoes.com.  Reply STOP to stop."  *Id*.  Plaintiff did not reply "STOP"; instead, he continued interacting with Xero Shoes.  *Id.*

Xero Shoes then texted Plaintiff "Xero Shoes: Hi!  How can I assist you today?"  *Id*.  When Xero Shoes did not obtain a response, it sent a follow-up text stating "Xero Shoes: Hi Joseph, We hope you are doing well!  We messaged you a few days ago but haven't heard back.  We wanted to check in to see if you are receiving our messages.  Let us know if there is anything else we can do to help."  *Id*.[1]  Plaintiff responded "I am," yet he did not seek Xero Shoes' "help" to stop future texts.  FAC, Ex. A, p. 1.  Xero Shoes, again, responded "Xero Shoes: This is an automated message from Xero Shoes.  If you need additional help, email us at support@xeroshoes.com.  Reply STOP

---

[1] Xero Shoes believed that it was communicating with an individual named Joseph when texting the 503 Number.  *Id*.; *see also id*. at ¶ 22.

5

to stop." *Id.*  Plaintiff, again, did not reply "STOP"; instead, he continued interacting with Xero Shoes. *Id*.  Xero Shoes responded "Xero Shoes: Thank you for letting us know.  Have a great day!"  Plaintiff responded "You two [sic]." *Id*.  Xero Shoes, again, responded "Xero Shoes: This is an automated message from Xero Shoes.  If you need additional help, email us at support@xeroshoes.com.  Reply STOP to stop." *Id*.  Again, Plaintiff did not reply "STOP." *Id*.

In November 2024, Xero Shoes sent Plaintiff another promotional text. *Id*.  Instead of replying "STOP," Plaintiff responded "Nice!" – continuing to lead Xero Shoes to believe that he was interested in Xero Shoes' products and inviting further texts. *Id*.  Xero Shoes, again, responded "Xero Shoes: This is an automated message from Xero Shoes.  If you need additional help, email us at support@xeroshoes.com.  Reply STOP to stop."  Plaintiff, again, did not reply "STOP"; instead, he continued interacting with Xero Shoes, texting back "Hello," which clearly invited a further response from Xero Shoes. *Id*.  Xero Shoes responded "Xero Shoes: How can we help today?" *Id*.  Plaintiff ignored Xero Shoes' offer to help. *Id*.

In December 2024, Xero Shoes sent Plaintiff another promotional text. *Id*.  Plaintiff texted back "Thanks." *Id*.  Xero Shoes, again, responded "Xero Shoes: This is an automated message from Xero Shoes.  If you need additional help, email us at support@xeroshoes.com. Reply STOP to stop."  Xero Shoes also texted "Xero Shoes: Hi Joseph, no problem.  Should you have any further questions or concerns, please don't hesitate to reach out. Take care!" *Id*.  Again, Plaintiff did not reply "STOP" or identify any "concerns" about receiving Xero Shoes' texts.

In November 2025, Xero Shoes sent Plaintiff another promotional text. *Id*. at p. 2.  Plaintiff did not reply "STOP," as Xero Shoes previously made clear would end further texts; he simply texted "Wrong number." *Id*.  Xero Shoes responded "Xero Shoes: If you would like to unsubscribe from all future messages, reply STOP." *Id*.  Again, Plaintiff did not reply "STOP." *Id*.  Xero

DEFENDANT'S MOTION TO DISMISS AND/OR STRIKE
Civ. No. 3:26-cv-00001-SB
4904-2198-1859\4

Shoes followed up with Plaintiff personally, stating "Xero Shoes: Hi Joseph, Thanks for reaching out!  Feel free to let us know if you have any questions or need an account change.  We'd be happy to help!"  *Id*.  Plaintiff never responded to Xero Shoes' offer to assist with an account change, including unsubscribing from Xero Shoes' texts.  *Id*.

Instead, on January 30, 2026, nearly ***three weeks after*** Xero Shoes' last text to Plaintiff, Plaintiff sent an unprompted text to Xero Shoes stating "Please halt these texts please.  They are disturbing my life."  *Id*. at p. 3.

### B.    Procedural History and Plaintiff's Misrepresentations

On January 1, 2026, Plaintiff filed the OC, alleging three TCPA claims.  He (falsely) claimed that he only sent Xero Shoes one text – *i.e.*, the "wrong number" text.  OC, ¶ 21.  Plaintiff concealed his repeated interactions with Xero Shoes, specifically in response to Xero Shoes' promotional texts, which can only be construed as an interest in Xero Shoes' products and an invitation for further texts.  Plaintiff also concealed Xero Shoes' multiple messages explaining that "[i]f [Plaintiff] [wanted] to unsubscribe from all future messages," he simply needed to "reply STOP."  Plaintiff also concealed that he never replied "STOP" and that Xero Shoes sent additional messages in response to Plaintiff's messages that offered assistance.

On March 17, 2026, Xero Shoes moved to dismiss the OC and filed a request for judicial notice.  Dkt. 10-13.  Xero Shoes submitted a log of texts between the parties, revealing Plaintiff's voluntary messages, Xero Shoes' clear opt-out instructions, and Xero Shoes' offers of assistance.  Dkt. 13-1.  In response, Plaintiff filed the FAC on April 14, 2026, which "acknowledges" that

DEFENDANT'S MOTION TO DISMISS AND/OR STRIKE
Civ. No. 3:26-cv-00001-SB
4904-2198-1859\4

Plaintiff communicated with Xero Shoes, ¶ 24, and attaches the Text Message Log – the same messages that Xero Shoes had previously submitted.[2]

The FAC is replete with further misrepresentations.  For example, Plaintiff alleges that "[he] acknowledges that he sent some erroneous calls to Defendant throughout 2024.  Upon information and belief, at least some of these were sent accidentally due to a 'quick response' feature on Plaintiff's phone, which allows a user to tap a response to a message call in response to a notification."  FAC, ¶ 24.  Plaintiff's "quick response" allegations are not plausible:

- None of Plaintiff's messages to Xero Shoes (*i.e.*, "Ok," "I am," "You two [sic]," "Nice!" "Hello," "Thanks") match any of the four "quick responses" that allegedly appear on Plaintiff's phone (*i.e.*, "Okay," "Cool,"; "Okay, see you soon," "I'm read…").  *Compare id. with id.* at Ex. A, p. 1.  If these were quick responses, he would have identified them in the FAC, as he did for the other quick responses.

- Plaintiff's message "Ok" is spelled differently from the word "Okay" that is used in two identified quick responses, and Plaintiff does not explain why "You two [sic]" would be a "quick response," considering its misspelling.

- On November 27, 2024, Plaintiff sent two messages two minutes apart.  Plaintiff does not explain how he made the same mistake twice in two minutes ("accidentally" sending two different quick responses).

Plaintiff clearly sent these messages to Xero Shoes intentionally.

Plaintiff falsely alleges that "[i]t is not possible to send a text message call to [Xero Shoes' 65099] number and lodge a Do Not Call request."  FAC, ¶ 37.  However, the Text Message Log demonstrates that Plaintiff could text 65099 and lodge a do-not-call request by simply texting "STOP."  Plaintiff chose not to do so.  Plaintiff also falsely alleges "[n]or will anybody texting or calling that [65099] telephone number receive an alternate number to call to lodge a do-not-call

---

[2] Plaintiff's FAC, filed without Xero Shoes' consent or Court permission 28 days after Xero Shoes' motion to dismiss, was untimely under FRCP 15(a)(1)(B).  However, to avoid further unnecessary expense to Xero Shoes and judicial burden, Xero Shoes elects to file this Motion.

DEFENDANT'S MOTION TO DISMISS AND/OR STRIKE
Civ. No. 3:26-cv-00001-SB
4904-2198-1859\4

request." FAC, ¶ 38. In response to Plaintiff's texts, Xero Shoes repeatedly responded "[i]f you need additional help, email us at support@xeroshoes.com." *Supra*, 5-6. Plaintiff does allege that he submitted a do-not-call request to support@xeroshoes.com.

Plaintiff falsely alleges that his "wrong number" message "was ignored." FAC, ¶ 37. In response to that message, not only did Xero Shoes explain that "[i]f you would like to unsubscribe from all future messages, reply STOP," but Xero Shoes also sent Plaintiff a separate message specifically offering to assist Plaintiff personally with any account changes. *Supra*, 6-7. Ironically, it was Plaintiff who "ignored" Xero Shoes' simple opt-out instructions and offer of assistance. His propensity to file similar TCPA claims suggests he did so to manufacture yet another one.

The FAC also includes a "Class Action Statement" wherein Plaintiff formulaically recites class allegations, in conclusory fashion, regarding three defined classes. FAC, pp. 11-13. As discussed below, the FAC lacks any factual allegations and reasonable inferences establishing the plausibility of Plaintiff's class allegations. *Infra*, pp. 25-35. In such circumstances, this Court has previously granted a motion to strike class allegations. *See Murch v. GPS Cap. Markets, LLC*, 2025 WL 2466576, at *16-18 (D. Or. June 6, 2025) (recommending either dismissing under Rule 12(b)(6) or striking under Rule 12(f) class allegations), *report and recommendation adopted in part, rejected in part on other grounds*, 2025 WL 2770190 (D. Or. Sept. 26, 2025).

### C.    Plaintiff Is a Serial TCPA Plaintiff who Manufactured this Lawsuit

Plaintiff has filed at least 34 similar TCPA class action lawsuits, each alleging that Plaintiff received purportedly unwanted communications from various businesses. *See generally* accompanying Request for Judicial Notice ("RJN"). Against this backdrop, and in light of Plaintiff's voluntary engagement and repeated interactions with Xero Shoes and his refusal to

9

DEFENDANT'S MOTION TO DISMISS AND/OR STRIKE
Civ. No. 3:26-cv-00001-SB
4904-2198-1859\4

comply with Xero Shoes' simple opt-out instructions or respond to Xero Shoes' offers to assist with any account changes, it is clear that Plaintiff manufactured his TCPA claim. Indeed, long after Plaintiff received any messages from Xero Shoes, Plaintiff sent an unprompted message to Xero Shoes stating "Please halt these texts please. They are disturbing my life." FAC, Ex. A, p. 3. Tellingly, Plaintiff used the word "halt," not "STOP."

## III.    ARGUMENT

### A.    The Court Should Consider Plaintiff's Prior TCPA Complaints

The Court should take judicial notice of Plaintiff's 34 other TCPA complaints, which Xero Shoes introduces not for the truth of their contents, but to establish their existence and the similarity of their allegations and claims to those in this lawsuit. *Epps v. Earth Fare, Inc.*, 2017 WL 1424637 (C.D. Cal. Feb. 27, 2017) similarly took judicial notice of plaintiff's prior TCPA complaints, where the defendant argued that plaintiff – a serial TCPA plaintiff, like Plaintiff here – "manufactured" his lawsuit. *Epps*, 2017 WL 1424637, at *3. *Epps* explained:

> The Court takes judicial notice of Exhibits 1-3, which Defendant introduces solely for their existence and the similarity of the allegations and claims with those in this matter…. These three complaints are public documents filed in the District Court for the Central District of California, which are proper matters for judicial notice. *See*, *e.g.*, *In Re Icenhower*, 755 F.3d 1130, 1142 (9th Cir. 2014). Without considering the truth of their contents, the Court judicially notices the fact that, including the instant action, Plaintiff filed four TCPA lawsuits in district court between November 3, 2016 and December 6, 2016…. The complaints, including the instant one, each allege that: Plaintiff consented to receive automated commercial text messages from the respective defendants, the defendant sent these messages using an ATDS, and Plaintiff subsequently withdrew consent to receive further messages but continued to receive the messages.

*Id*. at *2; *see also Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 (9th Cir. 2006) ("We may take judicial notice of court filings.").

Similar to this case, Plaintiff's 34 other complaints allege TCPA claims based on purportedly unwanted communications, including via text messages, from defendants in those

10

DEFENDANT'S MOTION TO DISMISS AND/OR STRIKE
Civ. No. 3:26-cv-00001-SB
4904-2198-1859\4

cases. *See generally* RJN. In certain complaints, Plaintiff quotes texts that he allegedly received from defendants that include opt-out instructions that are similar to the ones in this case, yet by Plaintiff's own allegations, he failed to comply with those instructions in those cases, as he did here.[3] For example, in *Weingrad v. Denny's Inc.*, Plaintiff quotes 12 messages that he allegedly received, all of which state: "Reply HELP for help or STOP to cancel." *Leon Weingrad v. Denny's Inc.*, 3:26-cv-00342-JR, Dkt. 1 (D. Or.), ¶ 32. Plaintiff does not allege that he responded by texting "STOP." Instead, Plaintiff alleges that "on November 1, 2025, the Plaintiff indicated to Defendant that it was likely communicating with a wrong number" (*id*. at ¶ 21), which is almost identical to Plaintiff's "wrong number" allegation here (FAC, ¶ 28). In *Weingrad v. Denny's Inc.*, ¶ 22, Plaintiff also allegedly texted "No more texts please. This is disturbing my life," not "STOP." Notably, Plaintiff sent a nearly identical text to Xero Shoes (unprompted) stating: "Please halt these texts please. They are disturbing my life." FAC, Ex. A, p. 3.

**B.    Legal Standard**

*1.    <u>Rule 12(b)(6)</u>*

Under Rule 12(b)(6), "[w]here the plaintiff 'fails to state a claim upon which relief can be granted,' the court must dismiss the action." *National Labor Relations Board v. Oregon*, 2020 WL 5994997, *2 (D. Or. Oct. 9, 2020). Dismissal is warranted when a claim "either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013). While courts must accept as true all factual allegations and draw all reasonable inferences in plaintiff's favor, it need not accept as true "'threadbare recitals of a cause of action's elements, supported by mere conclusory statements.'"

---

[3] RJN, p. 5, n.2.

DEFENDANT'S MOTION TO DISMISS AND/OR STRIKE
Civ. No. 3:26-cv-00001-SB
4904-2198-1859\4

*B.N. v. Oregon Reproductive Medicine, LLC*, 2025 WL 3165965, *1 (D. Or. Nov. 12, 2025) (citation omitted). "[T]he court is not required to accept as true 'allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.'" *Todd v. Whitaker*, 2016 WL 4216777, *2 (D. Or. Aug. 8, 2016) (citation omitted). The same is true of allegations "'that contradict matters properly subject to judicial notice or by exhibit.'" *Id.* (citation omitted).

Courts will also "dismiss class allegations under the *Twombly/Iqbal* standard where the complaint 'lacks **any** factual allegations and reasonable inferences that establish the plausibility of class allegations.'" *Murch*, 2025 WL 2466576, at *14 (emphasis in original; collecting cases). "Dismissing class allegations under the *Twombly/Iqbal* standard 'does not test Plaintiff's compliance with Rule 23, and instead measures those claims under Rule 8(a)'s federal pleading standard.'" *Id.* (collecting cases). Thus, "'[i]f the class allegations are legally or factually defective,… dismissal is appropriate.'" *Id.* (collecting cases).

### 2.    *Rule 12(f)*

Rule 12(f) provides that courts "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." "'The function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial….'" *Leon v. Loandepot.com, LLC*, 2025 WL 2632396, *2 (C.D. Cal. Aug. 22, 2025) (citation omitted). "'Where the complaint demonstrates that a class action cannot be maintained on the facts alleged, a defendant may move to strike the class allegations prior to discovery.'" *Murch*, 2025 WL 2466576, *16. "'[W]here the plaintiffs fail to make even a prima facie showing of Rule 23's prerequisites,… the burden is on the plaintiff to demonstrate that discovery measures are likely to produce persuasive information substantiating the class action allegations.'" *Id*. (citation omitted).

DEFENDANT'S MOTION TO DISMISS AND/OR STRIKE
Civ. No. 3:26-cv-00001-SB
4904-2198-1859\4

**C.    The FAC Should Be Dismissed in Its Entirety Pursuant to Rule 12(b)(6).**

**1.    *Plaintiff's Claims Fail Because He Consented to Xero Shoes' Texts***

All of Plaintiff's TCPA claims fail because he consented to Xero Shoes' texts and did not effectively revoke that consent.

**a.    Plaintiff Consented to Xero Shoes' Texts**

A TCPA claim requires that texts be sent "***without the recipient's prior express consent***." *Epps*, 2017 WL 1424637, at *4 (quoting *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012)) (emphasis in original).  Plaintiff cannot state any TCPA claim because he expressly consented to Xero Shoes' texts based on his repeated, receptive interactions with Xero Shoes that invited further texts from Xero Shoes.

*Barton v. LeadPoint, Inc.*, 2022 WL 123352 (W.D. Wash. Jan. 13, 2022), *aff'd*, 2023 WL 4646103 (9th Cir. July 20, 2023) is instructive.  There, like in this case, "[plaintiff Nathan] Barton's TCPA case [arose] from an unsolicited text message he received," which "was addressed to someone else" named "Wendy." *Id.* at *1.  Similar to this case, the message instructed the recipient "TxtSTOPtoEnd."  The court held that plaintiff consented to further communications from defendants because rather than reply "STOP," plaintiff "visit[ed] and interact[ed] with the website linked in the first text." *Id.* at *2.  The court also agreed that plaintiff attempted to manufacture his TCPA claim. *Id.*  ("[Defendants] emphasize that had Barton replied 'STOP' to the first text he received, he would not have received the other calls, upon which his remaining TCPA claims against the remaining defendants rely….  They assert, persuasively, that Barton did so to 'manufacture' a claim for statutory TCPA damages.").

Here, Plaintiff similarly consented to receiving and invited further communications from Xero Shoes.  Rather than simply reply "Stop" – as Xero Shoes' opt-out instructions made clear –

13

DEFENDANT'S MOTION TO DISMISS AND/OR STRIKE
Civ. No. 3:26-cv-00001-SB
4904-2198-1859\4

Plaintiff, by responding "Ok," "Nice!" "Thanks," and "Hello," etc., to receiving Xero Shoes' promotions, voluntarily engaged with Xero Shoes and made it appear as though he was interested in its products.  In so doing, he invited further texts from Xero Shoes.  *Zemel v. CSC Holdings LLC*, 2018 WL 6242484, at *5 (D.N.J. Nov. 29, 2018) ("When an individual sends a message inviting a responsive text, there is no TCPA violation.").  This constituted express consent by Plaintiff to engage in further communications with Xero Shoes.  His attempt "to manufacture a claim for statutory TCPA damages" should be rejected, as it was in *Barton*.[4]

Plaintiff's allegation that "[u]pon information and belief, at least some of [his texts] were sent accidentally due to a 'quick response' feature on Plaintiff's phone" does not save his claim. *Supra*, pp. 8.  *First*, whether some of these were "quick responses" doesn't matter; Plaintiff implicitly concedes that inversely, "at least some of" his messages were ***not*** "erroneous" or "accidentally" sent.  Thus, Plaintiff manually wrote those messages and sent them on purpose.  *Id*.

*Second*, Plaintiff's allegation – pleaded "[u]pon information and belief" – should be disregarded because the relevant fact is not peculiarly within Xero Shoes' possession and control. It is within Plaintiff's peculiar knowledge as to whether he did or did not accidentally send a "quick response," and he does not allege any facts that support his conclusory assertion that he may "accidentally" have done so.  *Rote v. New Jersey Judiciary*, 2025 WL 2308608, at *6, n.10 (D. Or. June 17, 2025), *report and recommendation adopted*, 2025 WL 2306989 (D. Or. Aug. 8, 2025) ("Factual allegations on information and belief that are not peculiarly within the possession and

---

[4] Plaintiff's allegation that "[he] denies that the aforementioned communications constituted valid or sufficient TCPA consent" (FAC, ¶ 26) should be "disregard[ed]" because it is plainly a "legal conclusion[]." *Mosqueda v. Am. Honda Motor Co., Inc.*, 443 F. Supp. 3d 1115, 1123 (C.D. Cal. 2020).

DEFENDANT'S MOTION TO DISMISS AND/OR STRIKE
Civ. No. 3:26-cv-00001-SB
4904-2198-1859\4

control of the defendant and are merely conclusory or are 'naked assertions devoid of further factual enhancement' contribute nothing to the sufficiency of the complaint,'… and the Court need not accept them as true.") (citation omitted); *Walker v. Portland Pub. Sch. Dist. No. 1J*, 2022 WL 3335529, at *10 (D. Or. Aug. 12, 2022) (rejecting "upon information and belief" allegations where "[t]he relevant facts… are not known only by Defendants—Plaintiff himself would be in possession of any such facts—and conclusory allegations are insufficient to state a claim."). Moreover, the facts alleged in the FAC undermine Plaintiff's allegation; they do not "enhance" it. None of Plaintiff's actual texts match any of the "quick responses," and in fact, some of the messages clearly were not "quick responses." *Supra*, pp. 8.  There is also no plausible explanation regarding why Plaintiff would "accidentally" press the wrong prompt on multiple occasions when communicating with Xero Shoes.

*Third*, even though Plaintiff takes the unusual step of citing case law and statutes purportedly supporting various propositions throughout the FAC (*see*, *e.g.*, FAC, ¶¶ 1-2, 9-14, 16, 34, 40, 52), Plaintiff provides no authority for the proposition that the "accidental" nature of his transmission of "some text messages" somehow negates his consent.  Indeed, exposing companies to TCPA liability when a plaintiff "accidentally" consents would create significant uncertainty for companies when marketing and could not have been an intended result under the TCPA.

Accordingly, because Plaintiff consented to Xero Shoes' messages, he has no claim.

### b.    Plaintiff Did Not Revoke his Consent

Plaintiff did not effectively revoke his consent because he did not communicate his purported revocation by reasonable means, and the purported revocation itself was not a clear and express desire not to be texted.

15

DEFENDANT'S MOTION TO DISMISS AND/OR STRIKE
Civ. No. 3:26-cv-00001-SB
4904-2198-1859\4

To effectively revoke consent under the TCPA, the consent must be revoked by "reasonable" means. *Epps*, 2017 WL 1424637, at *5. When "assessing whether any particular means of revocation used by a consumer was reasonable," the court should consider:

> [T]he ***totality of the facts and circumstances*** surrounding that specific situation, including, for example, whether the consumer had a ***reasonable expectation that he or she could effectively communicate his or her request for revocation to the caller in that circumstance***, and whether the caller could have implemented mechanisms to effectuate a requested revocation ***without incurring undue burdens***.

*Id*. (emphasis in original). Further "[r]evocation of consent must be clearly made and express a desire not to be called or texted." *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1048 (9th Cir. 2017).

Here, the means by which Plaintiff purportedly sought to revoke his consent was anything but reasonable. *Epps* is instructive. There, as here, plaintiff received numerous texts that provided "Text STOP to end." 2017 WL 1424637, at *2. Instead of simply texting "STOP":

> Plaintiff alleges that she revoked consent via the following five text messages sent over the course of two months:
>
> (1) "I would appreciate [it] if we discontinue any further texts;" (2) "Thank you but I would like the text messages to stop can we make this happen;" (3) "I'm simply asking for texts to stop. I would appreciate that. Thanks;" (4) "As I requested earlier I asked that the text would stop, I would greatly appreciate it. Thank you;" and (5) "I'm simply asking for texts to stop. I would appreciate that. Thanks."

*Id*. at *5. *Epps* held that this revocation was ineffective, reasoning that:

> The totality of the plausibly alleged facts, even when viewed in Plaintiff's favor, militate against finding that Plaintiff's revocation method was reasonable…. Without explanation, Plaintiff ignored Defendant's clear instruction to stop the messages. [H]eeding Defendant's opt-out instruction would not have plausibly been more burdensome on Plaintiff than sending verbose requests to terminate the messages.

*Id*. Here, Plaintiff engaged in the same noncompliance with simple opt-out instructions – only in a fashion that was more egregious. In *Epps*, plaintiff sent five separate texts expressly "asking for

16

texts to stop"; here, Plaintiff sent a single, two-word "wrong number" message. FAC, Ex. A, p. 2. Plaintiff then ignored Xero Shoes' follow-up communications, which reiterated that "If you would like to unsubscribe from all future messages, reply STOP," separately offered to assist Plaintiff with any "account change," and explained that Xero Shoes would "be happy to help" with implementing such changes. *Id*. Had Plaintiff acted reasonably, he would have simply texted "STOP" or responded to Xero Shoes' offer to make any changes to his account that he wanted. He chose not to do so.

*Rando v. Edible Arrangements Int'l, LLC*, 2018 WL 1523858 (D.N.J. Mar. 28, 2018) is similarly instructive. There, the court held that Plaintiff failed to allege that "she revoked her consent 'using [a] reasonable method,'" reasoning:

> When presented with the direction "Reply HELP for help. STOP to cancel," Plaintiff instead replied: "Take my contact info off please."…[;] "Thank you. I'd like my contact info to be removed"; "Checking in today to see if my information is removed"; "Haven't heard from this service"; "I want to confirm I have been removed off your contacts"; "I'd like to be removed from this"; "I asked to be removed from this service[.]"…

> The Court finds that, in the totality of the circumstances, a reasonable person seeking to revoke consent would have tried, at least at some point during the back-and-forth, simply replying "STOP" to cancel—as instructed, rather than ignoring Defendant's revocation method and sending ten long text messages to that effect, most of which did not include the word "stop" at all. There can be no question on these factual allegations but that Plaintiff did not comply, nor even attempt to comply, with the apparently simple directions repeatedly given to her: "Reply...STOP to cancel."

> The Court concludes that, given the factual circumstances alleged by Plaintiff, she does not plausibly state a claim that she used a reasonable means of revoking her consent, in part because it cannot be fairly said that she "had a reasonable expectation that...she could effectively communicate...her request for revocation to the caller in that circumstance[.]" Her failure to follow the apparently clear and apparently non-burdensome optout instructions remains unexplained.

*Id*. at \*7-8. In *Viggiano v. Kohl's Dep't Stores, Inc.*, 2017 WL 5668000 (D.N.J. Nov. 27, 2017), the court similarly held that plaintiff's revocation was ineffective when she ignored texts

17

"instructing her to text 'STOP' to opt out of future texts" (*Id*. at *4) "but instead sent several sentence-long messages to inform Defendant she was opting out" (*Id*. at *3). *Rando* and *Viggiano* make clear that Plaintiff's revocation was ineffective because he failed to follow clear, nonburdensome opt-out instructions.

Moreover, Plaintiff's "wrong number" message was not only an unreasonable means to revoke consent, but the message itself was not even a "clear[]" and "express" "desire not to be… texted." *Van Patten*, 847 F.3d at 1048 (holding that plaintiff did not effectively revoke consent and explaining that consent could have been revoked, for example, by "plainly telling Defendants not to contact him on his cell phone when he called to cancel his gym membership or messaging 'STOP' after receiving the first text message"); *Stewart v. Network Cap. Funding Corp.*, 549 F. Supp. 3d 1058, 1060 (C.D. Cal. 2021) ("Plaintiff's statement that he did not have a house, at best, expressed disinterest in NCFC's services; it fell short of 'clearly express[ing]' his desire not to receive additional calls from NCFC."). Again, if Plaintiff intended to provide a "clear[]" or "express" "desire not to be… texted," he would have simply replied "Stop" or plainly asked Xero Shoes to stop contacting him. Instead, he ignored Xero Shoes' messages so he could manufacture this litigation.

Plaintiff alleges that "Defendant contacted Plaintiff months after" he sent his repeated, receptive texts to Xero Shoes. FAC, ¶ 25. However, the lapse of time between Plaintiff's consent in 2024 and Xero Shoes' messages in 2025 is irrelevant. "The time lapse… is… insignificant because 'consent under the TCPA does not expire on its own; it must be revoked.'" *Van Patten v. Vertical Fitness Grp., LLC*, 22 F. Supp. 3d 1069, 1077 (S.D. Cal. 2014), *aff'd*, 847 F.3d 1037 (9th Cir. 2017); *Dolemba v. Kelly Servs., Inc.*, 2017 WL 429572, at *3 (N.D. Ill. Jan. 31, 2017) (accord); *Payton v. Kale Realty, LLC*, 164 F. Supp. 3d 1050, 1065 (N.D. Ill. 2016) (accord).

DEFENDANT'S MOTION TO DISMISS AND/OR STRIKE
Civ. No. 3:26-cv-00001-SB
4904-2198-1859\4

Plaintiff also emphasizes that Xero Shoes sent "*two [text messages] after this litigation was **served**.*" FAC, ¶¶ 28, 32 (emphasis in original). This argument is misplaced because these messages were sent well within the TCPA's temporal safe harbor provision following service. Under the TCPA, "opt-out requests must be honored 'within a reasonable time from the date that the request is made, not to exceed 10 business days after receipt of the request.'" *Menin v. Star Markets Co., Inc.*, 2024 WL 4123522, at *5 (D. Mass. Sept. 9, 2024) (quoting *Strengthening the Ability of Consumers To Stop Robocalls*, 89 Fed. Reg. 15756-01, 15758, 2024 WL 915454, at *1 (Mar. 5, 2024)); *see also* 47 CFR § 64.1200(a)(10); *Hulett v. Eyebuydirect, Inc.*, 2025 WL 1677071, at *2 n.4 (N.D.N.Y. June 13, 2025). Here, Xero Shoes was served with the OC on January 9, 2026 (Dkt. 7, ¶ 2), and Xero Shoes sent Plaintiff texts on January 9, 2026 (the same day as service) and January 13, 2026 (two business days after service) (FAC, Ex. A, p. 3) – well before the ten-business-day outer limit. The only party to this lawsuit who sent a message over 10 business days after service of process was Plaintiff himself, as part of his attempt to manufacture a TCPA claim.

Accordingly, the FAC should be dismissed in its entirety under Rule 12(b)(6).

     2.    <u>Separately, the Second Cause of Action Fails Because Xero Shoes Transmitted a CPN or ANI that Allowed Do-Not-Call Requests to Be Made During Regular Business Hours</u>

The Second Cause of Action alleges that Xero Shoes violated the TCPA by sending Plaintiff texts that failed to include caller identification information in the form of either CPN or ANI that allowed Plaintiff to submit a do-not-call request during regular business hours. Separate and apart from Plaintiff's failure to revoke his express consent, this claim fails because the Text Message Log makes clear that Xero Shoes transmitted a CPN or ANI that allowed recipients to make do-not-call requests during regular business hours – *i.e.*, "If [Plaintiff] [wanted] to

19

unsubscribe from all future messages," he simply needed to "reply STOP" to Xero Shoes' 65099 number at any time.  FAC, Ex. A, p. 2.

Pursuant to 47 C.F.R. § 64.1601(e)(1), "[a]ny person or entity that engages in telemarketing...must transmit caller identification information," which includes "either CPN or ANI, and, when available by the telemarketer's carrier, the name of the telemarketer."  The relevant statutory definitions are as follows:

> (b) ANI.  The term "ANI" (automatic number identification) refers to the delivery of the calling party's billing number by a local exchange carrier to any interconnecting carrier for billing or routing purposes, and to the subsequent delivery of such number to end users.
>
> (c) Caller identification information.  The term "caller identification information" means information provided by a caller identification service regarding the telephone number of, or other information regarding the origination of, a call made using a voice service or a text message sent using a text messaging service.
>
> (e) Calling party number.  The term "Calling Party Number" [CPN] refers to the subscriber line number or the directory number contained in the calling party number parameter of the call set-up message associated with an interstate call on a Signaling System 7 network.

47 C.F.R. § 64.1600.

The Federal Communications Commission ("FCC") further explained that a CPN simply "includes a number assigned to the telemarketer by its carrier, the specific number from which a sales representative placed a call, the number for the party on whose behalf the telemarketer is making the call, or the seller's customer service number."  *In Re Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14122, ¶ 180 (2003); *In the Matter of Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 20 F.C.C. Rcd. 3788, 3807-08, ¶ 50 (2005) (same).

47 C.F.R. § 64.1601(e)(1) also requires that the provided number "must permit any individual to make a do-not-call request during regular business hours."

20

DEFENDANT'S MOTION TO DISMISS AND/OR STRIKE
Civ. No. 3:26-cv-00001-SB
4904-2198-1859\4

Xero Shoes met these statutory requirements. The Text Message Log confirms that Xero Shoes transmitted both CPN and ANI via its texts, as the number 65099 is listed next to every message that Plaintiff received from Xero Shoes. The Text Message Log also demonstrates that Xero Shoes included its name in all of its texts to Plaintiff and repeatedly offered that "If you need additional help, email us at support@xeroshoes.com." *Supra*, pp. 5-7.

In his OC, Plaintiff himself expressly conceded that (1) Xero Shoes' short code, 65099, constituted "both CPN and ANI" and (2) such CPN and ANI was "transmitted" in each of Xero Shoes' purportedly violative messages. OC, ¶ 25 ("Plaintiff received at least 16 telemarketing text message calls from Defendant from the telephone number and transmitted the Caller ID, ***in the form of both CPN and ANI, as 65099*** between September 27, 2025 and at least December 2025.") (emphasis added). It is well-settled that "[a] party cannot amend pleadings to 'directly contradic[t] an earlier assertion made in the same proceeding.'" *Airs Aromatics, LLC v. Victoria's Secret Stores Brand Mgmt., Inc.*, 744 F.3d 595, 600 (9th Cir. 2014) (citation omitted). Plaintiff seeks to do exactly that. The FAC now erroneously alleges that "[t]he Caller ID 65099 is not a valid CPN or ANI" and that "no CPN or ANI was transmitted" by Xero Shoes' messages. FAC, ¶¶ 33, 35. These new, contradictory allegations should be disregarded.[5]

Notwithstanding, these new allegations plainly also are wrong. While Plaintiff quotes the definitions of CPN and ANI (*id.* at ¶ 34), he does not explain why a five-digit short code, such as

---

[5] Plaintiff also failed to comply with LR 15(b)(2) by failing to attach as an exhibit "[a] copy of the… amended pleading that shows – through redlining… – how the amended pleading differs from the… superseded pleading." For the Court's convenience, the accompanying Declaration of Christopher Karagheuzoff attaches a redline comparison between the OC and the FAC, which demonstrates how, *inter alia*, Plaintiff simply deleted this critical concession from the OC and added contradictory allegations to the FAC.

21

DEFENDANT'S MOTION TO DISMISS AND/OR STRIKE
Civ. No. 3:26-cv-00001-SB
4904-2198-1859\4

65099, does not meet those definitions.  For example, Plaintiff fails to explain why the 65099 short code is not, among other things, Xero Shoes' "directory number" and "billing number," as set forth in 47 C.F.R. § 64.1600(b), (e), or why it is not "a number assigned to" Xero Shoes "by its carrier" or "the specific number from which" Xero Shoes sent its texts, as the FCC has explained.  *Supra.*

Indeed, courts have regularly dismissed TCPA claims even though they involve texts sent via similar short codes.  In *Moskowitz v. Am. Sav. Bank, F.S.B.*, 37 F.4th 538 (9th Cir. 2022), defendant sent the allegedly violative texts via a five-digit short code:

> ASB offers mobile text banking services to customers, so that such customers can perform banking functions on their mobile phones.  ASB maintains a "short code" for use for this service, 27244.  A short code is a short (in this case, five digit) telephone number a business can use to send and receive text messages.  ASB uses its short code to provide mobile banking services via text messages to customers who have enrolled their mobile phone numbers with ASB….

*Id.* at 539-40.  The Ninth Circuit affirmed dismissal of the TCPA claim because plaintiff consented to the messages.  *Id.* at 541-42.  The court did not suggest that sending messages via the five-digit short code somehow violated the TCPA.

In *Emanuel v. Los Angeles Lakers, Inc.*, 2013 WL 1719035 (C.D. Cal. Apr. 18, 2013), plaintiff alleged that he received "an 'unsolicited text message from the 525377 number attributed to Defendant.'"  *Id.* at *1.  The court dismissed the claim because plaintiff consented to receiving the message.  Again, the court did not suggest that sending telemarketing messages via a short code violated the TCPA.

*Epps* and *Rando* also both involved short codes.  *Epps v. Earth Fare, Inc.*, 2:16-cv-08221-SJO-SS, Dkt. 24-3 (C.D. Cal.) (short code 71700); *Rando v. Edible Arrangements Int'l, LLC*, 1:17-cv-00701-JBS-AMD, Dkt. 5-3 (D.N.J.) (short code 334253).  Neither decision suggests that

22

DEFENDANT'S MOTION TO DISMISS AND/OR STRIKE
Civ. No. 3:26-cv-00001-SB
4904-2198-1859\4

sending telemarketing messages via a short code violated the TCPA.  *Epps*, 2017 WL 1424637; *Rando*, 2018 WL 1523858.[6]

Plaintiff's position – that the use of short codes to send promotional texts categorically violates the TCPA – cannot possibly be the law.  The above-decisions (among many others) demonstrate that companies regularly use short codes to communicate with large numbers of existing and prospective customers.  Collectively, companies across the country would be exposed to billions of dollars in statutory damages under the TCPA based on their regular, en masse messages to their customers using short codes.

Separately, the Text Message Log establishes that the 65099 short code permitted Plaintiff to submit a do-not-call request during regular business hours.  Xero Shoes informed Plaintiff how he could submit a do-not-call request in multiple texts.  These instructions were clear and nonburdensome.  Xero Shoes also specifically offered to assist Plaintiff personally with any changes that he wanted to make to his account, which would include unsubscribing Plaintiff from all future messages, and provided Plaintiff with an additional means to communicate with Xero Shoes (*i.e.*, support@xeroshoes.com).  Despite these clear instructions on how to make a do-not-call request, Plaintiff never replied "STOP," and ignored Xero Shoes' offer to make account changes.

In his FAC, Plaintiff now alleges that "[i]t is not possible for any individual to call that 65099 number back with *a voice call* to lodge a Do Not Call request."  FAC, ¶ 36 (emphasis added).  So what?  There is no requirement that Plaintiff must be able "to make a do-not-call

---

6 Plaintiff argues that "[t]here is no consent defense to 47 C.F.R. § 64.1601(e)(1)."  FAC, ¶ 15.
Plaintiff cites no authority for this argument.  Further, the above-decisions dismissed TCPA claims
involving texts sent via short codes where plaintiffs had consented to the messages.

DEFENDANT'S MOTION TO DISMISS AND/OR STRIKE
Civ. No. 3:26-cv-00001-SB
4904-2198-1859\4

request" via *a voice call*.  47 C.F.R. § 64.1601(e) simply provides "[t]he telephone number so provided must permit any individual to make a do-not-call request during regular business hours." FCC guidance also makes clear that a "voice call" do-not-call request is not required.  As explained in *Epps*, "[t]he FCC rules 'require[ ] *callers give consumers a direct opt-out mechanism such as… a reply of 'STOP' for text messages*.  The common thread linking these cases is that consumers must be able to respond to an unwanted call… using either a reasonable *oral method or a reasonable method in writing*… to prevent future calls.'" 2017 WL 1424637, at \*5 (emphasis in original) (quoting *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961, 7996 ¶ 64 (July 10, 2015); *Viggiano*, 2017 WL 5668000, at \*3 (same); *Rando*, 2018 WL 1523858, at \*5 (accord).  Moreover, given that Xero Shoes' messages were sent via *written text messages*, it was perfectly reasonable to permit an opt-out "method in writing," "such as… a reply of 'STOP' for text messages." *Supra*.

Because Xero Shoes' messages transmitted caller identification information, which included either CPN or ANI, identified Xero Shoes' name, and permitted Plaintiff to submit a do-not-call request during regular business hours (which Plaintiff elected not to follow), his second cause of action fails.

3.    *Separately, the First Cause of Action Fails Because Plaintiff Does Not Allege that He Registered His Phone Number on the National DNC Registry*

The First Cause of Action arises from Plaintiff's receipt of Xero Shoes' texts despite his phone number being registered on the National DNC Registry.  However, this claim separately fails because Plaintiff does not allege that he (as opposed to someone else) registered the 503 Number on the National DNC Registry.

47 C.F.R. § 64.1200(c)(2) prohibits telephone solicitation to "[a] residential telephone subscriber *who has registered his or her telephone number* on the national do-not-call registry of

24

DEFENDANT'S MOTION TO DISMISS AND/OR STRIKE
Civ. No. 3:26-cv-00001-SB
4904-2198-1859\4

persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." *Id*. (emphasis added).  Courts have held that where plaintiffs have not alleged that they registered their own number on the National DNC Registry, "as opposed to someone else placing their numbers on the list," the claims fail.  *See, e.g.*, *Rogers v. Assurance IQ, LLC*, 2023 WL 2646468, *4 (W.D. Wash. Mar. 27, 2023); *Rombough v. Robert D. Smith Ins. Agency, Inc.*, 2022 WL 2713278, at *2-4 (N.D. Iowa June 9, 2022).

Here, Plaintiff has not alleged that he himself registered the 503 Number on the National DNC Registry.  He simply alleges that (1) he is a member of the National DNC Class (FAC, ¶ 68) and (2) Xero Shoes made telemarketing calls "to Plaintiff and members of the National Do Not Call Registry Class despite their numbers being on the National Do Not Call Registry" (*Id*. at ¶ 84).  Thus, the First Cause of Action fails.[7]

     **D.**     **Plaintiff's Class Allegations for Each of the Three Proposed Classes Should Be Stricken under Rule 12(f)**

For the foregoing reasons, the FAC should be dismissed in its entirety.  But even if the Court were to decline to dismiss the FAC in whole or in part, the class allegations should be stricken.

     *1.*     *Plaintiff's Allegations Regarding the Proposed National DNC Class Must Be Stricken Because the Class Is Overbroad and Lacks Predominance*

The National DNC Class fails because it is overbroad and common questions of law and fact would not predominate over individual issues.

---

[7] Xero Shoes recognizes that because this Court previously rejected this argument in *Murch*, 2025 WL 2466576, at *13-14, and that other courts in the Circuit have as well, it is unlikely to grant the motion on this ground.  However, Xero Shoes respectfully raises this argument to, at a minimum, preserve it.

DEFENDANT'S MOTION TO DISMISS AND/OR STRIKE
Civ. No. 3:26-cv-00001-SB
4904-2198-1859\4

*First*, the proposed National DNC Class definition is overbroad because it includes individuals who consented to Xero Shoes' texts or had an established business relationship with Xero Shoes and thus, would have no viable TCPA claim against Xero Shoes. Indeed, even where an individual has registered his or her number on the National DNC Registry, if that individual consents to receiving telemarketing communications or has an established business relationship with defendant, the National DNC Registry registration is overridden by such consent or relationship. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2), (f)(15) (excluding from the term "telephone solicitation" "a call or message… (i) [t]o any person with that person's prior express invitation or permission; [or] (ii) [t]o any person with whom the caller has an established business relationship…."); *Dobronski v. SelectQuote Insurance Services*, 2024 WL 3843119, *10 (E.D. Mich. June 27, 2024) ("[T]hat online form would be deemed consent and override the National Do Not Call Registry"). Thus, courts have held that defining a class as individuals whose numbers are registered on the National DNC Registry, without excluding individuals who consented to the communications or have an established business relationship with defendant – as the National DNC Class is written – would be overbroad because that class would include individuals who have no viable TCPA claim. *Leon v. Loandepot.com, LLC*, 2025 WL 2632396, at *3 (C.D. Cal. Aug. 22, 2025).

In *Leon*, "[t]he proposed class include[d] all individuals in the United States with phone numbers on the National Do-Not-Call Registry" without limitations that addressed consent or whether there was a prior business relationship. *Id*. The Court held that "[p]laintiff's proposed class include[d]… individuals who clearly ha[d] no cognizable claim against Defendant under the TCPA," reasoning:

> Such a broad class includes individuals who gave Defendant consent to contact them [and] who had a prior business relationship with Defendant…, and who

26

DEFENDANT'S MOTION TO DISMISS AND/OR STRIKE
Civ. No. 3:26-cv-00001-SB
4904-2198-1859\4

therefore have no viable claim against Defendant under the relevant TCPA provisions. Because the class fails to exclude these members who necessarily lack standing to sue under the TCPA, the class is overly broad. *See Brown v. Nano Hearing Tech Opco, LLC*, 2024 WL 3367536, at *8 (S.D. Cal. July 9, 2024) ("[The] class definition necessarily includes any individuals who have consented to calls…. [T]hese individuals would also lack standing.").

*Id*. The Court further reasoned that "the defects in the proposed class could not possibly be remedied through discovery" and "[b]ecause it is 'sufficiently obvious' that the class as currently defined cannot possibly be maintained, striking the class allegations is appropriate" on defendant's Rule 12(f) motion. *Id*.

Here, the National DNC Class suffers from this exact infirmity. Plaintiff defines the National DNC Class as:

> All persons in the United States whose (1) telephone numbers were on the National Do Not Call Registry for at least 31 days, (2) but who received more than one telemarketing call or text message from or on behalf of Defendant encouraging the purchase of Xero Shoes goods or services, (3) within a 12-month period (4) at any time in the period that begins four years before the date of filing this Complaint to trial.

FAC, ¶ 67. While Plaintiff's class definition includes individuals whose phone numbers were on the National DNC Registry, the definition improperly fails to exclude individuals who consented to Xero Shoes' texts or have an established business relationship with Xero Shoes. Thus, the definition is overbroad.

*Second*, the National DNC Class should be stricken because common questions of law and fact would not predominate because the Court will need to undertake individualized inquiries concerning whether each class member (1) consented to Xero Shoes' messages, (2) did not revoke that consent, and (3) maintained an established business relationship with Xero Shoes.

Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual member[s]." Common questions must

27

DEFENDANT'S MOTION TO DISMISS AND/OR STRIKE
Civ. No. 3:26-cv-00001-SB
4904-2198-1859\4

"present a significant aspect of the case" and "be resolved for all members of the class in a single adjudication." *Chehalem Physical Therapy, Inc. v. Coventry Health Care, Inc.*, 2011 WL 13253445, at \*9 (D. Or. Jan. 21, 2011) (citation omitted).

In TCPA cases, courts regularly hold that proposed classes that would require individual factual and legal inquiries regarding issues of consent, revocation of consent, and the existence of a business relationship are not certifiable on predominance grounds. *See*, *e.g.*, *Pepka v. Kohl's Dep't Stores, Inc.*, 2016 WL 8919460, at \*4 (C.D. Cal. Dec. 21, 2016) ("[N]o matter what that discovery might show, the fact remains Plaintiff's allegations require an individualized inquiry into questions such as which of the class members granted consent in the first place, who among that group revoked consent, and whether such revocation was proper and put Defendant on notice."); *Ginwright v. Exeter Fin. Corp.*, 280 F. Supp. 3d 674, 688 (D. Md. 2017) (accord); *Lindsay Transmission, LLC v. Off. Depot, Inc.*, 2013 WL 275568, at \*5 (E.D. Mo. Jan. 24, 2013) (accord).

Here, there are several individualized inquiries that must be made and resolved for each class member. As Plaintiff's own claims demonstrate, an individualized inquiry is required to determine and resolve whether each member of a National DNC Class (1) sufficiently consented to being contacted and/or (2) effectively revoked their consent. Indeed, the Court would have to examine every message that Xero Shoes received from potential class members to determine whether those messages constituted a clear and express desire not to be texted and whether the message was a reasonable means to communicate the revocation.

Separately, Plaintiff suggests (incorrectly) that consent is not effective if it was "erroneous[ly]" or "accidentally" provided. FAC, ¶ 24. Assuming that this proposition was true (and it is not), this would call for an additional individualized inquiry: for each individual who

28

consented to Xero Shoes' messages, there would need to be a determination as to whether that consent was intentionally or accidentally provided. That individual inquiry could only be determined by examining each individual and asking them whether they intentionally or accidentally consented. *Nyachira v. New Prime, Inc.*, 2022 WL 19239768, at *6 (W.D. Mo. Nov. 7, 2022) ("The Court further concludes this individual issue will predominate over the common issues, as it will require testimony from each member of the class.").

Whether each National DNC Class member had an existing relationship with Xero Shoes also requires an individualized inquiry. For example, one would need to determine whether each class member had previously purchased Xero Shoes' products, either in any retail store or online, and when those purchases took place. *Hovila v. Tween Brands, Inc.*, 2010 WL 1433417, *5 (W.D. Wash. Apr. 7, 2010) (dismissing TCPA claim where "plaintiff and defendant's relationship [fell] within the EBR [established business relationship] exemption to the TCPA" because defendant's alleged calls to plaintiff occurred after plaintiff purchased items from defendant's retail stores); *Cubbage v. Talbots, Inc.*, 2010 WL 2710628, *3 (W.D. Wash. July 7, 2010) (accord); *Sorsby v. TruGreen Limited Parnership*, 2023 WL 130505, *8 (N.D. Ill. Jan. 9, 2023) (granting motion to strike class allegations as "'facially and inherently deficient'" because "the Court's determination regarding the EBR defense will likely predominate the Court's adjudication, making this case unsuitable for classwide resolution"); *Leyse v. Bank of Am., Nat'l Ass'n*, 2020 WL 1227410, at *8 (D.N.J. Mar. 13, 2020), *aff'd*, 856 F. App'x 408 (3d Cir. 2021) (accord).

Plaintiff alleges that Xero Shoes' text message records can be obtained and that "common questions" can be analyzed from those records (FAC, ¶¶ 48-50). That isn't the relevant inquiry. The question is whether individualized inquiries would swamp common questions. They would, because those text message records do not avoid the individual-by-individual determinations that

29

DEFENDANT'S MOTION TO DISMISS AND/OR STRIKE
Civ. No. 3:26-cv-00001-SB
4904-2198-1859\4

must still take place – *e.g.*, reviewing each message from each potential class member to determine whether the messages constituted consent or revocation. These records also have no bearing on whether the recipient had an established business relationship with Xero Shoes.

For these reasons, the Court should strike this class pursuant to Rule 12(f).

> 2. *For Several Independently Sufficient Reasons, Plaintiff's Allegations Regarding the Proposed "Telemarketing Caller ID Class" Should Be Stricken*

The Telemarketing Caller ID Class fails because: (1) it lacks typicality, as Plaintiff is not a member of the class; (2) it lacks numerosity, as there is no evidence that Xero Shoes committed the relevant violation whatsoever – let alone against a significant number of individuals; (3) it is overbroad, as it includes individuals who have no viable TCPA claim; and (4) common questions of law and fact would not predominate.

*First*, the proposed Telemarketing Caller ID Class should be stricken on typicality grounds because Plaintiff is not a member thereof. A party may only bring a claim as a class representative if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Rule 23(a)(3). When a plaintiff is not a member of his own defined class, courts will strike those class allegations on typicality grounds. *See Murch*, 2025 WL 2466576, *16; *Brown v. Nano Hearing Tech Opco, LLC*, 2024 WL 3367536, *9 (S.D. Cal. July 9, 2024).

The Telemarketing Caller ID Class includes two subclasses: (1) those to whom Xero Shoes sent calls or texts that "did not transmit a CPN or ANI at all"; and, (2) those to whom Xero Shoes sent calls or texts that "transmitted a CPN or ANI that would not have allowed an individual to make a do not call request during regular business hours." FAC, ¶67. As discussed above, the Text Message Log (and Plaintiff's previous concessions) make clear that Plaintiff is not a member of either subclass because Xero Shoes' texts to Plaintiff transmitted a CPN or ANI and allowed

30

do-not-call requests during regular business hours. *Supra*, pp. 19-24. Thus, typicality is not satisfied.

*Second*, the proposed Telemarketing Caller ID Class should be stricken on numerosity grounds because Plaintiff does not plausibly allege any facts suggesting that Xero Shoes ever transmitted a CPN or ANI that did not allow do-not-call requests during regular business hours. *Sallie Holly v. Alta Newport Hosp., Inc.*, 2020 WL 6161457, at *5 (C.D. Cal. Oct. 21, 2020) (striking class allegations where plaintiff failed to allege any facts "support[ing] numerosity and instead relie[d] on only the possibility of discovery to substantiate her allegations," as "[t]he Court [was] unwilling to put both parties through costly discovery to permit [plaintiff] further attempts to establish an implausible fact"); *Murch*, 2025 WL 2466576, at *18 (accord).

Similarly, Plaintiff here alleges that "[he] does not know the exact number of members in the Classes, but Plaintiff reasonably believes Class members number, at minimum, [sic] in the hundreds." FAC, ¶ 73. But the Text Message Log conclusively establishes that Xero Shoes' 65099 number was transmitted and permitted Plaintiff to submit a do-not-call request at any time. Under these facts, Plaintiff fails to satisfy his "burden of advancing a prima facie showing that the class action requirements of [Rule] 23 are satisfied or that discovery is likely to produce substantiation of the class allegations." *Mantolete v. Bolger*, 767 F.2d 1416, 1424 (9th Cir. 1985); *see also Kirts v. Green Bullion Fin. Servs., LLC*, 2010 WL 3184382, at *7 (S.D. Fla. Aug. 3, 2010) ("Plaintiffs have not met the numerosity requirement because they have not yet established that CG4 has actually committed the alleged wrongdoing with respect to a single individual Plaintiff.").

*Third*, even if Plaintiff had been a member of his proposed class (and he is not) and had made plausible allegations of conduct that would otherwise support a claim by putative members of this Class (and he did not), the proposed Telemarketing Caller ID Class should be stricken

31

DEFENDANT'S MOTION TO DISMISS AND/OR STRIKE
Civ. No. 3:26-cv-00001-SB
4904-2198-1859\4

because it is overbroad, as it includes individuals who would have no viable TCPA claim against Defendant. For example, assuming *arguendo* that Xero Shoes transmitted a CPN or ANI that did not allow do-not-call requests during regular business hours, the proposed class would still encompass individuals who consented to receiving Xero Shoes' texts, wanted to receive Xero Shoes' text to learn about Xero Shoes' promotions, and most importantly, had no interest in submitting a do-not-call request and did not try to submit one.

A plaintiff will not satisfy Article III's standing requirements "by alleging a bare procedural violation" because a violation of "procedural requirements may result in no harm." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 342 (2016); *see also Chennette v. Porch.com, Inc.*, 50 F. 4th 1217, 1221 (9th Cir. 2022) (accord); *Selby v. Ocwen Loan Servicing, LLC*, 2017 WL 5495095, *3 (S.D. Cal. Nov. 16, 2017) (TCPA plaintiff lacked standing because her claim was based on allegations of "a bare procedural violation of the [TCPA] that is 'divorced from' the real harms that [the TCPA] is designed to prevent.") (citation omitted).

Here, Plaintiff's proposed Telemarketing Caller ID Class includes individuals who had no interest in submitting a do-not-call request (and did not try to submit one) and thus, suffered no harm by Xero Shoes' alleged failure to allow those individuals to submit a do-not-call request. Such a bare procedural violation does not confer Article III standing for these individuals.

*Fourth*, this Class fails on predominance grounds because individual inquiries must be made to determine whether each member even wanted and attempted to submit a do-not-call request. *Supra*, pp. 28-29; *see also Parkinson v. Hyundai Motor Am.*, 258 F.R.D. 580, 595 (C.D. Cal. 2008) ("a host of individual questions regarding warranty coverage preclude a finding that common questions of law and fact predominate" including "determining whether the class member ever even attempted to make a warranty claim"). There is no practical way of determining whether

32

DEFENDANT'S MOTION TO DISMISS AND/OR STRIKE
Civ. No. 3:26-cv-00001-SB
4904-2198-1859\4

each class member wanted or attempted to submit a do-not-call request other than by inquiring of each member individually. *Nyachira*, 2022 WL 19239768, at *6.

        3.        *For Several Independent Reasons, Plaintiff's Allegations Regarding the Proposed "Internal Do Not Call Class" or "Stop Class" Must Be Stricken*

The Stop Class allegations should be stricken because: (1) the proposed definition is vague; (2) the proposed definition is overbroad; (3) the Stop Class fails on numerosity grounds; and, (4) common questions of law and fact would not predominate over individual ones.

*First*, the Stop Class definition fails because it is impermissibly vague. *See Mad Rhino, Inc. v. Best Buy Co.*, 2008 WL 8760854, at *3 (C.D. Cal. Jan. 14, 2008) ("Because at least two parts of this definition are impermissibly vague, neither class is ascertainable."); *ABC Distrib., Inc. v. Living Essentials LLC*, 2017 WL 2603311, at *4 (N.D. Cal. Apr. 7, 2017) (accord).

The Stop Class is defined as:

> All persons within the United States to whom: (1) Defendant (or a third-party acting on behalf of Defendant) (2) sent more than one telemarketing call from or on behalf of Defendant promoting Defendant's goods or services, (3) who were not current customers of the Defendant at the time of the calls, (4) who had previously asked for the calls to stop and/or that Defendant was contacting a wrong number and (5) within the four years prior to the filing of the Complaint.

FAC, ¶ 67. It is unclear what Plaintiff means by the following portion of the definition – particularly the word "ask": "[a]ll persons within the United States… who had previously asked… that Defendant was contacting a wrong number." As such, the Stop Class is impermissibly vague.

*Second*, the Stop Class is overbroad to the extent that it covers individuals who previously consented to Xero Shoes' communications, subsequently informed Xero Shoes that it was "contacting a wrong number," but did not reply with the word "STOP" – as Plaintiff did here. Specifically, such individuals did not validly revoke consent, and thus, the Stop Class, as written, would encompass individuals who do not have a TCPA claim.

33

DEFENDANT'S MOTION TO DISMISS AND/OR STRIKE
Civ. No. 3:26-cv-00001-SB
4904-2198-1859\4

*Third*, the Stop Class fails on numerosity grounds. *Supra*, pp. 31. Plaintiff, again, alleges absolutely no facts suggesting that anyone who actually texted "STOP" in response to Xero Shoes' messages – as Xero Shoes' opt-out instructions made clear – received any allegedly improper texts from Xero Shoes thereafter. Plaintiff also fails to allege that any reasonable person (who was not trying to manufacture a TCPA claim) would reply "wrong number" instead of "STOP."

*Fourth*, the Stop Class should be stricken because common questions of law and fact would not predominate. Revocation (and the effectiveness thereof) is a central determination to the Stop Class, and as Plaintiff's own claims make clear, the question of each proposed member's revocation could only be resolved by individual inquiries. *Eldridge v. Cabela's Inc.*, 2017 WL 4364205 (W.D. Ky. Sept. 29, 2017) is instructive. There, the court stuck two similar "Stop" classes pursuant to Rule 12(f), which involved persons who received calls "after such persons had informed Cabela's that they no longer wished to receive calls from Cabela's." *Id*. at *1. The Court held that "it is clear that caselaw favors striking the 'Stop' classes. In recent TCPA cellular-telephone cases, district courts have struck 'Revocation' classes from complaints or have denied class certification entirely." *Id*. at 9 (collecting cases).

Here (and again, as Plaintiff's own circumstances demonstrate), the Stop Class would similarly involve individual inquiries regarding whether each member effectively communicated their revocation or their request to stop further communications from Defendant, which will predominate over any common questions of law and fact.

Because, even at this early stage of the litigation, it is patently clear that none of the classes Plaintiff proposes is viable, the FAC's class allegations should be struck under Rule 12(f).

**E.    Plaintiff's Class Allegations for Each of the Three Proposed Classes Must Be Dismissed under Rule 12(b)(6)**

The three proposed classes also fail under Rule 12(b)(6) for similar reasons, as the FAC "lacks *any* factual allegations and reasonable inferences that establish the plausibility of class allegations." *Murch*, 2025 WL 2466576, at *14 (emphasis in original).  By way of example:

- The National DNC Class's proposed definition includes individuals who clearly have no cognizable TCPA claim against Defendant (*i.e.*, those who consented to Defendant's texts or had an existing relationship with Defendant), and these defects cannot be remedied through discovery.  *Supra* pp. 25-30.

- With respect to the Telemarketing Caller ID Class, the Text Message Log and Plaintiff's prior concessions establish that Xero Shoes did, in fact, transmit a CPN or ANI that allowed do-not-call requests during regular business hours.  And because FAC does not allege any facts suggesting that Xero Shoes ever violated the relevant TCPA provision as to any other individual, Plaintiff has not pled "the plausibility of class allegations."  *Supra*, pp. 30-32; *Taylor v. Penske Logistics, LLC*, 2021 WL 4288525, at *4 (C.D. Cal. Sept. 21, 2021) ("[The plaintiff] merely alleges what happened to him personally and asks the Court to extrapolate and assume, without any additional facts, that [the defendant] treated other employees in a similar fashion.  This 'logical disconnect' renders the class claim subject to dismissal.").

- With respect to the Stop Class, Plaintiff pleads no facts suggesting that Xero Shoes texted anyone after they actually texted "Stop," such that, again, Plaintiff has not pled "the plausibility of class allegations."  *Supra*, pp. 33-34.  The Stop Class also includes individuals, like Plaintiff, who did not effectively revoke consent.  *Id*.

35

DEFENDANT'S MOTION TO DISMISS AND/OR STRIKE
Civ. No. 3:26-cv-00001-SB
4904-2198-1859\4

## **CONCLUSION**

For the foregoing reasons, the Court should dismiss the FAC, or in the alternative, strike and/or dismiss its class action allegations.

Dated: April 28, 2026

DORSEY & WHITNEY LLP

*/s/ Shawn Larsen-Bright*
Shawn Larsen-Bright, OSB 130051

Dorsey & Whitney LLP
701 Fifth Avenue, Suite 6100
Seattle, WA 98104-7043
(206) 903-8800
larsen.bright.shawn@dorsey.com

Christopher G. Karagheuzoff (admitted pro hac vice)
karagheuzoff.christopher@dorsey.com
Christopher Paolino (pro hac vice forthcoming)
paolino.christopher@dorsey.com
Dorsey & Whitney LLP
51 West 52nd Street
New York, NY 10019
Telephone: (212) 415-9200

*Attorneys for Defendant Feel the World, Inc. d/b/a Xero Shoes*

36

DEFENDANT'S MOTION TO DISMISS AND/OR STRIKE
Civ. No. 3:26-cv-00001-SB
4904-2198-1859\4

**CERTIFICATE OF SERVICE**

I hereby certify that on this date, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the attorneys of record registered on the CM/ECF system.

Dated this 28th day of April, 2026.

/s/ Molly Price
Molly Price, Legal Assistant

37

DEFENDANT'S MOTION TO DISMISS AND/OR STRIKE
Civ. No. 3:26-cv-00001-SB
4904-2198-1859\4