Andrew Roman Perrong, OSB No. 243320
a@perronglaw.com
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, PA 19038
215-225-5529
Attorney for Plaintiff and the Proposed Class

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
PORTLAND DIVISION**

| | |
|---|---|
| LEON WEINGRAD, individually and on behalf of a class of all persons and entities similarly situated,<br><br>          Plaintiff<br><br>vs.<br><br>FEEL THE WORLD, INC D/B/A XERO SHOES,<br><br>          Defendant | Case No. 3:26-cv-1<br><br><br>OPPOSITION TO REQUEST FOR JUDICIAL NOTICE<br>TCPA (47 U.S.C. § 227)<br>DEMAND FOR JURY TRIAL |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S
REQUEST FOR JUDICIAL NOTICE**

## Introduction

Defendant Xero Shoes' Request for Judicial Notice is a blatant attempt to sneak in inadmissible, irrelevant material in support of its motion to dismiss. The Request asks this Court to take judicial notice of 34 unrelated TCPA complaints Plaintiff has filed against unrelated defendants involving unrelated telemarketing campaigns. It does so for one purpose and one purpose only ,to import an impermissible and prejudicial "professional plaintiff" inference into

1

the merits of this case. This Court has already rejected a similar tactic employed by a TCPA

defendant. *Murch v. GPS Cap. Markets, LLC*, No. 3:24-CV-01854-SB, 2025 WL 2466576, at

*6-8 (D. Or. June 6, 2025) (holding Plaintiff stated an Article III injury for unsolicited calls, even

when she made no request to stop calling). The Request should be denied. In the alternative,

judicial notice should be limited to the bare fact that the 34 complaints exist on the dockets

identified, and not to any allegations contained in any of them, any substantive inference drawn

from them, or any "similarity" Defendant claims to discern across them.

## Law and Argument

### A.  The 34 Other Weingrad Complaints Are Not Properly the Subject of Judicial Notice.

Federal Rule of Evidence 201(b) permits judicial notice only of adjudicative facts "not

subject to reasonable dispute" because they are either "generally known within the trial court's

territorial jurisdiction" or "can be accurately and readily determined from sources whose

accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). The Advisory Committee

Notes stress that "[a] high degree of indisputability is the essential prerequisite" for judicial

notice. *Id.* Advisory Committee Notes.

The Ninth Circuit has accordingly drawn a bright line between noticing the bare fact that

a document exists and noticing the truth of assertions within it, or substantive inferences derived

from it. "Just because the document itself is susceptible to judicial notice does not mean that

every assertion of fact within that document is judicially noticeable for its truth." *Khoja v.

Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018). A court must identify the

specific facts it is noticing, rather than broadly accepting an entire document sought to be

noticed, *id.*, and "cannot take judicial notice of disputed facts contained in [a] public record[]."

*Id.* The Ninth Circuit reversed precisely on that ground in *Lee v. City of Los Angeles*, 250 F.3d

668, 681 (9th Cir. 2001), holding that a district court abused its discretion by judicially noticing disputed facts within an otherwise noticeable public document.

Pleadings filed in other courts may, of course, be judicially noticed for the limited fact of their existence. *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006). But "courts are hesitant to take notice of information found [in third party materials] and routinely deny requests for judicial notice, particularly when the credibility of the [materials'] source information is called into question by another party." *Gerritsen v. Warner Bros. Ent. Inc.*, 112 F. Supp. 3d 1011, 1028 (C.D. Cal. 2015). The line, in other words, runs between noticing *that* a complaint was filed and noticing the truth of allegations within it or substantive inferences drawn from its mere existence in a sequence of other complaints. The first is sometimes permitted. The second is categorically not.

Defendant has crossed that line. Its Request does not ask the Court to recognize any fact about *this* case that is established by the 34 other complaints. It asks the Court to credit a chain of inferences, specifically that (a) Plaintiff has filed many TCPA suits, (b) that some of those suits involve "wrong number" allegations or certain call content, and therefore (c) Plaintiff is "manufactur[ing]" TCPA claims, including this one. That is substantive argument, not notice of adjudicative facts. "Many of the 'facts' [Defendant] would have this Court take notice of are not only disputed, they form the essence of the controversy at hand. Taking judicial notice of such assertions would have the effect of preventing [Plaintiff] from participating in the adversary process." *Von Grabe v. Sprint PCS*, 312 F. Supp. 2d 1285, 1312 (S.D. Cal. 2003). "It appears that [Defendant] misuses this Rule of Evidence to effectively circumvent [its] burden of proof and duty to litigate this case." *Id.*

**B. Plaintiff's Litigation History Has No Legal Significance. This Court and Others Have Already Said So.**

The deeper problem with the Request is that the underlying substantive argument it advances, a so-called "serial TCPA plaintiff" narrative, is not cognizable in this Court or any other federal court. The TCPA is a private enforcement statute that Congress *deliberately* designed to be enforced by ordinary consumers willing to bring suit. The entire architecture of § 227(c)(5) depends on this authorization. *See Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 384 (2012). A consumer's prior experience with the statute does not extinguish his right to its protection. There is no "amateurs only" exception to the TCPA. *Cunningham v. Rapid Response Monitoring Servs., Inc.*, 251 F. Supp. 3d 1187, 1195 (M.D. Tenn. 2017).

This Court has already rejected precisely the kind of "manufactured litigation" narrative Defendant advances here. In *Murch*, the defendant, like Xero Shoes here, pointed to the plaintiff's active engagement with the caller in which she misrepresented her identity and asked this Court to infer that her case was a product of manufactured litigation and thus that she lacked standing. 2025 WL 2466576, at *2. This Court declined the invitation. *Id.* at *6-8. This Court held that the plaintiff's engagement with the caller, including pretending to be the intended recipient, offering to take a message, and asking questions, did not strip her of standing, did not constitute consent, and did not convert her into a manufacturer of TCPA litigation, as Defendant claims. *Id.* Indeed, Judge McShane arrived at a materially similar conclusion at summary judgment in March in another TCPA case involving wrong number calls to an alleged serial litigant. Judge McShane remarked, "While the record suggests that Plaintiff is an inveterate TCPA litigant, Defendant has not offered support for the proposition that he is without standing on that basis." *Wilson v. Skopos Fin., LLC*, No. 6:25-CV-00376-MC, 2026 WL 810636, at *2 n.4 (D. Or. Mar. 24, 2026) (cleaned up) (citing *Sapan v. Yelp, Inc.*, No. 3:17-cv-03240-JD, 2021 WL

4

5302908, at *4 (N.D. Cal. Nov. 15, 2021) for the proposition that "professional litigant" criticisms against named plaintiffs are "not uncommon" and "rarely well taken."). The dispositive inquiry was whether the called party herself consented and whether the caller complied with the TCPA, not whether her conduct or litigation profile might subjectively look unsympathetic to a telemarketer. *Id.* These holdings are persuasive here, and Defendant's Request offers no principled basis to depart from them.

Other courts have reached the same conclusion. Judge Easterbrook, for the Seventh Circuit, was characteristically direct: "What the district judge did not explain, though, is why 'professional [plaintiff]' is a dirty word. It implies experience, if not expertise. The district judge did not cite a single decision supporting the proposition that someone whose rights have been violated by 50 different persons may sue only a subset of the offenders." *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 954 (7th Cir. 2006). And the Middle District of Tennessee in *Cunningham*, addressing a TCPA plaintiff specifically, framed the point this way: "Nothing in the Constitution, though, requires a plaintiff to be a naïf. Litigation is not college athletics: there is no 'amateurs only' rule." *Cunningham*, 251 F. Supp. 3d at 1195.

Numerous other courts have refused to credit "serial plaintiff" arguments in TCPA cases, holding repeatedly that a consumer's litigation history does not strip the consumer of standing, alter the consumer's burden, or invite an inference that the consumer's allegations are less credible. *See, e.g.*, *Abramson v. Oasis Power LLC*, 2018 WL 4101857, at *5 (W.D. Pa. July 31, 2018) ("the Court rejects any suggestion that [plaintiff's] prolific history of filing TCPA lawsuits distinguishes this case and demonstrates the lack of an injury-in-fact"); *Mey v. Venture Data, LLC*, 245 F.Supp.3d 771, 784 (N.D. W.Va. 2017) (Bailey, J.) ("While defendant is

understandably frustrated by Ms. Mey's efficacy, she is doing exactly what Congress intended—enforcing the law").

In sum, "What [Xero] lacks in reasoned analysis, it makes up for in rhetoric, branding [Weingrad] a '[serial TCPA] Plaintiff' who sets traps then lies in wait to snare and entrap legitimate businesses. Such caricatures do not reflect legal analysis, but rather frustration with the proficiency with which [Mr. Weingrad] enforces the TCPA once those protections have been violated." *Mey v. Liberty Home Guard, LLC*, No. 5:23-CV-281, 2026 WL 486556, at *5 (N.D. W. Va. Jan. 5, 2026) (cleaned up). Defendant's position would invent an exception to the TCPA that the courts have uniformly refused to recognize. The Court should adhere to that consensus.

**C.  Rule 201 Cannot Be Used as an End-Run Around the Substantive Limits on the "Serial Plaintiff" Argument.**

Because the "serial plaintiff" inference cannot be drawn from Plaintiff's litigation history as a substantive matter, Defendant cannot bootstrap that inference into this case through Rule 201. The point is straightforward: a court cannot judicially notice a fact for an impermissible purpose. *Khoja*, 899 F.3d at 999; *Lee*, 250 F.3d at 681, 689-90; *Gerritsen*, 112 F. Supp. 3d at 1028-29. Defendant's true purpose is transparent. It is using judicial notice as an end run around its evidentiary burden, attempting to introduce inflammatory material to color the Court's view of Plaintiff at a stage of the case where Defendant could not, by motion, introduce it as evidence. That is precisely the misuse of Rule 201 that *Von Grabe* rejected in no uncertain terms:

> It would be improper, at best, for this Court to take judicial notice of such assertions. Many of the "facts" [Defendant] would have this Court take notice of are not only disputed, they form the essence of the controversy at hand. Taking judicial notice of such assertions would have the effect of preventing [Plaintiff] from participating in the adversary process . . . . It appears that [Defendant] misuses this Rule of Evidence to effectively circumvent [its] burden of proof and duty to litigate this case.

*Von Grabe*, 312 F. Supp. 2d at 1312. So too here. The credibility of Plaintiff's messages, the reasonableness of the means by which he sought to be placed on an IDNC, and Defendant's response to those messages are not merely disputed facts, they *are* the controversy, at least as it pertains to the Internal Do Not Call Claims. They are irrelevant to the National Do Not Call and Caller ID claims. Judicial notice is not the vehicle for adjudicating those questions.

The point is sharpened by Defendant's own silence on a critical question. Nowhere in its motion to dismiss does Defendant attempt to marshal any of the materials it seeks to have the Court judicially notice. And nowhere in its motion to dismiss does it claim that it relied on, considered, or even knew about Plaintiff's other 34 TCPA complaints when it sent the messages at issue here, when it received Plaintiff's "wrong number" response, when it offered Plaintiff an "account change" to an account he does not have, when it was served with this lawsuit, or when it sent additional calls after service. The 34 complaints are not contemporaneous decision-making evidence. They are *post hoc* litigation material, assembled to improperly color the Court's view of Plaintiff. The Court should refuse to let Defendant weasel out of its conduct by judicial fiat now.

Defendant's reliance on *Epps* does not change the analysis. To the extent *Epps* is read to permit judicial notice of a plaintiff's other TCPA complaints for the purpose of supporting a substantive "manufactured litigation" argument, it is contrary to *Khoja* and to the substantial weight of post-*Khoja* authority in this Circuit.

*Epps* is also distinguishable. The four complaints in *Epps* were filed within a 33 day window and arguably bore on the plaintiff's own theory of consent and revocation in that single discrete time period as facially unreasonable. *Epps v. Earth Fare, Inc.*, No. CV1608221SJOSSX, 2017 WL 1424637, at *5 (C.D. Cal. Feb. 27, 2017). Here, by contrast, Defendant asks the Court

to notice 34 separate complaints spread across years and against unrelated defendants addressed to unrelated telemarketing campaigns sent through unrelated systems with unrelated consent processes. No connective tissue, and no facially unreasonable[1] method of revocation comparable to *Epps*, links those cases to this one beyond the bare fact that Plaintiff filed each of them. That is precisely the kind of generalized character argument that Rule 404(b)(1) forbids and that Rule 201 cannot rescue.

### D.  Even If the Other Complaints Were Properly Noticeable, They Are Substantively Irrelevant to This Case.

The 34 Weingrad Complaints Defendant invokes establish nothing about whether *this* Defendant obtained legally sufficient consent as an initial matter, honored Plaintiff's revocation or internal do not call requests, or transmitted a compliant caller ID. They establish nothing about the meaning of 47 C.F.R. § 64.1200(c)(2)(ii). They establish nothing about whether a 5-digit SMS short code is a CPN or ANI under 47 C.F.R. § 64.1600. They establish nothing about whether Defendant's offer of an "account change" to a nonexistent account was a reasonable response to Plaintiff's "Wrong number" message. They simply show that other companies, in other industries, using other dialing systems and other consent intake processes, were sued for other TCPA violations by the same Plaintiff. None of that has any bearing on any element of any claim or defense here.

Defendant's strongest framing of its purpose, that the 34 complaints show Plaintiff has responded with the (accurate) statement "wrong number" rather than the word "STOP" in other

---

[1] Plaintiff here called back with a factual statement, "Wrong number," arguably providing more information to the Defendant than a bare "STOP." By contrast, Ms. Epps used such confusing, run-on messages as "Thank you but I would like the text messages to stop can we make this happen" and "s I requested earlier I asked that the text would stop, I would greatly appreciate it. Thank you."

matters, underscores, rather than rebuts, this point. Each individual revocation determination is a fact-specific question turning on the totality of the circumstances of each individual exchange. That Plaintiff has used similar (or different) language to revoke purported consent to calls to a wrong number in cases against Denny's, an insurance company, or 30 odd other defendants tells this Court nothing about whether his communications to *this* Defendant, in the context of *this* messaging exchange, were effective revocation as a matter of law. And to the extent Defendant attempts to use the other complaints to suggest a "pattern" undermining Plaintiff's credibility, that is plainly an attempt to litigate character through Rule 201, which the rule does not permit. Fed. R. Evid. 201(b); *see Khoja*, 899 F.3d at 999.

That Plaintiff has filed other TCPA cases, including cases in which he has alleged the defendant was evidently calling a wrong number (i.e. looking for someone else) is, in the end, evidence of only one thing, that other telemarketers also illegally called him. The TCPA confers a private right of action for every such violation. 47 U.S.C. § 227(c)(5). That Plaintiff has chosen to enforce that right against multiple violators is unremarkable, expressly contemplated by the statute, and irrelevant to whether *this* Defendant violated the statute as to *this* Plaintiff.

**E.  At Most, the Court May Notice the Bare Existence of the Filings. Even That Should Be Declined Here.**

If the Court is inclined to take judicial notice of any portion of the materials Defendant submits, that notice must be sharply limited. The Court may, at most, notice the bare fact that the 34 complaints exist on the dockets of the various district courts identified. It may not notice the truth of any allegations in any of them. It may not notice that the complaints are "similar" in any legally meaningful sense, as that characterization is itself disputed. It may not notice that they support an inference that Plaintiff "manufactured" this case. And it may not notice them for any

purpose other than the bare fact of their existence. *Khoja*, 899 F.3d at 999; *Reyn's Pasta Bella*, 442 F.3d at 746 n.6.

Even that limited notice should be declined here. Where, as here, judicial notice is sought for an improper purpose, courts may and should refuse the request rather than provide tacit cover for the inferences the proponent intends to draw. *Von Grabe*, 312 F. Supp. 2d at 1312; *Gerritsen*, 112 F. Supp. 3d at 1029. Granting the Request, even with some limitation, would risk implying that the 34 complaints have some bearing on this case. They do not. The more appropriate course is to deny the Request in its entirety.

### Conclusion

Defendant's Request for Judicial Notice is an improper attempt to smuggle disputed and inadmissible material into the record through the back door of Rule 201. This is precisely the kind of misuse of judicial notice that courts in this Circuit routinely reject. Plaintiff files TCPA litigation. That does not matter. That fact does not transform Defendant's unsolicited promotional calls to a residential number on the National DNC Registry, addressed to the wrong person, sent in the face of a clear wrong number and continued past service of suit, into anything other than the TCPA violations they appear to be. For the foregoing reasons, Plaintiff respectfully requests that this Court deny Defendant's Request for Judicial Notice in its entirety. In the alternative, Plaintiff requests that the Court limit any judicial notice to the bare fact that the 34 complaints exist on the dockets identified, and not the truth of any matter or any other inference asserted within or derived from them.

RESPECTFULLY SUBMITTED AND DATED this May 19, 2026.

> s/Andrew Roman Perrong
> Andrew Roman Perrong, OSB No. 243320
> a@perronglaw.com
> Perrong Law LLC
> 2657 Mount Carmel Avenue

Glenside, PA 19038
215-225-5529
Lead Attorney for Plaintiff and the Proposed Class

## CERTIFICATE OF PAGE COUNT

This brief complies with the applicable page-count limitation under LR 7-2(b), 26-3(b), 54-1(c), or 54-3(e) because it contains fewer than 35 pages, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of cases and authorities, signature block, exhibits, and any certificates of counsel.

Dated: May 19, 2026.

*/s/ Andrew Roman Perrong*
Andrew Roman Perrong, Esq.

## CERTIFICATE OF SERVICE

I certify that I filed the foregoing via ECF on the below date, which will automatically send a copy to all attorneys of record on the case.

Dated: May 19, 2026          */s/ Andrew Roman Perrong*
                    Andrew Roman Perrong, Esq.

11