Shawn Larsen-Bright, OSB 130051
Dorsey & Whitney LLP
701 Fifth Avenue, Suite 6100
Seattle, WA 98104-7043
(206) 903-8800
larsen.bright.shawn@dorsey.com

Christopher G. Karagheuzoff (admitted pro hac vice)
karagheuzoff.christopher@dorsey.com
Christopher Paolino (admitted pro hac vice)
paolino.christopher@dorsey.com
Dorsey & Whitney LLP
51 West 52nd Street
New York, NY 10019
Telephone: (212) 415-9200

*Attorneys for Defendant Feel the
World, Inc. d/b/a Xero Shoes*

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| LEON WEINGRAD, individually and on behalf of a class of all persons and entities similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>FEEL THE WORLD, INC. d/b/a XERO SHOES,<br><br>Defendant. | Civ. No.  Civ. No. 3:26-cv-00001-SB<br><br>**DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF ITS MOTION TO DISMISS THE FIRST AMENDED COMPLAINT AND/OR STRIKE OR DISMISSS PLAINTIFF'S CLASS ALLEGATIONS** |

DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS AND/OR STRIKE
Civ. No. 3:26-cv-00001-SB

## TABLE OF CONTENTS

**Page**

I.  PRELIMINARY STATEMENT ........................................................................................1

II. ARGUMENT.................................................................................................................4

    A.  The FAC Should Be Dismissed in its Entirety Pursuant to Rule 12(b)(6) ..............4

        1.  Plaintiff's Claims Fail Because He Consented to Xero Shoes' Texts................................................................................................................4

        2.  Plaintiff Did Not Revoke his Consent ........................................................10

            a.  Plaintiff's January 30, 2026 Message .......................................... 10
            b.  Plaintiff's "Wrong number" Message........................................... 11
            c.  Service of the OC........................................................................ 14

        3.  Plaintiff's other TCPA Complaints Further Demonstrate that his Allegations Are Implausible .......................................................................16

        4.  Separately, the Second Cause of Action Fails Because Xero Shoes Transmitted a CPN or ANI that Allowed Do-Not-Call Requests to Be Made During Regular Business Hours ............................17

    B.  Plaintiff's Class Allegations for Each of the Three Proposed Classes Should Be Stricken under Rule 12(f) .................................................................................23

        1.  Plaintiff's Allegations Regarding the Proposed National DNC Class Must Be Stricken Because the Class Is Overbroad and Lacks Predominance .....................................................................................23

        2.  For Several Independently Sufficient Reasons, Plaintiff's Allegations Regarding the Proposed "Telemarketing Caller ID Class" Should Be Stricken.................................................................................26

        3.  For Several Independent Reasons, Plaintiff's Allegations Regarding the Proposed "Internal Do Not Call Class" or "Stop Class" Must Be Stricken .....................................................................28

        4.  DaBella and Wilson Are Distinguishable....................................................30

    C.  Plaintiff Should Not Be Granted Leave to Amend Again ...................................31

CONCLUSION...................................................................................................................33

LR 7-2(b) CERTIFICATION ...............................................................................................34

DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS AND/OR STRIKE
Civ. No. 3:26-cv-00001-SB

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ACA Int'l v. Fed. Commc'ns Comm'n*,
885 F.3d 687 (D.C. Cir. 2018) ........................................................................................8

*Airs Aromatics, LLC v. Victoria's Secret Stores Brand Mgmt., Inc.*,
744 F.3d 595 (9th Cir. 2014) .......................................................................................17

*Barr v. Macys.com, LLC*,
2023 WL 6393480 (S.D.N.Y. Sept. 29, 2023)..............................................................15

*Barton v. Lead Point Inc.*,
2021 WL 6772555 (W.D. Wash. Nov. 3, 2021).........................................................4, 8

*Brown v. Nano Hearing Tech Opco, LLC*,
2024 WL 3367536 (S.D. Cal. July 9, 2024) ....................................................25, 26, 27

*Canales-Robles v. Peters*,
2022 WL 621390 (D. Or. Mar. 3, 2022).......................................................................29

*Davis v. Blue Tongue Films*,
2024 WL 5182630 (9th Cir. Dec. 20, 2024) ..................................................................5

*Eldridge v. Cabela's Inc.*,
2017 WL 4364205 (W.D. Ky. Sept. 29, 2017)..............................................................29

*Epps v. Earth Fare, Inc.*,
2017 WL 1424637 (C.D. Cal. Feb. 27, 2017)..........................................................13, 17

*Epps v. Earth Fare, Inc.*,
740 F. App'x 627 (9th Cir. 2018) ......................................................................11, 12, 22

*Franklin v. Depaul Univ.*,
2017 WL 3219253 (N.D. Ill. July 28, 2017).................................................................5, 7

*Frost v. Bechetti*,
745 F. App'x 777 (9th Cir. 2018) .................................................................................32

*Gonzalez v. Planned Parenthood of Los Angeles*,
759 F.3d 1112 (9th Cir. 2014) ........................................................................................5

*Gorss Motels Inc. v. A.V.M. Enters., Inc.*,
2021 WL 1163022 (D. Conn. Mar. 26, 2021) ................................................................7

DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS AND/OR STRIKE
Civ. No. 3:26-cv-00001-SB

*Hernandez v. State Farm Fire & Casualty Co.*,
  No. 16cv200-LAB(JLB), 2017 WL 932198 (S.D. Cal. Mar. 9, 2017)....................................25

*Katz v. CHW Group, Inc.*,
  No. 5:22-cv-5198, 2023 WL 6445798 (W.D. Ark. Sept. 29, 2023) .................................23, 24

*Kavu, Inc. v. Omnipak Corp.*,
  246 F.R.D. 642 (W.D. Wash. 2007) ...................................................................................25

*Kenro, Inc. v. Fax Daily, Inc.*,
  962 F. Supp. 1162 (S.D. Ind. 1997) ..................................................................................26

*Kolinek v. Walgreen Co.*,
  2014 WL 3056813 (N.D. Ill. July 7, 2014)........................................................................5, 7

*Landsman & Funk PC v. Skinder-Strauss Assocs.*,
  640 F.3d 72 (3d Cir. 2011)..................................................................................................25

*Leon v. Loandepot.com, LLC*,
  2025 WL 2632396 (C.D. Cal. Aug. 22, 2025)..................................................................23, 24

*Mantha v. QuoteWizard.com, LLC*,
  347 F.R.D. 376 (D. Mass. 2024)..........................................................................................15

*Marshall v. Wilson*,
  175 Or. 506 (1944)..........................................................................................................9, 31

*Massarello v. Power Home Remodeling Grp., LLC*,
  2025 WL 2463153 (E.D. Mich. Aug. 27, 2025)...................................................................8

*Mattson v. New Penn Financial, LLC*,
  2020 WL 6270907 (D. Or. Oct. 25, 2020)..........................................................................23

*McMillion v. Rash Curtis & Assocs.*,
  2018 WL 692105 (N.D. Cal. Feb. 2, 2018) .........................................................................15

*Morris v. Copart*,
  2016 WL 6608874 (E.D. Tex. Nov. 9, 2016) .....................................................................6, 7

*N.L. by Lemos v. Credit One Bank, N.A.*,
  960 F.3d 1164 (9th Cir. 2020) ............................................................................................8

*Nece v. Quicken Loans, Inc.*,
  2018 WL 1326885 (M.D. Fla. Mar. 15, 2018) ...................................................................14

*Newell v. JR Capital, LLC*,
  791 F. Supp. 3d 571 (E.D. Pa. 2025) .................................................................................22

iii

DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS AND/OR STRIKE
Civ. No. 3:26-cv-00001-SB

*Novia v. Mobiz, Inc.*,
2026 WL 752181 (D. Mass. Mar. 17, 2026)................................................................27, 28

*Orsatti v. Quicken Loans, Inc.*,
2016 WL 7650574 (C.D. Cal. Sept. 12, 2016) .........................................................15

*Petrie v. Elec. Game Card, Inc.*,
761 F.3d 959 (9th Cir. 2014) ................................................................................5

*Rando v. Edible Arrangements Int'l, LLC*,
2018 WL 1523858 (D.N.J. Mar. 28, 2018).........................................................12, 22

*In the Matter of Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*,
7 F.C.C. Rcd. 8752 (1992).................................................................................8

*Sabatini v. California Bd. of Registered Nursing*,
849 F. App'x 634 (9th Cir. 2021) .......................................................................32

*Sanders v. Apple Inc.*,
672 F. Supp. 2d 978 (N.D. Cal. 2009) .................................................................25

*Sauter v. CVS Pharmacy, Inc.*,
No. 2:13-cv-846, 2014 WL 1814076 (S.D. Ohio May 7, 2014)........................................23, 24

*Somerset Invs., Inc. v. Henco Book Exch., Inc.*,
2012 WL 5286925 (D. Or. Oct. 1, 2012).............................................................9, 10

*Stewart v. Network Cap. Funding Corp.*,
549 F. Supp. 3d 1058 (C.D. Cal. 2021) ................................................................13

*Van Patten v. Vertical Fitness Grp., LLC*,
847 F.3d 1037 (9th Cir. 2017) .........................................................................13, 14

*Viggiano v. Kohl's Dep't Stores, Inc.*,
2017 WL 5668000 (D.N.J. Nov. 27, 2017) (Opposition Brief)........................................12

*Von Saher v. Norton Simon Museum of Art at Pasadena*,
592 F.3d 954 (9th Cir. 2010) ...............................................................................5

*Weingrad v. DaBella Exteriors, LLC*,
2026 WL 496609 (D. Or. Feb. 23, 2026)..............................................................15, 30

*Wilson v. TPH Paralegal Pro. Corp.*,
2026 WL 899930 (D. Or. Apr. 1, 2026) ................................................................31

*Wolfkiel v. Intersections Insurance Services, Inc.*
303 F.R.D. 287 (N.D. Ill. 2014)......................................................................23, 24, 29

iv

DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS AND/OR STRIKE
Civ. No. 3:26-cv-00001-SB

*Wright v. USAA Savings Bank*,
   2020 WL 2615441 (E.D. Cal. May 22, 2020) .........................................................21

*Zemel v. CSC Holdings LLC*,
   2018 WL 6242484 (D.N.J. Nov. 29, 2018) .........................................................4, 7

**Statutes**

47 U.S.C. § 227(c) ..............................................................................................................6, 7

Code, https://www.callfire.com/help/glossary/communications/short-code (last
   accessed on June 7, 2026)........................................................................................3, 18

code number...........................................................................................................................19

*In the Matter of Rules & Reguls. Implementing the Tel. Consumer Prot. Act of
   1991*........................................................................................................................................18

*In Re Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991* ...................19

**Other Authorities**

47 C.F.R. § 64.120(c)(2).......................................................................................................23

47 C.F.R. § 64.1200 ...............................................................................................................20

47 C.F.R. § 64.1600(c)...........................................................................................................20

47 C.F.R. § 64.1601 ................................................................................................................20

47 C.F.R. § 64.1601(e)............................................................................3, 4, 17, 20, 27

47 C.F.R. § 64.1601(e)(1)................................................................................................21, 31

*i.e.*, "Joseph" .............................................................................................................................6

*i.e.*, "STOP" .............................................................................................................................13

*second* amendment.................................................................................................................32

"Calling Party Number" (CPN) .............................................................................................18

Commission's Report and Order, CG Docket No. 02–278, FCC 03–153, "'Rules
   and Regulations Implementing the Telephone Consumer Protection Act of
   1991.'" ....................................................................................................................................20

FAC, Ex. A, 1. *Third* ..............................................................................................................9

Federal Rule of Civil Procedure 15(a)(1)(B) .....................................................................31

DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS AND/OR STRIKE
Civ. No. 3:26-cv-00001-SB

, https://people.cs.rutgers.edu/~rmartin/teaching/fall04/cs552/readings/ss7.pdf
(last accessed on June 7, 2026) ................................................................................2

LR 15(b)(2) ...........................................................................................................31

Rule 12 ...................................................................................................................16

Rule 12(b)(6) ......................................................................................................3, 4

Rule 12(f) ...............................................................................................................23

Signaling, https://www.patton.com/whitepapers/intro-to-ss7-tutorial/ (last
accessed on June 7, 2026) .....................................................................................2

SS7 Connectivity for SMS Gateways: What Every Carrier Needs to Know,
https://www.enabld.tech/blog/ss7-connectivity-for-sms-gateways-what-every-
carrier-needs-to-know/ (last accessed on June 7, 2026) .......................................3

DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS AND/OR STRIKE
Civ. No. 3:26-cv-00001-SB

Xero Shoes respectfully submits this Reply Memorandum of Points and Authorities in further support of the Motion.[1]

## I.     PRELIMINARY STATEMENT

As set forth in our Opening Brief, this TCPA case arises from Plaintiff's own deceptive conduct, whereby he misled Xero Shoes to believe that he was an individual named "Joseph"— the previous owner of the 503 Number who previously consented to receiving Xero Shoes' messages. Even though Xero Shoes expressly made clear that it believed it was consensually communicating with "Joseph," Plaintiff voluntarily communicated with Xero Shoes and further misled Xero Shoes to believe that he was interested in its products and promotional messages. Then, to manufacture his claim, Plaintiff purported to revoke his prior consent, but intentionally failed to comply with Xero Shoes' clear and simple opt-out instructions (*i.e.*, by replying "STOP"). Why do we know Plaintiff manufactured his claim? Because he does this, over and over. Here, instead of replying "STOP," Plaintiff sent a vague message that was entirely inconsistent with his prior messages and conduct, did not attempt to clarify his purported revocation message, and ignored Xero Shoes' attempts to help him, including with unsubscribing to Xero Shoes' messages. He has engaged in similar schemes in other TCPA litigations that he has commenced.

Plaintiff's Opposition only further demonstrates that his claims have zero merit and were manufactured in bad faith. The law is clear that under these circumstances, Plaintiff should not be rewarded for his deceptive conduct and his abuse of the judicial system by being permitted to distort the aims of the TCPA statute for financial gain.

First, Plaintiff's claims are barred because he consented to Xero Shoes' messages and failed to revoke his consent effectively. Plaintiff's Opposition fails to refute that he consented

---

[1] Capitalized terms have the meanings ascribed to them in Xero Shoes' Opening Memorandum of Points and Authorities ("Opening Brief").

1

DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS AND/OR STRIKE
Civ. No. 3:26-cv-00001-SB

based on his own (purely voluntary) receptive texts in response to Xero Shoes' promotional ones. Alternatively, to the extent that Plaintiff now relies on the lack of a signed, written agreement memorializing his consent, he is equitably estopped from doing so because he misled Xero Shoes into believing that it was communicating with the prior-consenting owner of the 503 Number.

Plaintiff also fails to refute that he did not revoke his consent effectively. He failed to follow simple opt-out instructions, and he never clarified his "Wrong number" message when Xero Shoes notified him that it did not understand it. The "Wrong number" message was not a reasonable means of revocation and did not clearly express Plaintiff's desire not to receive further texts. The two messages Plaintiff sent after the service of the OC fell within the TCPA's safe harbor provision. And, Plaintiff's January 30, 2026 "halt" message was sent 17 days after Xero Shoes' last message, such that Plaintiff fails to allege any violation of that purported Do-Not-Call request.

Plaintiff's Second Cause of Action separately fails because he conceded in the OC that Xero Shoes transmitted CPN or ANI, and subsequently alleged the exact opposite in the FAC. Such a contradiction is prohibited under Ninth Circuit law. In any event, Plaintiff's convoluted technical argument regarding CPN and ANI necessarily fails because he (1) ignores that short code messages are sent through SMS aggregators that rely on the Signaling System 7 ("SS7") network;[2]

---

[2] The SS7 network is a worldwide telecommunications architecture, network, and standard that sets forth the procedures and protocols for, and allows for, wireless and wireline telephone calls to be made on the public switched telephone network. The network supports signaling and the exchange of calls, billing, routing, and information. *See, e.g.*, Signaling System 7 (SS7), https://people.cs.rutgers.edu/~rmartin/teaching/fall04/cs552/readings/ss7.pdf (last accessed on June 7, 2026); Introduction to SS7 Signaling, https://www.patton.com/whitepapers/intro-to-ss7-tutorial/ (last accessed on June 7, 2026). SMS Gateways or Aggregators are platforms that serve as an intermediary for businesses seeking to send large volumes of SMS text messages to consumers and other businesses. The SMS Aggregators enter into agreements with the major network providers, such as Verizon, AT&T, and T-Mobile, to send and receive text messages through the major providers' "short message service centers," which do so through the SS7

DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS AND/OR STRIKE
Civ. No. 3:26-cv-00001-SB

(2) the language in 47 C.F.R. § 64.1601(e) makes clear that this section of the regulation does not even apply to text messages; (3) the FCC regulations to which Plaintiff cites make clear that CPN can include "any number associated with the telemarketer or party on whose behalf the call is made," "a number assigned to the telemarketer by its carrier," or "the specific number from which a sales representative placed a call," which is exactly what Xero Shoes' short code is; and (4) the TCPA and applicable FCC regulations do not require that recipients of text messages be able to submit Do-Not-Call requests via voice calls.  Additionally, Plaintiff ignores the Text Message Log, which makes clear that Xero Shoes included its name in <u>every</u> alleged text message to Plaintiff. Finally, Plaintiff does not meaningfully address that his unsupported theory, *i.e.*, that short code telemarketing text messages violate the FCC's caller identification requirements, would subject most companies that conduct telemarketing through text messages to billions of dollars in liability. This simply cannot be correct or what Congress or the FCC intended.  And it is why courts don't see other plaintiffs making this argument.

Separately, Plaintiff's class allegations fail under Rule 12(b)(6) and/or 12(f).

The National DNC Class is overbroad because it includes individuals who consented to Xero Shoes' texts or who had an established business relationship with Xero Shoes, and thus would have no viable TCPA claim.  Plaintiff fails to even attempt to distinguish the Ninth Circuit cases that Xero Shoes cites, and instead relies on nonbinding, out-of-circuit cases in support of his meritless "fail-safe" argument that are in any event easily distinguished.  The Telemarketing Caller ID Class should likewise be struck on overbreadth, numerosity, and predominance grounds.  As

---

network.  *See, e.g.,* Short Code, https://www.callfire.com/help/glossary/communications/short-code (last accessed on June 7, 2026); SS7 Connectivity for SMS Gateways: What Every Carrier Needs to Know, https://www.enabld.tech/blog/ss7-connectivity-for-sms-gateways-what-every-carrier-needs-to-know/ (last accessed on June 7, 2026).

DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS AND/OR STRIKE
Civ. No. 3:26-cv-00001-SB

Case 3:26-cv-00001-SB     Document 31     Filed 06/09/26     Page 11 of 42

discussed above, Plaintiff fails to allege that Xero Shoes sent him (or anyone else) a message that failed to include, among other things, CPN and ANI in violation of 47 C.F.R. § 64.1601(e).

Finally, regarding the Stop Class, Plaintiff fails to refute, *inter alia*, Xero Shoes' numerosity argument. *First*, Plaintiff never sent "STOP," such that the FAC fails to allege facts suggesting that anyone who actually texted "STOP" to Xero Shoes—as Xero Shoes' opt-out instructions make clear—received any allegedly improper texts from Xero Shoes thereafter. *Second*, Plaintiff fails to allege that any reasonable person (who was not trying to manufacture a TCPA claim) would reply "wrong number" instead of "STOP." Thus, Plaintiff fails to plausibly allege that anyone other than himself would fall within the Stop Class.

Accordingly, the FAC should be dismissed in its entirety, or at a minimum, the class claims should be stricken.

## II.    ARGUMENT

### A.    The FAC Should Be Dismissed in its Entirety Pursuant to Rule 12(b)(6)

#### 1.    <u>Plaintiff's Claims Fail Because He Consented to Xero Shoes' Texts</u>

Plaintiff fails to refute that he consented to Xero Shoes' messages, and in any event, he should be equitably estopped from relying on the lack of a signed, written agreement in the record.

As an initial matter, Plaintiff erroneously contends that consent "is an affirmative defense inapplicable for adjudication under Rule 12(b)(6)." Opposition Brief, 4. However, as Plaintiff later knowledges, an affirmative defense, including consent, is properly adjudicated under Rule 12(b)(6) where "the defense is evident from the face of the complaint." Opposition Brief, 5; *see also Barton v. Lead Point Inc.*, 2021 WL 6772555, at *4 (W.D. Wash. Nov. 3, 2021) (granting motion to dismiss TCPA claim based on plaintiff's consent); *Zemel v. CSC Holdings LLC*, 2018 WL 6242484, at *4–5 (D.N.J. Nov. 29, 2018) (same). Here, the Text Message Log—*i.e.*, the entire log of messages between the parties—is an exhibit to the FAC and "incorporated by reference"

4

DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS AND/OR STRIKE
Civ. No. 3:26-cv-00001-SB

therein. *Petrie v. Elec. Game Card, Inc.*, 761 F.3d 959, 964, n.6 (9th Cir. 2014). Those messages dispositively establish that Plaintiff consented to Xero Shoes' messages.

*Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954 (9th Cir. 2010), cited by Plaintiff, is distinguishable because, unlike here, "there [were] no facts on the face of Saher's complaint" establishing the relevant defense. *Id*. at 969. *Kolinek v. Walgreen Co.*, 2014 WL 3056813, at *4 (N.D. Ill. July 7, 2014) is distinguishable because that case appears to have involved oral (rather than written) communications, and the complaint did not attach anything equivalent to the Text Message Log that demonstrated plaintiff's consent.

Plaintiff contends that he did not consent because "[he] expressly alleges he never consented to receive telemarketing text[s]." Opposition Brief, 5. But "bare legal conclusions" carry no weight and should be disregarded, *see Davis v. Blue Tongue Films*, 2024 WL 5182630, at *3 (9th Cir. Dec. 20, 2024), and in any event that legal conclusion is contradicted by the Text Message Log, an FAC exhibit, which demonstrates Plaintiffs' consent (*Gonzalez v. Planned Parenthood of Los Angeles*, 759 F.3d 1112, 1115 (9th Cir. 2014)). *Franklin v. Depaul Univ.*, 2017 WL 3219253 (N.D. Ill. July 28, 2017) is distinguishable. There, ***defendant*** submitted exhibits to refute plaintiff's consent allegation. However, the court declined to consider those exhibits because plaintiff "ha[d] 'not referred to [them]' and ha[d] 'never seen these forms [and did] not know where they come from.'" *Id*. at *4. Here, in contrast, Plaintiff's consent allegation is directly refuted by the Text Message Log that ***Plaintiff*** attached to the FAC, and over which there is no authenticity dispute.

Plaintiff contends that he did not consent because the record does not include "a signed, written agreement between [Plaintiff] and [Xero Shoes] which states that [Plaintiff] agrees to be contacted by [Xero Shoes] and includes the telephone number to which the calls may be placed." Opposition Brief, 4. But Plaintiff fails to cite any authority suggesting that such an additional

DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS AND/OR STRIKE
Civ. No. 3:26-cv-00001-SB

agreement is required, where, as here, (1) the prior owner of the 503 Number, *i.e.*, "Joseph" (FAC, Ex. A, 1-2), provided consent and (2) the new owner, Plaintiff, (a) subsequently pretended to be "Joseph" by voluntarily communicating with Xero Shoes when Xero Shoes clearly believed that it was communicating with "Joseph," (b) failed to inform Xero Shoes that he was not "Joseph," (c) thereby misled Xero Shoes to believe that he was "Joseph," (d) misled Xero Shoes to believe that he was interested in Xero Shoes' products and excited to receive Xero Shoes' promotional messages by sending his positive responsive messages (*e.g.*, responding "Nice!" and "Thanks" to Xero Shoes' promotional messages), (e) misled Xero Shoes to believe that he had no objection to receiving Xero Shoes' promotional messages by failing to comply with simple opt-out instructions to the extent that he had any objection to receiving those messages (*i.e.*, replying "STOP"), and (f) affirmatively invited and prompted responses from Xero Shoes—*e.g.*, by texting "Hello" after already texting "Nice!" in response to Xero Shoes' promotional message one minute earlier, responding "Ok" five days after Xero Shoes' promotional message, and responding "You two [sic]" seven days after Xero Shoes messaged Plaintiff "… Have a great day!"

Plaintiff's own authority holds that consent may be effective based on a plaintiff's conduct, even without a "signed, written agreement." In *Morris v. Copart*, 2016 WL 6608874 (E.D. Tex. Nov. 9, 2016), plaintiff received an automated message asking him to donate a vehicle. *Id*. at *1. "Plaintiff gave a positive response, informing [defendant] that he desired to donate a vehicle. Plaintiff did not, in fact, have a vehicle to donate, and admits that the vehicle he expressed interest in donating was non-existent and/or imaginary." *Id*. The court dismissed plaintiff's national Do-Not-Call TCPA claim under 47 U.S.C. § 227(c) regarding subsequent calls that he received to complete the vehicle donation, finding that plaintiff consented to those calls. *Id*. at *8. There was no signed, written agreement, and plaintiff did not provide his number. Instead, he misled

DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS AND/OR STRIKE
Civ. No. 3:26-cv-00001-SB

defendant into believing that he consented to the calls, just as Plaintiff did here with Xero Shoes' texts.

Plaintiff tries to distinguish *Zemel*, which held that "[w]hen an individual sends a message inviting a responsive text," as Plaintiff did here, "there is no TCPA violation." 2018 WL 6242484, at \*5. *First*, Plaintiff argues that "*Zemel* addresses the consent regime for prerecorded calls under Section 227(b)…, not the consent regime for calls to a number on the Do Not Call Registry under Section 227(c)." Opposition Brief, 9. However, *Zemel* generally addresses "prior express consent" (2018 WL 6242484, at \*5)—exactly what Plaintiff claims was missing here (Opposition Brief, 4-12), and Plaintiff does not explain how (or why) consent should be treated differently under Sections 227(b) and 227(c). *See Morris*, 2016 WL 6608874 (addressing national Do-Not-Call list claim under 47 U.S.C. § 227(c) and finding consent without a signed written agreement). And when addressing the issue of consent, Plaintiff himself cites cases that address Section 227(b), <u>not</u> Section 227(c). *See*, *e.g.*, *Franklin v. Depaul Univ.*, 2017 WL 3219253 (N.D. Ill. July 28, 2017); *Kolinek v. Walgreen Co.*, 2014 WL 3056813 (N.D. Ill. July 7, 2014). Moreover, courts have already rejected the same argument that Plaintiff tries to make here, holding that "prior express permission and prior express consent… carry an equivalent meaning under the TCPA." *Gorss Motels Inc. v. A.V.M. Enters., Inc.*, 2021 WL 1163022, at \*5 (D. Conn. Mar. 26, 2021) (internal citation omitted). *Second*, Plaintiff contends that the *Zemel* holding "was effectively *dicta* on a waived issue." Opposition Brief, 9. However, the court independently "[found] Zemel consented to receiving the… text message… and therefore fail[ed] to state a [TCPA] claim…." 2018 WL 6242484, at \*4. *Third*, Plaintiff contends that "*Zemel* involved a confirmatory exchange for the Plaintiff's addition of a telephone number to his Optimum ID account." Opposition Brief, 9. However, the *Zemel* plaintiff did not confirm anything; he responded "Help." 2018 WL

DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS AND/OR STRIKE
Civ. No. 3:26-cv-00001-SB

6242484, at *5. Notwithstanding, here, Plaintiff's messages actually "involved a confirmatory exchange," as he expressly confirmed that he was receiving Xero Shoes' messages that were clearly intended for "Joseph." *Supra*, p.6.

Plaintiff tries to distinguish *Barton* because there, plaintiff "submitted his cell phone number." Opposition Brief, 10. But that is a distinction without a difference. Here, the parties were already regularly communicating via Plaintiff's 503 Number for several months; there would be no reason for Xero Shoes to ask Plaintiff to resubmit that same 503 Number, especially when Plaintiff misled Xero Shoes to believe that it was properly communicating with "Joseph" with consent. *Supra*, p.6. Plaintiff's reliance on *In the Matter of Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 7 F.C.C. Rcd. 8752, 8769 (1992) is similarly misplaced. Opposition Brief, 11. The FCC did not address the circumstance where, as here, plaintiff misleads defendant into believing that defendant is communicating with the prior-consenting owner.

Plaintiff contends that "when a number is reassigned to a different subscriber, any prior consent to contact that number is extinguished." Opposition Brief, 5. This contention similarly fails. None of Plaintiff's authority addresses circumstances where, as here, plaintiff-new-subscriber misled defendant to believe that plaintiff was the prior-consenting-subscriber. *See*, *e.g.*, *ACA Int'l v. Fed. Commc'ns Comm'n*, 885 F.3d 687, 705 (D.C. Cir. 2018); *Massarello v. Power Home Remodeling Grp., LLC*, 2025 WL 2463153, at *3 (E.D. Mich. Aug. 27, 2025); *N.L. by Lemos v. Credit One Bank, N.A.*, 960 F.3d 1164, 1167 (9th Cir. 2020).

Under the circumstances here, Plaintiff consented to Xero Shoes' messages.

Alternatively, Plaintiff should be equitably estopped from arguing that the record does not include "a signed, written agreement." Under the doctrine equitable estoppel, "a person may be precluded by his act or conduct, or silence when it was his duty to speak, from asserting a right

8

DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS AND/OR STRIKE
Civ. No. 3:26-cv-00001-SB

which he otherwise would have had." *Marshall v. Wilson*, 175 Or. 506, 518 (1944). "To constitute estoppel by conduct there must (1) be a false representation; (2) it must be made with knowledge of the facts; (3) the other party must have been ignorant of the truth; (4) it must have been made with the intention that it should be acted upon by the other party; (5) the other party must have been induced to act upon it." *Id*. at 520-21. A duty to speak arises when "the party knows or should know that failure to speak will likely mislead the other party to act to his detriment." *Somerset Invs., Inc. v. Henco Book Exch., Inc.*, 2012 WL 5286925, at *5 (D. Or. Oct. 1, 2012).

All of these elements are satisfied here. *First*, based on Plaintiff's messages to Xero Shoes—even though Xero Shoes clearly believed it was communicating with "Joseph" (*supra*, p.6)—Plaintiff falsely represented that he was "Joseph," the prior-consenting-owner of the 503 Number. *See, e.g.*, *Somerset*, 2012 WL 5286925, at *5 (finding equitable estoppel where "[a] reasonable person reading Street's email would know that, if he said nothing, Street would assume that Cohen interpreted the Guaranty to apply, as Street did, to 'whichever buybacks are currently underway' without the need to sign a new guaranty for each loan."); *see also Marshall*, 175 Or. at 518.

*Second*, Plaintiff knew that he was not "Joseph" and that Xero Shoes' believed he was "Joseph" based on Xero Shoes' multiple messages referring to him as "Joseph." FAC, Ex. A, 1. *Third*, Xero Shoes' was ignorant to the truth, as it repeatedly referred to Plaintiff as "Joseph." *Id*. at 1-2. *Fourth*, Plaintiff intended for Xero Shoes to act upon his false representation that he was "Joseph." Xero Shoes messaged Plaintiff stating "Xero Shoes: Hi Joseph…. We wanted to check in to see if you are receiving our messages…." *Id*. at 1. Plaintiff confirmed "I am." *Id*. If Plaintiff did not want Xero Shoes to send him messages under the mistaken belief that he was "Joseph," he would have simply said so. Instead, he effectively confirmed that he was "Joseph." Then, he

DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS AND/OR STRIKE
Civ. No. 3:26-cv-00001-SB

continued texting Xero Shoes, even though Xero Shoes continued to refer to him as "Joseph." *Id*. at 1-2. *Fifth*, Xero Shoes was induced to act upon Plaintiffs' misrepresentation that he was "Joseph," as Xero Shoes continued to message Plaintiff and refer to him as "Joseph" at all times. *Id*. Thus, Plaintiff should be estopped from relying on the lack of a signed, written agreement.[3]

### 2.     *Plaintiff Did Not Revoke his Consent*

Plaintiff argues that he revoked his consent by: (1) sending his November 6, 2025 "Wrong number" message; (2) serving the OC on January 9, 2026; and (3) sending the January 30, 2026 "halt" message.  These facts do not constitute an effective revocation and/or save Plaintiff's claims.

### a.     **Plaintiff's January 30, 2026 Message**

Plaintiff argues that his January 30, 2026 text to Xero Shoes—*i.e.*, "Please halt these texts please.  They are disturbing my life."—"obviously" revoked consent.  Opposition Brief, 12.  This argument is intellectually dishonest.  The last text that Xero Shoes sent Plaintiff was on January 13, 2026.  FAC, Ex. A, 3.  Even assuming the January 30, 2026 text constituted a Do-Not-Call request, Xero Shoes' ***prior*** texts could not have possibly violated that request.  Plaintiff's January 30, 2026 text—and his reliance thereon—only demonstrate that he tried to manufacture his TCPA claims and never had any intention of complying with Xero Shoes' opt-out instructions.  Indeed, Plaintiff did not send this text in response to any particular text from Xero Shoes; he sent that text ***17 days after*** Xero Shoes' last text.  Further, just as Plaintiff has done to manufacture other TCPA cases (*see* Opening RJN, 5), Plaintiff sent a two-sentence message that did not even include the word "STOP."  Thus, the message was not intended to get Xero Shoes to stop sending messages; instead, Plaintiff went out of his way to try to manufacture *post hoc* revocation.

---

[3] Plaintiff argues that his "wrong number" text and the OC (sent and served, respectively, a year after his messages to Xero Shoes) refutes consent.  Opposition Brief, 7.  However, these facts are relevant to whether Plaintiff effectively revoked his consent a year after receptively and consensually communicating with Xero Shoes, not whether he consented to begin with.  *Infra*, 10-16.

DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS AND/OR STRIKE
Civ. No. 3:26-cv-00001-SB

### b.     Plaintiff's "Wrong number" Message

As an initial matter, Xero Shoes would be remiss if it did not point out the game Plaintiff plays here when he attempts to manufacture a revocation argument based on his text of a "Wrong number" message that he knew would not revoke consent. Why would Plaintiff know this? Because Plaintiff is not illiterate. An automated instruction to text STOP was clearly communicated as the mechanism by which to communicate consent. There was no plausible reason to use any other method. *Second*, as the record before the Court demonstrates, Plaintiff does this, over and over. He knows exactly what he is doing. Nevertheless, Defendant will respond as though the argument Plaintiff advances isn't pure fiction.

Plaintiff contends that "Defendant completely ignores" his "Wrong number" message. Opposition Brief, 12. This is frivolous. Xero Shoes addressed Plaintiff's "Wrong number" message repeatedly throughout the Motion. Opening Brief, 2, 6, 7, 9, 11, 17, 18. And Plaintiff fails to refute the numerous decisions dismissing TCPA claims on the grounds that plaintiffs did not reasonably revoke their consent when they failed to comply with one-word opt-out instructions without explanation, as here. *See* Opening Brief, 16-18. For example, in *Epps v. Earth Fare, Inc.*, 740 F. App'x 627 (9th Cir. 2018), the Ninth Circuit held:

> In light of the[] facts and circumstances, including (1) the availability of a one-word opt-out procedure; (2) Epps' unexplained failure to use the one-word opt-out; and (3) Earth Fare's notice to Epps that it did not understand her non-standard messages, we agree with the district court that Epps failed plausibly to allege that she reasonably revoked her consent.

*Id*. at 628.

Like *Epps*, Xero Shoes offered "a one-word opt-out procedure." Also, like *Epps*, Plaintiff does not explain his "failure to use the one-word opt-out." Couple this with what else the text log shows— i.e., that Plaintiff intentionally misled Xero Shoes to believe that he was "Joseph," elected not to clarify that he wanted to unsubscribe from Xero Shoes' messages (or even respond

11

DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS AND/OR STRIKE
Civ. No. 3:26-cv-00001-SB

whatsoever) when Xero Shoes was clearly confused by his "Wrong number" message, and used of the word "halt" (not "stop") in his unprompted January 30, 2026 message (not to mention his history of not following "one-word opt-out procedure[s]" and filing at least 34 TCPA complaints)—and only one plausible conclusion can be drawn.  Plaintiff avoided texting the word "STOP" to manufacture TCPA claims.

Plaintiff further argues, disingenuously, that Xero Shoes understood that Plaintiff's "Wrong number" message meant that he wanted Xero Shoes' messages to stop (the last of the three circumstances that caused the *Epps* Court to conclude that Epps had failed plausibly to allege that she reasonably revoked her consent).  Opposition Brief, 13-14.  However, as in *Epps*, Xero Shoes' message in response thereto put Plaintiff on notice that Xero Shoes did ***not*** understand his message.  Xero Shoes responded "Xero Shoes: If you would like to unsubscribe from all future messages, reply STOP" and "Xero Shoes: Hi Joseph, Thanks for reaching out!  Feel free to let us know if you have any questions or need an account change.  We'd be happy to help!"  FAC, Ex. A, 2.  As in Epps, these messages demonstrate that Xero Shoes did not understand Plaintiff's messages.   Yet, Plaintiff chose never to respond "STOP" or otherwise clarify his message.[4] Plaintiff's attempt to distinguish *Rando v. Edible Arrangements Int'l, LLC*, 2018 WL 1523858 (D.N.J. Mar. 28, 2018) and *Viggiano v. Kohl's Dep't Stores, Inc.*, 2017 WL 5668000 (D.N.J. Nov. 27, 2017) (Opposition Brief, 14) fails for the same reason. Plaintiff was on notice that Xero Shoes did not understand his "Wrong number" message.[5]

---

[4] Plaintiff also mischaracterizes the *Epps* plaintiff's messages as "nonsensical."  Opposition Brief, 14.  Nothing is nonsensical about those messages: *e.g.*, "Thank you but I would like the text messages to stop can we make this happen."  Opening Brief, 16.

[5] Plaintiff contends that in response to his "Wrong number" message, Xero Shoes "replied with a nonsensical offer to make an 'account change' to an account Plaintiff does not have."  Plaintiff further contends that "[e]ither Defendant understood Plaintiff was telling it to stop, in which case Defendant's continued texting violates the TCPA, or Defendant did not understand, in which case

DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS AND/OR STRIKE
Civ. No. 3:26-cv-00001-SB

Next, Plaintiff argues that Xero Shoes' policies required him to "jump[] through hoops." Opposition Brief, 15. The "hoops" that Plaintiff had to jump through were to type four letters (*i.e.*, "STOP") and press "Send," as instructed. There is no simpler mechanism to revoke text consent than that. *See Epps v. Earth Fare, Inc.*, 2017 WL 1424637, at *5 (C.D. Cal. Feb. 27, 2017) ("[A]lthough Plaintiff is correct that Defendant 'may not abridge [Plaintiff's] right to revoke consent using any reasonable method,' and 'may not deliberately design systems or operations in ways that make it difficult or impossible to effectuate revocations,' Plaintiff has not plausibly alleged any such burden here" where she could "Text STOP to end") (citations omitted). (There was also nothing burdensome about asking Plaintiff whether he wanted an account change, particularly after Plaintiff misled Xero Shoes into believing that he was the account owner.)

Plaintiff also acknowledges that for revocation to even be effective, "the called party must 'clearly express his or her desire not to receive further calls.'" *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1048 (9th Cir. 2017); Opposition Brief, 12. Plaintiff claims that his "Wrong number" text "obviously" satisfied this standard, he does not explain why. And tellingly, nor does he address *Stewart v. Network Cap. Funding Corp.*, 549 F. Supp. 3d 1058, 1060 (C.D. Cal. 2021), which held that "Plaintiff's statement that he did not have a house, at best, expressed disinterest in NCFC's services; it fell short of 'clearly express[ing]' his desire not to receive additional calls from NCFC." Opening Brief, 18. Here, Plaintiff's "Wrong number" text similarly, "at best,

---

its offer to make an 'account change' for an account Plaintiff does not have makes no sense," and that "both readings doom the motion." Opposition Brief, 14. But the messaging makes clear that Xero Shoes did not understand that Plaintiff's message. Why would it, when Plaintiff simply declined to file the automated instruction to reply "STOP"? Moreover, what is nonsensical is that Plaintiff would make the argument that Xero Shoes would know that he did not have an account, in circumstances where he represented himself as the owner of the account, repeatedly, by responding to messages addressed to "Joseph" without objection (*supra*, p.6).

13

DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS AND/OR STRIKE
Civ. No. 3:26-cv-00001-SB

expressed disinterest in [Xero Shoes' products]"—even though Plaintiff previously expressed interest in (and even enthusiasm when) receiving Xero Shoes' promotional messages.

Plaintiff also does not address *Van Patten*'s examples of what would constitute effective revocation. Plaintiff could have "plainly [told] Defendants not to contact him on his cell phone." 847 F.3d at 1048. "Wrong message" is not a similarly clear directive. *Van Patten* also explained that plaintiff could have "messag[ed] 'STOP' after receiving the… message," just as Xero Shoes instructed. *Id*. Here, Plaintiff intentionally never used the word "STOP."

For all of the foregoing reasons, Plaintiff's "Wrong number" message was not a reasonable revocation of consent.

### c.    Service of the OC

Plaintiff also claims that he revoked his consent by serving the OC and that Xero Shoes sent two messages thereafter. Opposition Brief, 13. However, these two messages are covered by the TCPA's safe harbor provision. Opening Brief, 19. Under the TCPA, opt-out requests must be honored within a reasonable time after the request, not to exceed 10 business days after receipt thereof. *Id*. Here, Xero Shoes was served with the OC on January 9, 2026, and Xero Shoes texted Plaintiff January 9, 2026 (the same day as service) and January 13, 2026 (two business days after service)—well before the ten-business-day outer limit. *Id*.

Plaintiff argues—without citing authority—that Xero Shoes' safe harbor argument fails because "that provision sits inside the ***internal*** DNC architecture of § 64.1200(d)…. It ***does not apply*** to § 64.1200(c) ***National*** DNC revocations, which terminate ***immediately*** upon a reasonable revocation. Opposition Brief, 16 (emphasis in original). However, the safe harbor applies to <u>both</u> subsections, and courts have rejected Plaintiff's identical argument. *Nece v. Quicken Loans, Inc.*, 2018 WL 1326885, at *6 (M.D. Fla. Mar. 15, 2018) ("Nece's argument, which subjects a company to liability under Section 64.1200(c) if the company calls even a day after the request to stop

14

DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS AND/OR STRIKE
Civ. No. 3:26-cv-00001-SB

calling, produces a discordant result…. Requiring a telemarketer to stop calling immediately after a do-not-call request, Nece's interpretation tees up most telemarketers for a violation of Section 64.1200(c)…. Quicken is not liable for violating Section 64.1200(c) if Quicken honored Nece's do-not-call request *within a reasonable time*.") (emphasis added).[6]

Plaintiff also claims that the TCPA's safe harbor is an affirmative defense that is inappropriate to address on this Motion. However, just as Plaintiff's consent is established through the Text Message Log, so is Xero Shoes' safe harbor defense. *Supra*, pp.14-16. Plaintiff does not (and cannot) plausibly articulate a circumstance where sending a text on the same day as the service of the OC and two business days thereafter is unreasonable under the TCPA. *See Barr v. Macys.com, LLC*, 2023 WL 6393480, at *6 (S.D.N.Y. Sept. 29, 2023) (granting motion to dismiss and holding that "the Court struggles to see how failure to comply with Plaintiff's DNC request within one business day could be unreasonable."); *Orsatti v. Quicken Loans, Inc.*, 2016 WL 7650574, at *7 (C.D. Cal. Sept. 12, 2016) (granting motion to dismiss based on safe harbor provision).

Plaintiff's cases are inapposite because they do not address whether post-service-of-process communications fell within the TCPA's safe harbor provision. *McMillion v. Rash Curtis & Assocs.*, 2018 WL 692105, at *6 (N.D. Cal. Feb. 2, 2018); *Mantha v. QuoteWizard.com, LLC*, 347 F.R.D. 376, 394 (D. Mass. 2024); *Weingrad v. DaBella Exteriors, LLC*, 2026 WL 496609, at *7 (D. Or. Feb. 23, 2026). Indeed, in *DaBella*, "DaBella received service on March 10[, 2025]," yet Weingrad (again, a TCPA plaintiff) received another call "on September 11, 2025"—long after the safe harbor expired.

---

[6] Even assuming that Plaintiff was correct, Plaintiff brings an internal DNC claim under Count III, such that this Count would still be dismissed even under Plaintiff's (erroneous) argument.

15

DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS AND/OR STRIKE
Civ. No. 3:26-cv-00001-SB

Accordingly, all of Plaintiff's claims fail.

> 3. *Plaintiff's other TCPA Complaints Further Demonstrate that his Allegations Are Implausible*

Plaintiff does not dispute that he is a serial TCPA plaintiff; he just argues that this "is not a Rule 12 defense." Opposition Brief, 6. However, as more fully discussed in Xero Shoes' RJN Reply, Xero Shoes is not arguing that Plaintiff's claims are barred because he is a serial TCPA plaintiff. Xero Shoes is arguing that certain FAC allegations are implausible on their face and that, **additionally**, Plaintiff's other TCPA complaints underscore the implausibility of the allegations in this one.

- For example, as discussed in the Opening Brief, 8, 14-15, Plaintiff's allegations—pled "[u]pon information and belief"—that he "accidentally" sent his communications to Xero Shoes via his phone's "quick response" function are implausible on their face. Plaintiff does not address this in his Opposition Brief because if he did, he would be doubling down on his misrepresentation to the Court. In Plaintiff's other TCPA complaints, he communicated and played along with other defendants, as he did here. RJN Reply, pp.3, 5-7. This further demonstrates that his "accident" allegation is implausible.[7]

- Plaintiff contends that "he did not pretend to be anyone, let alone 'Joseph.'" Opposition Brief, 7. The Text Message Log demonstrates that this also is implausible. *Supra*, p.6. That Plaintiff played along with other TCPA defendants, tricked them into further communicating with him, and then sued them, further demonstrates this contention's implausibly.

- The Text Message Log makes clear that Plaintiff did not revoke his consent by reasonable means. *Supra*, pp.10-16. The allegations in Plaintiff's other TCPA complaints demonstrate that, like here, Plaintiff intentionally did not comply with clear opt-out instructions, responded "Wrong number" instead of "STOP," and then sued for subsequent messages that he received. This further demonstrates that Plaintiff did not have a

---

[7] If the Court permits Plaintiff's claim to move forward, Xero Shoes intends to take Plaintiff's deposition immediately to question him regarding his practices, and reserves the right to pursue a sanctions motion against Plaintiff's counsel, who has represented Plaintiff in case after case and must be presumed to know that this "accident" allegation is false. Plaintiff's repeated failure to text STOP, and instead sending convoluted messages that he knows will not trigger an opt-out, in case after case in order to manufacture claims is an abuse of the judicial system.

DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS AND/OR STRIKE
Civ. No. 3:26-cv-00001-SB

reasonable expectation that he could effectively revoke his consent by responding "Wrong number"; instead, he intended to trick Xero Shoes to continue sending messages to him.

The Court may properly judicially notice Plaintiff's other TCPA complaints and consider "their existence and the similarity of the allegations and claims with those in this matter" in determining the plausibility of Plaintiff's allegations. *Epps v. Earth Fare, Inc.*, 2017 WL 1424637, at *2, 5 (C.D. Cal. Feb. 27, 2017); *see also* RJN Reply at pp.3-5.

          4.     *Separately, the Second Cause of Action Fails Because Xero Shoes Transmitted a CPN or ANI that Allowed Do-Not-Call Requests to Be Made During Regular Business Hours*

As an initial matter, Plaintiff cannot save himself from his prior concession that Xero Shoes "transmitted the Caller ID, in the form of both CPN and ANI, as 65099 between September 27, 2025 and at least December 2025," because such a drastic factual reversal is prohibited under "the direct contradiction doctrine." As Plaintiff acknowledges, the doctrine applies to directly contradicting reversals of earlier factual assertions. *See Airs Aromatics, LLC v. Victoria's Secret Stores Brand Mgmt., Inc.*, 744 F.3d 595, 600 (9th Cir. 2014) ("A party cannot amend pleadings to 'directly contradic[t] an earlier assertion made in the same proceeding.'") (citation omitted). That is exactly what, on this point, the FAC reflects: the OC conceded that Xero Shoes "transmitted the Caller ID, in the form of both CPN and ANI, as 65099" (Dkt. No. 1)—a fact that disposes of Plaintiff's Caller ID claim under 47 C.F.R. § 64.1601(e) because the claim is entirely premised on the assertion that Xero Shoes' 65099 short code did not transmit CPN or ANI—and the FAC alleges the complete opposite. This is not a "technical clarification of facts"; it is a complete reversal designed to avoid dismissal. The Court should reject this argument.

Having no genuine basis to refute his concession, Plaintiff instead relies on a combination of the definitions of CPN and ANI—the former of which refers to "an interstate call on a Signaling System 7 network"—and secondary sources from the telecommunications industry, to make a

17

DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS AND/OR STRIKE
Civ. No. 3:26-cv-00001-SB

convoluted technical argument about the SS7 network. This argument can essentially be distilled down to two main points: (1) a short code is not CPN or ANI because it is only five digits and cannot transmit and receive messages through the SS7 network, and (2) a short code cannot receive voice calls.

As to the first point, Plaintiff's argument is incorrect. While a short code does not directly map to the SS7 network, messages sent to and from a short code do so through the SS7 network. Specifically, messages to and from a short code are sent through SMS Gateways or Aggregators. *See supra* n.2. Those SMS Gateways or Aggregators have agreements with major mobile network providers, such as Verizon and AT&T, pursuant to which the networks allow the SMS Gateways or Aggregators to access the SS7 network. In turn, the SMS Gateways or Aggregators route the short code messages through the SS7 network.[8] Thus, the premise that a short code cannot route messages through the SS7 network is plainly false. That a short code is only five digits instead of ten does not change this conclusion either, as the definitions of both CPN and ANI do not specify that they must have ten digits. Plaintiff's overcomplication of the CPN and ANI issue ignores the fact that short codes, which nearly all major companies use for telemarketing and other commercial purposes, are routable through SS7 by relying on SMS Gateways and Aggregators to route messages through major mobile phone providers' access to SS7.

Plaintiff seeks to bolster this faulty technical argument by relying on FCC orders, but those do not change the analysis. *First*, Plaintiff relies on the FCC's 2005 order merely for its recitation of the definition of "Calling Party Number" (CPN) in a footnote. Opp. at 18-19 (citing *In the Matter of Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 20 F.C.C. Red.

---

[8] *See, e.g.*, Short Code, https://www.callfire.com/help/glossary/communications/short-code (last accessed on June 7, 2026).

DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS AND/OR STRIKE
Civ. No. 3:26-cv-00001-SB

3788, 3809 n.148 (2005)).  This proposition is unremarkable, and Xero Shoes does not dispute the definition of CPN.  Plaintiff then relies on the FCC's 2003 Order for its purported rejection of telemarketers' concerns that the FCC tethered its caller identification requirements to the SS7 network when SS7 is "not universally available."  However, Plaintiff does not explain how the FCC's requirement that CPN be transmitted over SS7 demonstrates that a short code does not satisfy the FCC's caller identification requirements.  Indeed, the FCC's 2003 Order that Plaintiff cites cuts against his argument when it states:

> Consistent with the FTC's rules, CPN can include ***any number associated with the telemarketer or party on whose behalf the call is made***, that allows the consumer to identify the caller.  This includes ***a number assigned to the telemarketer by its carrier***, the ***specific number from which a sales representative placed a call***, the number for the party on whose behalf the telemarketer is making the call, or the seller's customer service number. Any number supplied must permit an individual to make a do-not-call request during regular business hours for the duration of the telemarketing campaign.

*In Re Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Red. 14014, 14122 (2003) (emphasis added).  Conveniently, Plaintiff ignores this very language, cutting off his quote of the 2003 Order right before this language begins.  As this guidance makes clear, CPN can include "***any number*** associated with the telemarketer or party on whose behalf the call is made," which includes "a number ***assigned to the telemarketer*** by its carrier" and "the specific number from which a sales representative placed a call."  Here, the 65099 short code number from which the messages were sent to Plaintiff is a number that is associated with the telemarketer or party on whose behalf the messages were sent (*i.e.*, Xero Shoes).  It is also a number that was assigned to Xero Shoes by its carrier and the specific number from which the sales representative placed the call.  Plaintiff does not allege anything to the contrary other than a conclusory allegation that a

19

DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS AND/OR STRIKE
Civ. No. 3:26-cv-00001-SB

short code is not CPN or ANI.  Accordingly, the 65099 short code plainly qualifies as CPN under the FCC's guidance.[9]

As to his second point (*i.e.*, a short code cannot receive voice calls), Plaintiff cites no authority that provides individuals must be able to submit do not call requests via voice call. Plaintiff repeatedly refers to individuals "with a voice-only telephone," such as landline telephones or telephones without the ability to send text messages, and makes much ado about the ability to lodge a Do-Not-Call request with a voice call.  The argument is illogical.  If you have a voice-only telephone that cannot send text messages, then you did not receive a text message.  And of course, Plaintiff does not allege that he had such a device (because he couldn't) or that he tried (or even wanted) to make his request by phone (because he didn't).  In fact, for the reasons set forth above, Plaintiff never wanted to communicate a Do-Not-Call request that would be effective. Nor has he alleged anything at all in the FAC that allows for a plausible inference that it would be reasonable for anyone to respond to Xero Shoes' ***texts*** with a ***voice*** Do-Not-Call request.

---

[9] Notwithstanding, the FCC's caller identification requirements do not even apply to short code, SMS messages, or text messages.  More specifically, 47 C.F.R. § 64.1600(c) defines "caller identification information" as "information provided by a caller identification service regarding the telephone number of, or other information regarding the origination of, a call made using a voice service or a text message sent using a text messaging service."  This definition specifically distinguishes between calls made by voice and calls made by text message using a text messaging service.   In contrast, 47 C.F.R. § 64.1601—titled "Delivery requirements and privacy restrictions—which includes § 64.1601(e), does not make any reference to text message calls, but it does make reference to voice calls.   Separately, 47 C.F.R. § 64.1200—titled "Delivery restrictions—repeatedly references text messages and § 64.1200(e) explicitly states "[t]he rules set forth in paragraph (c) and (d) of this section are applicable to any person or entity making telephone solicitations or telemarketing calls or text messages to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02–278, FCC 03–153, "'Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991.'"   In turn, § 64.1200(d) requires that telemarketing calls made via text message must identify the sender, provide a telephone number, and allow for do-not-call requests.  Notably, there is no reference to CPN or ANI.  The only way to interpret this is that 47 C.F.R. § 64.1601 only applies to voice calls.

20

DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS AND/OR STRIKE
Civ. No. 3:26-cv-00001-SB

Moreover, Plaintiff is trying to read into the statute a requirement that does not exist; there is no voice-telephone requirement to make a Do-Not-Call request in the TCPA, the FCC's regulation, FCC guidance, or case law. That the regulation requires that "any individual" be able to make a Do-Not-Call request does not mean that "any individual" must be able to submit a Do-Not-Call by any method. The law is clear that all that is required is that any ***reasonable means*** of making a Do-Not-Call request be provided.[10] *Wright v. USAA Savings Bank*, 2020 WL 2615441, *4 (E.D. Cal. May 22, 2020) (explaining that under the TCPA, "consumers may revoke consent through any reasonable means," and by "using any reasonable method including orally or in writing.").

Moreover, Plaintiff's argument about the alleged inability to submit a Do-Not-Call request ignores his own allegations and the Text Message Log, which demonstrate that Xero Shoes repeatedly provided instructions to Plaintiff that he could "Reply STOP to stop" the text messages. Plaintiff does not address in any serious way, because he can't. Instead, he argues that Xero Shoes' message offer for Plaintiff to email support@xeroshoes.com is insufficient without actually grappling with the text message option. In short, Plaintiff does not (because he cannot) contend that Xero Shoes' opt-out instructions did not provide him with a reasonable method to submit a Do-Not-Call request at any time.

Furthermore, Plaintiff's argument that "Defendant does not meaningfully address and has waived the telemarketer name prong of Section 64.1601(e)(1)" and that "Defendant's motion never

---

[10] Plaintiff makes various arguments in support of his "voice call" interpretation that strain the plain reading of the statutory text. For example, Plaintiff argues that since the FCC requires that do-not-call requests be permitted "during regular business hours," it meant the FCC presumed someone would be staffing telephone lines to handle voice requests. This argument requires a leap in logic that does not track—it could just as easily be that the FCC presumed that the handling of "do not call" requests via whatever mechanism (including via text) must be available during regular business hours.

21

DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS AND/OR STRIKE
Civ. No. 3:26-cv-00001-SB

addresses the name transmission requirement at all" is disingenuous at best.  As Xero Shoes argued in its Motion, and as the Text Message Log makes clear, "Xero Shoes included its name in all of its texts to Plaintiff." Motion at 21, 24.  Every single message from Xero Shoes started by identifying Xero Shoes as the sender.  Plaintiff again makes a convoluted technical argument about SS7 and how it works, but the regulation says nothing about CNAM or LIDB.  His argument is meritless.  Additionally, Plaintiff's reliance on *Newell v. JR Capital, LLC*, 791 F. Supp. 3d 571 (E.D. Pa. 2025) is misplaced.  That case does not, as Plaintiff says, stand for the proposition that inclusion of the caller's name in the body of a text message is insufficient to satisfy the caller identification requirements.  *Newell* held that inclusion of the caller's <u>website URL</u> in the body of a text message fails the caller identification requirements, even where the website URL contains the caller's name, because a URL is not a name, and requiring a text recipient to click the link to identify the caller improperly shifts the onus to the recipient.  *Newell*, 791 F. Supp. 3d at 584-85.

Finally, any ruling that lends credence to Plaintiff's wholly unsupported interpretation of the caller ID requirements would open the floodgates and subject some of the largest companies in the country to billions of dollars in potential liability because they use short codes when telemarketing.  This cannot possibly be what the Congress and the FCC intended,[11] and research reveals no discussions in other cases that suggest that other plaintiffs are making this bogus argument.

---

[11] Plaintiff seeks minimize the enormity of what he proposes by citing a single case in which the Ninth Circuit upheld a nearly $1 billion TCPA jury verdict, but this is not the same as subjecting an innumerable number of companies to billions of dollars of damages premised on the commonplace practice of sending telemarketing text messages with a short code.  To this point, Plaintiff's attempt to distinguish *Moskowitz, Emmanuel, Epps,* and *Rando* misses the mark.  Xero Shoes' point in citing those cases is to demonstrate (1) the commonplace nature of a short code in telemarketing, and (2) the fact that, if Plaintiff's contention had merit, plaintiffs in those cases would have asserted such claims.  As plaintiff knows, they did not.

DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS AND/OR STRIKE
Civ. No. 3:26-cv-00001-SB

**B.     Plaintiff's Class Allegations for Each of the Three Proposed Classes Should Be Stricken under Rule 12(f)**

1.     *Plaintiff's Allegations Regarding the Proposed National DNC Class Must Be Stricken Because the Class Is Overbroad and Lacks Predominance*

In opposition to Xero Shoes' argument that the Proposed National DNC Class should be struck for overbreadth, Plaintiff erroneously claims that Xero Shoes "has the failsafe doctrine backwards." Not so. The only cases Plaintiff cites on this point are two cases from district courts that do not sit in the Ninth Circuit: *Sauter v. CVS Pharmacy, Inc.*, No. 2:13-cv-846, 2014 WL 1814076 (S.D. Ohio May 7, 2014) and *Katz v. CHW Group, Inc.*, No. 5:22-cv-5198, 2023 WL 6445798 (W.D. Ark. Sept. 29, 2023). Neither case is persuasive, let alone binding.[12]

As *Sauter* says, where a proposed class is fail-safe "either those class members win or, by virtue of losing, they are not in the class and are not bound." *Sauter*, 2014 WL 1814076, at *4 (internal citation omitted). Excluding from the proposed class individuals who consented does not fit this definition. Here, defining a class so that it includes only individuals who did not consent does not necessarily mean that the members of such class either will win or be excluded by virtue of losing, because there are other defenses to TCPA claims other than consent or EBR, such as safe harbor defenses. *See, e.g., Mattson v. New Penn Financial, LLC*, 2020 WL 6270907, *2 (D. Or. Oct. 25, 2020) (explaining safe harbor exemption under 47 C.F.R. § 64.120(c)(2) for calls to phone numbers listed on the Do-Not-Call Registry). Moreover, as *Sauter* acknowledges and Plaintiff ignores, there is conflicting case law concerning whether exclusion of individuals who consented to receiving messages from a proposed class constitutes a fail-safe class. *Sauter* specifically cites *Wolfkiel v. Intersections Insurance Services, Inc.* 303 F.R.D. 287 (N.D. Ill. 2014),

---

[12] Plaintiff dismisses *Leon v. Loandepot.com, LLC* on account of it being unpublished. But so are *Sauter* and *Katz*.

DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS AND/OR STRIKE
Civ. No. 3:26-cv-00001-SB

acknowledging that *Wolfkiel* found that "it was 'not yet persuaded that the No-Consent Class qualified as a fail-safe class'" and stated "[i]t is not clear to me that this class definition creates a situation where membership in the class is dependent upon the validity of a putative member's claim." 303 F.R.D. at 294.  Therefore, *Sauter* is not as Plaintiff argues.

*Katz* is equally inapplicable.  In fact, none of the proposed classes at issue in that case made any reference to whether the class members consented to receiving calls from the defendant.  The only reason consent was mentioned in *Katz* in the context of a fail-safe class was that the defendant made an argument—***that the court rejected***—about the plaintiff's proposed classes being fail-safe due to excluding individuals who consented.  As the court found, "none of Mr. Katz's proposed class definitions say anything at all about whether the class members ever consented to receive phone calls."  Thus, the *Katz* Court had no occasion to determine whether carving out individuals who consented from a proposed class definition constitutes a fail-safe class.

More importantly, Plaintiff does not meaningfully distinguish *Leon v. Loandepot.com, LLC*, 2025 WL 2632396 (C.D. Cal. Aug. 22, 2025).  The only basis on which Plaintiff attempts (but fails) to distinguish *Leon* is by conclusorily stating that *Leon* "gets the doctrine wrong on its own face" before simply asserting that "*Sauter*, *Katz*, and its progeny" make up "the substantial weigh of authority."  But as *Sauter* itself acknowledges, the issue is not as clear-cut as Plaintiff claims.  This is further demonstrated by the fact that Plaintiff could not muster a single case from within the Ninth Circuit that supports his position regarding fail-safe classes.  Simply put, *Leon* is factually analogous and persuasive authority from within the Ninth Circuit that stands for the proposition that failure to exclude consenting individuals from a proposed class warrants striking the class.  *See* 2025 WL 2632396, *3.

DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS AND/OR STRIKE
Civ. No. 3:26-cv-00001-SB

To this point, Plaintiff does not grapple with *Brown v. Nano Hearing Tech Opco, LLC*, 2024 WL 3367536 (S.D. Cal. July 9, 2024), which this Court cited approvingly in *Murch*. In *Brown*, the court, among other things, granted the defendant's motion to strike plaintiff's class allegations. In doing so, the court observed that a "defendant may move to strike class allegations before discovery when the complaint shows a class action could not be maintained on the facts alleged." 2024 WL 3367536, *8 (citation omitted). The court went on to find that plaintiff's proposed class was overbroad because it "fail[ed] to exclude any members who may have consented to receiving phone calls from Nano." *Id.* (citing *Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 991 (N.D. Cal. 2009); *Hernandez v. State Farm Fire & Casualty Co.*, No. 16cv200-LAB(JLB), 2017 WL 932198, *6 (S.D. Cal. Mar. 9, 2017)).

Plaintiff cites *Landsman & Funk PC v. Skinder-Strauss Assocs.*, 640 F.3d 72, 94 (3d Cir. 2011) and *Kavu, Inc. v. Omnipak Corp.*, 246 F.R.D. 642, 646 (W.D. Wash. 2007)) for the proposition that the possibility that some class members may have consented does not warrant denial of certification. However, the facts of those cases are distinguishable in that they did not involve a situation, like here, where the class representative's allegations demonstrated consent by voluntarily and consensually engaging in mutual text exchanges with the defendant and ignoring opt-out instructions, which raises individualized inquiries concerning consent, established business relationships, and revocation that is not appropriate for class-wide determination. Additionally, the court in *Kavu* noted that the issue of "whether the facsimile was 'unsolicited' appears to be more of a common issue in this case than in the cases that denied class certification," because the plaintiff had alleged that the defendant obtained all of the class members' phone numbers from a database to which they consented to being included. 246 F.R.D. at 647. Unlike in *Kavu*, there are no allegations of this kind that indicate common proof can easily resolve the

DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS AND/OR STRIKE
Civ. No. 3:26-cv-00001-SB

consent issue.  *See, e.g., Kenro, Inc. v. Fax Daily, Inc.*, 962 F. Supp. 1162, 1169 (S.D. Ind. 1997) (denying petition for class certification where the proposed class definition would require individual inquiries into whether each member consented).[13]

Finally, Plaintiff's only attempt to distinguish the predominance cases on which Xero Shoes relies—*Pepka*, *Sorsby*, and *Leyse*—is based solely on the procedural stage at which those cases were at the time of decision (after discovery occurred) in comparison to this case (pre-answer motion to dismiss).  However, *Brown* and many other cases in this Circuit make clear that "defendant may move to strike class allegations before discovery when the complaint shows a class action could not be maintained on the facts alleged."  2024 WL 3367536, *8 (citation omitted).  That is precisely the case here, and so there is no need to waste party or judicial resources on needless class discovery issues.

        2.        <u>For Several Independently Sufficient Reasons, Plaintiff's Allegations Regarding the Proposed "Telemarketing Caller ID Class" Should Be Stricken</u>

Contrary to Plaintiff's assertions, the Caller ID Class should be stricken because, as explained *supra* pp.17-23, Xero Shoes transmitted CPN or ANI to Plaintiff, and Xero Shoes' messages permitted Plaintiff to submit a Do-Not-Call request.  Plaintiff fails to acknowledge Xero Shoes' argument, or the Text Message Log, which demonstrate that Do-Not-Call requests were permitted.  Instead, Plaintiff continues to read into the regulation a non-existent requirement that recipients of Xero Shoes' alleged text messages be permitted to lodge a Do-Not-Call request via voice call.  Not only is there no such requirement, but doing so is objectively unreasonable under the circumstances.  *Supra*, pp.20-21.  Plaintiff also does not allege that he attempted or even wanted

---

[13] As discussed above, Plaintiff's "affirmative defense" argument fails.  Plaintiff's consent is established on the face of the FAC.

DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS AND/OR STRIKE
Civ. No. 3:26-cv-00001-SB

to make a voice call to lodge a Do-Not-Call request. Plaintiff is not a member of this class and, thus, the Telemarketing Caller ID Class fails on typicality grounds.

Plaintiff's attempt to rebut Xero Shoes' numerosity argument equally fails. Just as Plaintiff fails to allege that Xero Shoes violated 47 C.F.R. § 64.1601(e) when messaging him, he fails to allege that Xero Shoes violated the statute when messaging anyone else.

Plaintiff also fails to meaningfully address Xero Shoes' overbreadth and predominance arguments—*i.e.*, a plaintiff will not satisfy Article III's standing requirements by alleging a bare procedural violation under *Spokeo*. Plaintiff's proposed Telemarketing Caller ID Class includes individuals who did not attempt to submit a Do-Not-Call request and had no interest in doing so. Even assuming there is merit in Plaintiff's Caller ID argument, such individuals did not suffer any harm under *Spokeo* from this technical violation because they did not **want to or try to** submit a Do-Not-Call request. Thus, they lack standing, and their inclusion in the proposed Telemarketing Caller ID Class renders it overbroad. And to determine whether everyone in the class even tried to or wanted to submit a Do-Not-Call request would require individual inquiries. Plaintiff harps on the regulation's requirement that individuals must be able to submit such a request, but if they do not want to do so, there is no harm suffered. Thus, this class fails on predominance grounds.

Plaintiff cites *Novia v. Mobiz, Inc.*, 2026 WL 752181, *2-3 (D. Mass. Mar. 17, 2026), arguing that the court held that the plaintiff's claim under the caller identification regulations alleged a concrete harm. However, *Novia* is not on point. There, when addressing the plaintiff's caller identification claim, the court highlighted the fact that "Novia alleged that Defendants did not provide this information, and, as a result, his trust in the source of his texts was undermined, he wasted time, and he had challenges identifying the sender." *Novia*, 2026 WL 752181 at *2. In turn, the court found that "[w]hile these injuries are not significant, there is no minimum

27

DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS AND/OR STRIKE
Civ. No. 3:26-cv-00001-SB

quantitative limit required to show injury; rather, the focus is on the qualitative nature of the injury, regardless of how small the injury may be." *Id.* Thus, in *Novia*, the plaintiff actually alleged some level of harm that resulted from the lack of caller identification information, even if it was minor. In contrast, Plaintiff does not allege any level of harm here as a result of the alleged noncompliance with the caller identification information. Instead, Plaintiff relies solely on the technical nature of the violation, which is exactly what *Spokeo* deemed insufficient.

3.    *For Several Independent Reasons, Plaintiff's Allegations Regarding the Proposed "Internal Do Not Call Class" or "Stop Class" Must Be Stricken*

The Stop Class allegations should be stricken because that class fails on numerosity and predominance grounds, and because the proposed definition is overbroad and vague.

*First*, Plaintiff does not come close to refuting Xero Shoes' numerosity arguments. Plaintiff fails to address that (1) Plaintiff never sent "STOP," such that the FAC fails to allege facts suggesting that anyone who texted "STOP" received allegedly improper texts from Xero Shoes thereafter and (2) the FAC fails to allege facts suggesting that any reasonable person would reply "Wrong number" instead of "STOP"—let alone a number of individuals sufficient enough to establish numerosity.

Instead, Plaintiff argues that numerosity is satisfied because "Xero Shoes is a national retailer running calling campaigns on a nationwide scale." Opposition Brief, 33. So what? Suing a large retailer is not a proxy for numerosity; there is no "major marketer" exception to the requirement. Plaintiff does not cite a single case in which courts have articulated a *de facto* presumption that numerosity is satisfied where a "major marketer" sends texts on a "national scale." That is because this would have zero bearing on the whether Defendants like Xero Shoes improperly texted anyone after receiving a "STOP" text, or on whether any reasonable person looking to opt out of receiving texts would not comply with Xero Shoes' clear and simple opt-out

28

DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS AND/OR STRIKE
Civ. No. 3:26-cv-00001-SB

instructions. "Mere speculation" that anyone other than Plaintiff would fall within this class doesn't cut it. *Canales-Robles v. Peters*, 2022 WL 621390, at *4 (D. Or. Mar. 3, 2022).

*Second*, the Stop Class should be stricken on predominance grounds. Plaintiff attempts to distinguish *Eldridge v. Cabela's Inc.*, 2017 WL 4364205 (W.D. Ky. Sept. 29, 2017) because it "addressed a Section 227(b) revocation class," not an Internal DNC class under Section 227(c)(5). Opposition Brief, 34. However, *Eldridge* explained "it is clear that caselaw favors striking the 'Stop' classes," and relied on several cases, including cases addressing Section 227(c)(5) claims, in so doing. 2017 WL 4364205, *9 (citing *Wolfkiel v. Intersections Ins. Servs., Inc.*, 303 F.R.D. 287, 293 (N.D. Ill. 2014)).[14] Here (as this case demonstrates), the Stop Class would involve individual inquiries regarding whether each member effectively communicated their revocation or Do-Not-Call request, which will predominate over any common questions of law and fact.

*Third*, the Stop Class is overbroad because it covers individuals who did not validly revoke consent, such as Plaintiff, and thus, individuals who do not have a TCPA claim. Plaintiff contends that Xero Shoes' "consent argument makes no sense for an Internal DNC class" and that "[c]onsent to initial contact is *irrelevant* to an internal DNC claim." Opposition Brief, 33. However, Xero Shoes' argument is focused on the class's coverage of individuals who did not validly revoke consent or issue a Do-Not-Call request, not whether they consented.

Plaintiff also argues that "[i]n a wrong number case, 'wrong number' is not ambiguous." Opposition Brief, 33. However, as this case demonstrates, such a response is ambiguous where clear and easy instructions are given (but not followed) to opt out of receiving texts, and the argument is especially disingenuous where Plaintiff communicated with Xero Shoes as if it had

---

[14] While Plaintiff argues that "Defendant's sole predominance citation is *Eldridge*," he ignores Xero Shoes' "collecting cases" reference following its *Eldridge* citation. Opening Brief, 34.

29

DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS AND/OR STRIKE
Civ. No. 3:26-cv-00001-SB

the **correct** number. *Supra*, pp. 6, 11-14. The facts alleged here do not demonstrate "Defendant's TCPA compliance defect," Opposition Brief at 33; rather, they demonstrate that Plaintiff is a serial TCPA abuser who pulled a "bait and switch" to manufacture a TCPA claim (*supra*, pp.16-17).

*Fourth*, the Stop Class definition is vague. While Plaintiff claims that "the definition of 'asked' is relatively self-evident" (Opposition Brief, 32), Plaintiff fails to refute that it would be nonsensical to define the class as individuals who "***asked*… that Defendant was contacting a wrong number**" (FAC, ¶ 67 (emphasis added)).

The Stop Class should be struck or dismissed.

### 4.    *DaBella and Wilson Are Distinguishable*

Plaintiff claims that "this Court already denied an essentially identical motion in *DaBella*." Opposition Brief, 24 (initial caps omitted). It didn't. *DaBella* involved a motion to strike only an "Internal DNC Class" on typicality grounds. Xero Shoes' motion does not seek to strike the "Internal Do Not Call Class" (or "Stop Class") on typicality grounds. *Compare Weingrad*, 2026 WL 496609, at *6-7 *with supra*, pp.28-30. While Xero Shoes seeks to strike the ***Telemarketing Caller ID Class*** on typicality grounds, the basis for that argument differs completely from that offered in *DeBella*. Here, Plaintiff is not a member of the Telemarketing Caller ID Class because Xero Shoes' texts to Plaintiff transmitted a CPN or ANI and allowed Do-Not-Call requests during regular business hours (Opening Brief, 30-31; *supra*, pp. 17-23, 27-28). The *DeBella* decision involved whether "through the lawsuit, [Weingrad] requested that the communications stop." 2026 WL 496609, at *7. Plaintiff also misrepresents that "[i]n *DaBella*, the Court rejected similar motion to strike arguments, including on the basis of purported consent." Opposition Brief at 24. Neither of DeBella's typicality arguments involved consent. 2026 WL 496609, at *6-7. Indeed, it appears undisputed that "[Weingrad]… never consented to these calls or texts." *Id*. at 2. Thus, *DaBella* is irrelevant to the issues present on this Motion.

30

DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS AND/OR STRIKE
Civ. No. 3:26-cv-00001-SB

Plaintiff claims that *Wilson v. TPH Paralegal Pro. Corp.*, 2026 WL 899930, at *6 (D. Or. Apr. 1, 2026) "rejected… another similar motion to strike argument." Opposition Brief, 25. However, *Wilson* also is distinguishable. There, defendant argued that plaintiff did not allege that defendant "treated any other person in the same manner [as Plaintiff]"—*i.e.*, that "Defendant placed calls… us[ing] an artificial or prerecorded voice." 2026 WL 899930, at *7. Critically, the court accepted as true plaintiff's allegations that the text messages sent to him "used an artificial or prerecorded voice." *Id*. at 5, 6. Here, Xero Shoes' numerosity arguments are meritorious because (1) Plaintiff fails to allege that Xero Shoes' texts to Plaintiff (or anyone else) violated § 64.1601(e)(1); (2) Plaintiff never texted "STOP," and the FAC fails to allege facts suggesting that anyone who actually did so received any allegedly improper texts; and, (3) Plaintiff does not allege (because he cannot allege) facts that would tend to show that any reasonable person would reply "wrong number" instead of "STOP."

*Wilson* also rejected defendant's typicality arguments because Plaintiff alleged that he was "called using an artificial or prerecorded voice without his consent." 2026 WL 899930, at *7. Here, the FAC fails to allege that Xero Shoes transmitted a message to Plaintiff that violated 47 C.F.R. § 64.1601(e)(1) whatsoever. So *Wilson* is irrelevant.

### C.    Plaintiff Should Not Be Granted Leave to Amend Again

Plaintiff argues that if the Court finds that his proposed class definitions are deficient, it should grant him leave to amend the FAC. However, granting leave to amend here would be improper and inequitable. Plaintiff already amended the OC when he filed (in contravention of LR 15(b)(2) and Federal Rule of Civil Procedure 15(a)(1)(B)) the FAC in response to Xero Shoes' first motion to dismiss. Critically, Xero Shoes' first motion to dismiss largely advanced the same arguments as the instant Motion. If Plaintiff could not adequately amend to address the clear deficiencies the first time around when the same arguments were at issue, it is clear that he cannot

31

DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS AND/OR STRIKE
Civ. No. 3:26-cv-00001-SB

adequately address these clear deficiencies with a ***second*** amendment. *See Sabatini v. California Bd. of Registered Nursing*, 849 F. App'x 634, 637 (9th Cir. 2021) (affirming district court's denial of leave to amend where amendment would have been futile because the plaintiff "alleged 'substantially similar' claims based on the same factual allegations, and his counsel was unable to articulate other plausible factual support for those claims, even when questioned by the district court") (citation omitted); *Frost v. Bechetti*, 745 F. App'x 777, 778 (9th Cir. 2018) ("The district court did not abuse its discretion by denying Frost's motion for leave to file a second amended complaint because amendment would have been futile.") (citation omitted). Indeed, on the issue of consent and revocation, Plaintiff cannot plead around the parties' messages in the Text Message Log, and he cannot plead around the telemarketing requirements under the TCPA. Moreover, Xero Shoes should not be required to go through the expense of preparing a ***third*** motion to dismiss in response to yet another version of a complaint filed by a serial TCPA abuser, and that rests on allegations that are wholly implausible at best, and, as set forth above, more likely are just plain false.

32

DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS AND/OR STRIKE
Civ. No. 3:26-cv-00001-SB

**CONCLUSION**

For the foregoing reasons, the Court should dismiss the FAC, or in the alternative, strike and/or dismiss its class action allegations.

Dated: June 9, 2026

> DORSEY & WHITNEY LLP
>
> */s/ Shawn Larsen-Bright*
> Shawn Larsen-Bright, OSB 130051
>
> Dorsey & Whitney LLP
> 701 Fifth Avenue, Suite 6100
> Seattle, WA 98104-7043
> (206) 903-8800
> larsen.bright.shawn@dorsey.com
>
> Christopher G. Karagheuzoff (admitted pro hac vice)
> karagheuzoff.christopher@dorsey.com
> Christopher Paolino (admitted pro hac vice)
> paolino.christopher@dorsey.com
> Dorsey & Whitney LLP
> 51 West 52nd Street
> New York, NY 10019
> Telephone: (212) 415-9200
>
> *Attorneys for Defendant Feel the World, Inc. d/b/a Xero Shoes*

33

DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS AND/OR STRIKE
Civ. No. 3:26-cv-00001-SB

## **LR 7-2(b) CERTIFICATION**

I hereby certify that this Reply Memorandum of Points and Authorities complies with the applicable word-count limitation under Local Rule 7-2(b) because it contains 10,843 words, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of cases and authorities, signature block, exhibits, and any certificates of counsel.

Dated: June 9, 2026

DORSEY & WHITNEY LLP

*/s/ Shawn Larsen-Bright*
Shawn Larsen-Bright, OSB 130051

Dorsey & Whitney LLP
701 Fifth Avenue, Suite 6100
Seattle, WA 98104-7043
(206) 903-8800
larsen.bright.shawn@dorsey.com

Christopher G. Karagheuzoff (admitted pro hac vice)
karagheuzoff.christopher@dorsey.com
Christopher Paolino (admitted pro hac vice)
paolino.christopher@dorsey.com
Dorsey & Whitney LLP
51 West 52nd Street
New York, NY 10019
Telephone: (212) 415-9200

*Attorneys for Defendant Feel the World, Inc. d/b/a Xero Shoes*

DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS AND/OR STRIKE
Civ. No. 3:26-cv-00001-SB

## CERTIFICATE OF SERVICE

I hereby certify that on this date, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the attorneys of record registered on the CM/ECF system.

Dated this 9th day of June, 2026.

/s/ Molly Price
Molly Price, Legal Assistant

35

DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS AND/OR STRIKE
Civ. No. 3:26-cv-00001-SB