Shawn Larsen-Bright, OSB 130051
Dorsey & Whitney LLP
701 Fifth Avenue, Suite 6100
Seattle, WA 98104-7043
(206) 903-8800
larsen.bright.shawn@dorsey.com

Christopher G. Karagheuzoff (admitted pro hac vice)
karagheuzoff.christopher@dorsey.com
Christopher Paolino (admitted pro hac vice)
paolino.christopher@dorsey.com
Dorsey & Whitney LLP
51 West 52nd Street
New York, NY 10019
Telephone: (212) 415-9200

*Attorneys for Defendant Feel the
World, Inc. d/b/a Xero Shoes*

# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

### PORTLAND DIVISION

| | |
|---|---|
| LEON WEINGRAD, individually and on behalf of a class of all persons and entities similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>FEEL THE WORLD, INC. d/b/a XERO SHOES,<br><br>Defendant. | Civ. No. 3:26-cv-00001-SB<br><br><br>**DEFENDANT'S REPLY IN FURTHER SUPPORT OF ITS REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF ITS MOTION TO DISMISS THE FIRST AMENDED COMPLAINT AND/OR STRIKE OR DISMISSS PLAINTIFF'S CLASS ALLEGATIONS** |

1

## REQUEST FOR JUDICIAL NOTICE

Xero Shoes respectfully submits this reply in further support of its requests that the Court take judicial notice of the Weingrad Complaints ("RJN") in connection with Xero Shoes' Motion.[1]

Plaintiff does not want this Court to take judicial notice of the 30+ TCPA complaints he has filed because they shed further light on the implausibility of key allegations he makes in this one that he hopes this Court, operating in a vacuum, might otherwise be more inclined to blindly accept as true. If the Court determines that those key allegations are implausible, his lawsuit must be dismissed.

Plaintiff's problem is that he has no genuine legal basis to oppose the RJN. Plaintiff does not dispute that complaints filed in other federal courts may be (and are regularly) judicially-noticed. Instead, Plaintiff's central argument is that the RJN requests that the Court take judicial notice of the Weingrad Complaints for an improper purpose—*i.e.*, that Plaintiff's claims are barred simply because he is a serial TCPA plaintiff. However, that is not the purpose of the RJN, and Plaintiff knows it. Xero Shoes does not even make that argument in the RJN or the Motion. The FAC and the Text Message Log make clear that Plaintiff's allegations are implausible. Xero Shoes merely requests that the Court take judicial notice of the Weingrad Complaints to further demonstrate the implausibility of his allegations. There is nothing procedurally or substantively improper about taking judicial notice of documents that demonstrate the implausibility of allegations in a complaint.

The FAC and the Text Message Log also make clear that Plaintiff tried to manufacture his claims. The Weingrad Complaints further demonstrate that Plaintiff has intentionally and

---

[1] Capitalized terms have the meanings ascribed to them in Xero Shoes' opening RJN papers ("Opening RJN").

DEFENDANT'S REPLY IN FURTHER SUPPORT OF ITS REQUEST FOR JUDICIAL
NOTICE
Civ. No. 3:26-cv-00001-SB

calculatingly schemed to deceive Xero Shoes into sending him messages. Contrary to Plaintiff's contention, courts regularly consider whether TCPA plaintiffs have manufactured their claims when assessing the merits of them.

Plaintiff raises several other arguments that are entirely irrelevant and/or meritless, as set forth below. The RJN should be granted.

## I.     THE WEINGRAD COMPLAINTS FURTHER DEMONSTRATE THAT THE ALLEGATIONS MADE IN THE FAC ARE IMPLAUSIBLE.

Plaintiff does not dispute that he is a serial TCPA plaintiff; he just argues that this "is not a Rule 12 defense." Motion Opposition, 6; RJN Opposition, 1-2, 4. But Xero Shoes does not argue that Plaintiff's claims are barred because he is a serial TCPA plaintiff. Xero Shoes argues that certain allegations contained in the FAC are implausible on their face and that, additionally, the other Weingrad Complaints underscore the implausibility of those FAC allegations.

- For example, as discussed in Xero Shoes' Opening Brief on the Motion, 8, 14-15, Plaintiff's allegations—pled "[u]pon information and belief"—that he "accidentally" sent his communications to Xero Shoes via his phone's "quick response" function are implausible on their face. Plaintiff does not address this implausibility in the Motion Opposition Brief. And in the Weingrad Complaints, Plaintiff communicated and "played along" with other defendants, as he did here. *See*, *e.g.*, Weingrad Complaint No. 4, ¶ 44; Weingrad Complaint No. 13, ¶ 30; Weingrad Complaint No. 11, ¶ 28; Weingrad Complaint No. 16, ¶¶ 37-38; Weingrad Complaint No. 18, ¶ 30. This further demonstrates that his claim that he "accidentally" sent communications to Xero Shoes is implausible.

- Plaintiff contends that "he did not pretend to be anyone, let alone 'Joseph.'" Motion Opposition, 7. The Text Message Log that he attached to the FAC contradicts him. Motion Reply, pp.6, 10-16; *supra*, p.3; *infra*, pp.5-7. The Weingrad Complaints show that Plaintiff played along with other defendants, tricked them into further communicating with him, and then sued them (*supra*), further demonstrating the implausibility of his representation that he did not do so here.

- The Text Message Log makes clear that Plaintiff did not revoke his consent by reasonable means. *Infra*, pp.5-7. The allegations in the Weingrad Complaints demonstrate that, like here, Plaintiff intentionally did not comply with clear opt-out instructions, responded "Wrong number" instead of "STOP," and then sued for subsequent messages that he received. Opening RJN, 4-6. This further demonstrates that Plaintiff did not have a reasonable expectation that he could effectively revoke his consent by responding "Wrong

DEFENDANT'S REPLY IN FURTHER SUPPORT OF ITS REQUEST FOR JUDICIAL NOTICE

Civ. No. 3:26-cv-00001-SB

number"; instead, he intended to trick Xero Shoes to continue sending messages to him, just as he did other defendants to which he would not text "STOP."

Courts regularly take judicial notice of documents that demonstrate the implausibility of the allegations contained in a complaint, as Xero Shoes seeks to do here. *See, e.g.*, *Ng v. NA*, 2016 WL 3017648, at *4 (N.D. Cal. May 26, 2016), *aff'd sub nom. Ng v. U.S. Bank, NA*, 712 F. App'x 665 (9th Cir. 2018) ("[I]n light of documents that Defendants have proffered for judicial notice, Ng's claim is implausible."); *Baker v. Meiling*, 2021 WL 2062900, at *7 (D. Nev. Apr. 28, 2021), *aff'd*, 2022 WL 1797338 (9th Cir. June 2, 2022) ("[T]he Court takes judicial notice of two documents proffered by Defendants establishing that Plaintiffs' allegations regarding their notice of the Receivership Action are implausible.").

*Epps v. Earth Fare, Inc.*, 2017 WL 1424637 (C.D. Cal. Feb. 27, 2017) is directly on point. Opening RJN, 4. There, the court took judicial notice of three TCPA complaints that plaintiff filed in other actions and specifically, "their existence and the similarity of the allegations and claims with those in this matter"—exactly what Xero Shoes requests that the Court do here. *Id*. at *2. The *Epps* defendant argued that "the complete text message log, paired with Plaintiff's duplicate complaints filed in other courts, evidence that this is a 'manufactured' lawsuit." *Id*. at *5. The court held that plaintiff failed to plausibly allege that her revocation was effective because her method of revoking consent was not reasonable. *Id*. Here, the Text Message Log makes clear that Plaintiff similarly did not revoke his consent by reasonable means. The similarities between Plaintiff's own allegations in the Weingrad Complaints and the scheme that Plaintiff employed here to trick Xero Shoes into messaging him (Opening RJN, 4-6) further demonstrate this point, and that Plaintiff acted intentionally.

Plaintiff's attempt to distinguish *Epps* fails. He argues that the RJN asks the Court to take judicial notice of 34 separate complaints against "unrelated defendants addressed to unrelated

3

DEFENDANT'S REPLY IN FURTHER SUPPORT OF ITS REQUEST FOR JUDICIAL NOTICE
Civ. No. 3:26-cv-00001-SB

telemarketing campaigns sent through unrelated systems with unrelated consent processes." RJN Opposition, 8. But just like here, *Epps* involved unrelated defendants and unrelated telemarketing campaigns. *See Epps*, 2017 WL 1424637, at *2 (listing the three cases). As to Plaintiff's contention that because the complaints in *Epps* were filed within a 33-day window, they "arguably bore on the plaintiff's own theory of consent and revocation in that single discrete time period as facially unreasonable," RJN Opposition at 7 (citing *Epps*, 2017 WL 1424637 at *5), the *Epps* Court never suggested that any part of its ruling turned on the fact that the complaints were filed within that window. Moreover, Plaintiff fails to address how the 32 Weingrad Complaints he has filed since 2024 are somehow less probative of the implausibility of his allegations in this case than the three filed in *Epps* were to that case. If anything, they are more so.

Plaintiff also argues, in conclusory fashion, that "[n]o connective tissue"—whatever that means—"links [the Weingrad Complaints] to this one beyond the bare fact that Plaintiff filed each of them." RJN Opposition, 8. In so doing, Plaintiff ignores the similarities between the allegations contained in the Weingrad Complaints and those in the FAC. *See* Opening RJN, 4-6.

## II. THE COURT MAY CONSIDER THAT PLAINTIFF MANUFACTURED HIS TCPA CLAIMS, AS THE FAC AND TEXT MESSAGE LOG MAKE CLEAR AND AS THE WEINGRAD COMPLAINTS FURTHER DEMONSTRATE.

The FAC and the Text Message Log make clear that Plaintiff has tried to manufacture his TCPA claims. *See* Motion Reply, pp.6, 10-16. The Weingrad Complaints—which demonstrate that Plaintiff has employed this same scheme in other TCPA cases as he has employed here (Opening RJN, 4-6)—further demonstrates that his actions were calculated and intentional and were taken to manufacture his TCPA claims.

Plaintiff claims that courts have rejected the "'manufactured litigation' narrative Defendant advances." RJN Opposition, 4 (citing *Murch v. GPS Capital Markets, LLC*, 2025 WL 2466576 (D.

DEFENDANT'S REPLY IN FURTHER SUPPORT OF ITS REQUEST FOR JUDICIAL NOTICE

Civ. No. 3:26-cv-00001-SB

Or. June 6, 2025)). However, courts regularly consider whether TCPA plaintiffs manufacture their claims when determining issues of consent and revocation. In *Johansen v. Efinancial LLC*, 2021 WL 7161969 (W.D. Wash. June 11, 2021), the court held that plaintiff consented to calls from defendant.

Specifically, the *Johansen* court noted that it was "not the first time Plaintiff has engaged in this type of 'bait-and-switch' behavior and has in fact, filed at least 39 other TCPA cases in the last six years," including one such lawsuit where "Plaintiff admitted that he had no desire to enroll in the company's services 'but played along "as he typically does."'" *Id.* at *9. The court then noted that the district court in the latter of those cases "found that Plaintiff's 'deceptive conduct gave [the defendant] an objectively reasonable basis for believing that [plaintiff] had established a business relationship with [defendant].'" *Id.* (quoting *Johansen v. Nat'l Gas & Elec. LLC*, No. 2:17-cv-587, 2018 WL 3933472 (S.D. Ohio Aug. 16, 2018)). Ultimately, the *Johansen* court held that similar to that case, "if Plaintiff had no intention of obtaining an insurance quote from EFinancial, the undersigned concludes that his deceptive behavior during the telephone call reflected otherwise." *Id; see also Epps*, 2017 WL 1424637, at *5; *Barton v. LeadPoint, Inc.*, 2022 WL 123352, at *2 (W.D. Wash. Jan. 13, 2022), *aff'd*, 2023 WL 4646103 (9th Cir. July 20, 2023) (granting motion to dismiss based on plaintiff's prior consent and explaining that "[defendants] argue that this case and this plaintiff are a 'poster child for TCPA litigation abuse'" and that defendants "assert, persuasively," that plaintiff acted "to 'manufacture' a claim for statutory TCPA damages").

Plaintiff argues that "[i]n *Murch v. GPS Capital Markets, LLC*, 2025 WL 2466576, at *2, *6-8 (D. Or. June 6, 2025), this Court rejected a similar argument that playing along with the calls and actually using a fake name there somehow deprived the plaintiff of standing." Motion Opposition, 7; RJN Opposition, 2. But Xero Shoes is not making a standing argument. Rather, it

5

DEFENDANT'S REPLY IN FURTHER SUPPORT OF ITS REQUEST FOR JUDICIAL
NOTICE

Civ. No. 3:26-cv-00001-SB

argues that the Weingrad Complaints further demonstrate that certain allegations made in the FAC are implausible.[2]  Additionally, in connection with its standing analysis, the *Murch* Court did not even address that plaintiff played along with the calls and used a fake name, as Plaintiff suggests. 2025 WL 2466576, at *6-8

Plaintiff also misrepresents that "[t]he Court held that [Murch's] engagement… did not constitute consent."  Motion Opposition, 10; RJN Opposition, 4.  The *Murch* Court did not make any findings regarding consent, as "it [was] undisputed that Murch did not consent to receive the calls at issue."  2025 WL 2466576, at *7-8.  And *Murch* is distinguishable specifically on the consent issue.  *Murch* involved three allegedly violative calls; the first two calls were missed, and the third call was answered.  *Id*. at *9 ("Murch alleges that GPS called her three times over a five-day period in 2024….  Murch alleges that she did not answer the first two calls.").  On the third call, plaintiff played along with the calls and used a fake name.  *Id*. at 1-2.  However, after that third call, defendant made no calls to plaintiff, and plaintiff did not seek recovery for any subsequent calls.  Here, unlike *Murch*, Plaintiff only seeks recovery for text messages that occurred ***after*** he misled Xero Shoes to believe that he was "Joseph."  FAC, ¶ 27.  Plaintiff consented to those text messages based on his prior conduct.  Motion Reply, pp.6, 10-16.

## III.    PLAINTIFF'S REMAINING ARGUMENTS HAVE NO MERIT.

Plaintiff raises several other meritless arguments, including that that the Court may not judicially notice the truth of any allegations in the Weingrad Complaints, courts are hesitant to take judicial notice of information when the credibility of the information is called into question,

---

[2] Plaintiff's other authority, which concern whether serial-litigant-plaintiffs had "standing," are inapposite for the same reasons. *Wilson v. Skopos Fin., LLC*, 2026 WL 810636, at *2, n.4 (D. Or. Mar. 24, 2026); *Sapan v. Yelp, Inc.*, 2021 WL 5302908, at *4 (N.D. Cal. Nov. 15, 2021); *Cunningham v. Rapid Response Monitoring Servs., Inc.*, 251 F. Supp. 3d 1187, 1194 (M.D. Tenn. 2017).

6

DEFENDANT'S REPLY IN FURTHER SUPPORT OF ITS REQUEST FOR JUDICIAL NOTICE

Civ. No. 3:26-cv-00001-SB

and the Court cannot take judicial notice of disputed facts. *See generally* RJN Opposition. However, Xero Shoes is not seeking to introduce the Weingrad Complaints for the truth of their contents; indeed, Xero Shoes does believe that many of the allegations made in the Weingrad Complaints are true either. Rather, Xero Shoes requests that the Court take judicial notice of the similarity of the allegations and claims made in those cases to those made in this one. Plaintiff also fails to explain how *he* can oppose the RJN based on issues around the "credibility" of the Weingrad Complaints or the allegations contained therein, when he is the one who filed them.[3] Accordingly, there is nothing improper about judicially noticing Plaintiff's own complaints in other TCPA cases that he commenced.

## CONCLUSION

For the foregoing reasons, Xero Shoes respectfully requests that the Court take judicial notice of the Weingrad Complaints in its determination of Xero Shoes' Motion.

Dated: June 9, 2026

---

[3] Additionally, while Plaintiff relies on *Von Grabe v. Sprint PCS*, 312 F. Supp. 2d 1285 (S.D. Cal. 2003) for the proposition that the Court may not take judicial notice of facts that "form the essence of the controversy at hand," many courts in the Ninth Circuit have held that courts may take judicial notice of facts, even when they "may in fact be dispositive." *Hedayati v. Perry L. Firm, APLC*, 2018 WL 3154894, at *3 (C.D. Cal. May 16, 2018) (citing *U.S. ex rel Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244 (9th Cir. 1992)); *Ibrahim v. Morgan S., Inc.*, 2019 WL 6139893, at *1 (C.D. Cal. Sept. 18, 2019) (accord).

DEFENDANT'S REPLY IN FURTHER SUPPORT OF ITS REQUEST FOR JUDICIAL NOTICE

Civ. No. 3:26-cv-00001-SB

DORSEY & WHITNEY LLP


/s/ Shawn Larsen-Bright
Shawn Larsen-Bright, OSB 130051
Dorsey & Whitney LLP
701 Fifth Avenue, Suite 6100
Seattle, WA 98104-7043
(206) 903-8800
larsen.bright.shawn@dorsey.com

Christopher G. Karagheuzoff (admitted pro hac vice)
karagheuzoff.christopher@dorsey.com
Christopher Paolino (admitted pro hac vice)
paolino.christopher@dorsey.com
Dorsey & Whitney LLP
51 West 52nd Street
New York, NY 10019
Telephone: (212) 415-9200

*Attorneys for Defendant Feel the World, Inc. d/b/a Xero Shoes*

DEFENDANT'S REPLY IN FURTHER SUPPORT OF ITS REQUEST FOR JUDICIAL NOTICE

Civ. No. 3:26-cv-00001-SB

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this date, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the attorneys of record registered on the CM/ECF system.

Dated this 9th day of June, 2026.

/s/ Molly Price
Molly Price, Legal Assistant

9

DEFENDANT'S REPLY IN FURTHER SUPPORT OF ITS REQUEST FOR JUDICIAL NOTICE
Civ. No. 3:26-cv-00001-SB