IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

LEON WEINGRAD,

Plaintiff,

v.

FEEL THE WORLD, INC.,

Defendant(s).

Case No. 3:26-cv-00001-AP

**FINDINGS & RECOMMENDATION**

POTTER, United States Magistrate Judge:

Plaintiff Leon Weingrad ("Plaintiff") brings this case on behalf of himself and other putative class members against Defendant Feel the World ("Defendant"), related to text messages sent by Defendant's brand, "Xero Shoes." Plaintiff brings three claims under the consumer privacy provisions of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. Plaintiff alleges that he never consented to receive any telemarketing communications from Defendant. Plaintiff also alleges that Defendant violated TCPA's requirements that telemarketers transmit identifying caller identification information and comply with both internal and national do-not-call lists.

Defendant has moved to dismiss Plaintiff's First Amended Complaint ("FAC") under Fed. R. Civ. P. 12(b)(6). Defendant argues that the amended complaint fails to state a claim because the communications show that Plaintiff consented to receive the text messages. To support its motion, Defendant also asks the Court to consider Plaintiff's pattern of engaging in TCPA in litigation, either through judicial notice or by incorporation by reference.

In the alternative, Defendant moves to dismiss or strike Plaintiff's class allegations pursuant to Fed. R. Civ P. 12(b)(6) or 12(f) as uncertifiable.

For the reasons explained below, the Court recommends that Defendant's motion be GRANTED. Plaintiff's First Amended Complaint should be dismissed with prejudice and without leave to amend. In the alternative, the Court recommends that Defendant's motion to strike Plaintiff's class allegations be GRANTED.

**REQUEST FOR JUDICIAL NOTICE**

In connection with its motion to dismiss, Defendant has asked the Court to take judicial notice of 34 other TCPA complaints filed by Plaintiff in nine district courts since 2024. Def.'s Req. for Jud. Not., ECF No. 24. Plaintiff opposes Defendant's request for judicial notice. Pl.'s Opp. to Req. for Jud. Not., ECF No. 30. Plaintiff argues that the information has little relevance for deciding the 12(b)(6) motion, would have an improper prejudicial effect, and generally has no "legal significance." *Id.* at 4.

Judicial notice of a fact is appropriate in deciding a motion to dismiss when the fact is "not subject to reasonable dispute" because it is "generally known" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018); Fed. R. Evid. 201(b)(1)–(2).

The Court finds that Plaintiff's arguments are primarily aimed at potential misuses of any judicially noticed information. This is not the proper inquiry for a request for judicial notice, which is concerned with whether a fact is "not subject to reasonable dispute." However, the Court will be mindful to only consider or use any judicially noticed information in a manner that is consistent with the other rules of evidence and otherwise supported by law.

Plaintiff also argues that "the Ninth Circuit has accordingly drawn a bright line between noticing the bare fact that a document exists and noticing the truth of the assertions within it." Pl.'s Opp. to Req. for Jud. Not. 2. To support this argument, Plaintiff primarily relies on *Khoja*, 899 F.3d at 999. But *Khoja* did not limit a court's use of judicial notice this strictly. Citing the language of Rule 201, *Khoja* recognized that while courts may not take judicial notice of *disputed* facts contained in such public records, courts may recognize any fact that is "generally known" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *Khoja*, 899 F.3d at 999. The Ninth Circuit then held that a district court, in the context of ruling on a motion to dismiss, could properly recognize—for its truth value—a date contained on an international patent application that was outside the scope of the pleadings. *Id.* at 1001. This exceeds Plaintiff's characterization of *Khoja's* interpretation of Rule 201, that it only allows the "bare fact that a document exists" to be judicially noticed. Pl.'s Opp. to Req. for Jud. Not. 9–10.

At bottom, "a court may take judicial notice of its own records in other cases, as well as the records of an inferior court in other cases." *United States v. Wilson*, 631 F.2d 118, 119 (9th Cir. 1980). Filings from this and other federal courts are routinely recognized through judicial notice. Therefore, the Court will take judicial notice of Plaintiff's TCPA filings, and the "similarity of the [TCPA] allegations and claims with those in this matter." *Epps v. Earth Fare, Inc.*, No. 16-CV-08221-SJO, 2017 WL 1424637, at *2 (C.D. Cal. Feb. 27, 2017).

**PROCEDURAL HISTORY**

"[T]he general rule is that an amended complaint [supersedes] the original complaint and renders it without legal effect." *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 927 (9th Cir. 2012). In this instance, however, the Court finds it relevant and appropriate to examine the procedural

history prior to Plaintiff's FAC and the representations that were presented in the original complaint.

On January 1, 2026, Plaintiff commenced this action by filing his Original Complaint ("OC"). ECF No. 1. The OC characterized the nature of Plaintiff's communications with Defendant in the following way:

> Plaintiff never consented to receive telemarketing text messages from Defendant Xero Shoes. In fact, On [sic] November 6, 2025, the Plaintiff indicated to Defendant that it was likely communicating with a wrong number, but the messages continued, including multiple messages for months after he indicated it was a wrong number.

OC ¶¶ 20–21.

This November 6, 2025 "wrong number" message is the earliest and only communication from Plaintiff mentioned in the OC. And the earliest date provided for a communication from Defendant was September 27, 2025. OC ¶ 25.

On February 26, 2026, Defendant asked for a second extension of time to respond to Plaintiff's OC. Def.'s Mot. to Extend Time, ECF No. 7. Defendant sought this extension because "Defendant had to work with a third-party vendor to assess the facts underlying the Complaint." *Id.* ¶ 10. Plaintiff opposed Defendant's request. *Id.* ¶ 8. Notwithstanding Plaintiff's opposition, the Court allowed Defendant until March 17, 2026, to answer or otherwise respond. Minute Order, Feb. 26, 2026, ECF No. 8. Defendant subsequently moved to dismiss Plaintiff's OC and asked the Court to take judicial notice to certain facts related to this motion. ECF Nos. 10, 11.

Alongside its motions, Defendant filed a declaration by Andrew Sega, Vice President of Engineering at Attentive Mobile. Decl. of Andrew Sega ("Sega Decl."). ECF No. 13. Sega/Attentive Mobile appears to be the "third-party vendor" referenced by Defendant in its request for an extension of time.

Sega oversees and has access to records pertaining to text messages sent by or to Defendant. Sega Decl. ¶ 1. Although Plaintiff pled the telephone number that is at the heart of this TCPA claim as "(503) XXX-XXXX," Defendant was able to unmask Plaintiff's phone number as (503) 755-6495. OC ¶ 17; Def.'s Mot. to Dismiss And/Or Strike Plaintiff's Class Allegations, 5 & n.1. ECF No. 10. Defendant determined this was Plaintiff's number based on a filing in a separate TCPA case filed by Plaintiff in the Middle District of Pennsylvania. *See Weingrad v. QuoteWizard.com, LLC*, Case No. 1:25-cv-00002-YK (M.D. Pa). Attached to Sega's declaration was an exhibit that consisted of "a log of all inbound and outbound text messages between Xero Shoes and the telephone number (503) 755-6495." Sega Decl. ¶ 3; Exhibit 1 ("Attentive Text Log"), ECF No. 13-1.

The Attentive Text Log revealed that the parties had been in communication for over a year prior to the communications mentioned in the OC. The Attentive Call Log also contradicted the Plaintiff's presentation of himself as an entirely passive recipient, replying only to convey "Wrong number." The Attentive Call Log revealed that Plaintiff sent *six* text messages to Defendant prior to the "wrong number" November 6, 2025, communication. In each case, all six test messages from Plaintiff were sent in response to communications received from Defendant:

| **Message from Defendant *to Plaintiff*** | **Reply Message *from Plaintiff* to Defendant** |
|---|---|
| [8/15/24]: Xero Shoes: Save 20%+ on new Xero Shoes fall styles. PLUS... save an EXTRA 5% when you buy 2 or more new styles. Shop now! https://xeroshoes.attn.tv/amk4ybjzpjox | [8/20/24]: Ok |
| [8/23/24]: Xero Shoes: Hi Joseph,We hope you are doing well! We messaged you a few days ago but haven't heard back. We wanted to check in to see if you are receiving our messages. Let us know if there is anything else we can do to help. | [8/23/24]: I am |

| | |
|---|---|
| [8/23/24]: Xero Shoes: Thank you for letting us know. Have a great day! | [8/30/24]: You two |
| [11/26/24]: Xero Shoes: Say so long to 2024 and start gearing up for 2025. Save 10% or more when you shop Xero Shoes today. https://xeroshoes.attn.tv/aSU_gJIx4CPa | [11/27/24]: Nice! |
| [11/27/24]: Xero Shoes: This is an automated message from Xero Shoes. If you need additional help, email us at support@xeroshoes.com. Reply STOP to stop. | [11/27/24]: Hello |
| [12/3/24]: Xero Shoes: Need an easy gift idea? Give the gift of life-changing comfort with a Xero Shoes eGift Card. https://xeroshoes.attn.tv/alq-NczgB2Wy | [12/4/24]: Thanks |

The OC did not mention any of these messages. Instead, the OC stated that "Defendant continued sending messages despite Plaintiff's clear indication that the messages were unwanted." OC ¶ 48. The OC failed to account for how Plaintiff's alleged "clear indication that the messages were unwanted" apparently included expressing messages of gratitude to Defendant for sending promotional texts about their eGift Cards ("Thanks"), responding with an approving affirmation to a 10% off sale ("Nice!"), and a bare confirmation that Plaintiff was receiving Defendant's messages ("I am").

This Attentive Call Log also showed that the Nov. 27, 2024, message was one of eight instances where Defendant informed Plaintiff that all future communications would stop if Plaintiff replied "STOP." Plaintiff never did. The OC did not address why the Plaintiff did not send the one "clear indication" that would apparently end the communications: texting the word "STOP."

The OC mentions that Plaintiff "indicated to Defendant that it was likely communicating with a wrong number, but the messages continued." OC ¶ 21. But the Attentive Text Log reveals that after Plaintiff texted "Wrong number," Defendant responded *within seconds* with the

message "If you would like to unsubscribe from all future messages, reply STOP." Attentive Call Log 4. Plaintiff did not reply. *Id.*

Faced with Plaintiff's own texts which undermined the factual allegations presented in his OC, Plaintiff filed his FAC on April 14, 2026. ECF No. 21. Alongside his FAC, Plaintiff now attached an Exhibit consisting of a "complete copy of all the text messages available to Plaintiff." FAC ¶ 23. This exhibit reflects the same information from the Attentive Call Log, including the six text messages from Plaintiff to Defendant.

Plaintiff now alleges that "some" of his text messages to Defendant were "erroneous." FAC ¶ 24. Plaintiff also represents—but only "upon information and belief"—that "some" of those erroneous messages were sent accidentally due to a "quick response" feature on Plaintiff's phone. *Id.* The FAC doesn't specify which messages were erroneous or offer any explanation for any non-erroneous texts.

Plaintiff's FAC also now offered a contradictory factual allegation with respect to the caller identification information. In the OC, Plaintiff stated that he received "at least 16 telemarketing text message calls from Defendant from the telephone number and transmitted the Caller ID, in the form of both CPN and ANI, as 65099." OC ¶ 25. The FAC now states "The Caller ID 65099 is not a valid CPN or ANI" and that "no CPN, and consequently no ANI, was transmitted *at all.*" FAC ¶¶ 33, 35 (emphasis in original). These new, contradictory allegations form the basis of Plaintiff's "Caller ID" claim.

**BACKGROUND**

Plaintiff had a telephone number, pled as "(503) XXX-XXXX," which was a non-commercial telephone number used for personal, residential, and household purposes only. FAC ¶¶ 18–20. Between September 27, 2025, and "at least" January 2026, Defendant sent

Plaintiff "at least" 24 text messages that Plaintiff characterizes as "violative telemarketing text message calls." *Id.* ¶ 32. Plaintiff alleges he "never consented" to receive telemarketing messages from Defendant at this number. *Id.* ¶¶ 21, 51. Plaintiff "never requested that the messages continue." *Id.* ¶ 53. Plaintiff characterizes the messages received in a variety of negative lights, including "unwanted," "intrusions," "frustrating," and invasions of his privacy. *Id.* ¶¶ 53–59.

Defendants' text messages came from the telephone number 65099. *Id.* ¶ 32. Plaintiff alleges this number "is not a valid CPN or ANI." *Id.* ¶ 33. Plaintiff alleges that that this five-digit text-only code makes it impossible for "an individual with a voice-only telephone," to make a do-not-call request during regular business hours. *Id.* ¶ 35. The FCC defines CPN as the "Calling Party Number," which is the "subscriber line number or the directory number contained in the calling party number parameter of the call setup message associated with an interstate call on a Signaling System 7 network." *Id.* ¶ 34; 47 C.F.R. § 64.1600(e). The FAC does not include the words that comprise the initialism ANI, but the Court takes judicial notice that ANI stands for "automatic number identification." *See* 47 C.F.R. § 64.1600(b).

Plaintiff's FAC brings three causes of action under the TCPA. The first claim is for violating the TCPA's prohibition on making non-emergency calls to members of the National Do Not Call Registry. *Id.* ¶¶ 83–87. The second is for violating the TCPA's requirement that telemarketers transmit CPN or ANI information to allow an individual to make a do-not-call request. *Id.* ¶¶ 88–94. The third complaint is for violations of the TCPA prohibitions on sending telemarketing phone calls despite requests that such calls stop. *Id.* ¶¶ 95–98. All three claims are brought as putative class actions. *Id.* ¶¶ 66–67.

Defendant moves to dismiss Plaintiff's claims, or, in the alternative, strike Plaintiff's class action claims. Def.'s Mot. to Dismiss FAC, ECF No. 22.

## STANDARDS

### I. Motion to Dismiss

A complaint may be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure if it fails to state a claim upon which relief can be granted. In reviewing a Rule 12(b)(6) motion to dismiss, the court "must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the nonmoving party." *Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014).

To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The facts alleged must constitute "more than a sheer possibility that a defendant has acted unlawfully." *Id*. Although the court must take the allegations in the complaint as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (citing *Twombly*, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and pleadings that are "no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 678–79. Moreover, "[t]he court need not . . . accept as true allegations that contradict matters properly subject to judicial notice. . . ." *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

If the complaint is dismissed, leave to amend should liberally be granted, but a court has discretion to deny leave to amend "when amendment would be futile, when it would cause undue prejudice to the defendant, or when it is sought in bad faith." *Chappel v. Laboratory Corp. of Am.*,

232 F.3d 719, 725–26 (9th Cir. 2000) (citing *Bowles v. Reade*, 198 F.3d 752, 757 (9th Cir. 1999)). Leave to amend need not be given if a complaint, as amended, is subject to dismissal. *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 538 (9th Cir. 1989). Any amended complaint "may only allege other facts consistent with the challenged pleading." *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 297 (9th Cir. 1990) (quoting *Schreiber Distributing Co. v. Serv-Well Furniture Co., Inc.*, 806 F.2d 1393, 1401 (9th Cir. 1986)).

## II. Motion to Strike

A court may "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Granting a motion to strike class allegations is "the 'functional equivalent of denying a motion to certify a case as a class action.'" *Bates v. Bankers Life & Cas. Co.,* 848 F.3d 1236, 1238 (quoting *In re Bemis Co., Inc.,* 279 F.3d 419, 421 (7th Cir. 2002)).

A court may deny class certification "[a]t an early practicable time after a person sues or is sued as a class representative." Fed. R. Civ. P. 23(c)(1). However, because a class determination "generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action," it will often only be "practicable" for a court to make this determination after some discovery has been conducted. *General Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982) (internal quotation omitted).

For this reason, motions to strike class allegations at the pleadings stage are "generally disfavored" and the granting of such motions "before discovery has commenced is rare." *Lyons v. Coxcom, Inc.*, 718 F. Supp. 2d 1232, 1235–36 (S.D. Cal. 2009); *In re Wal-Mart Stores, Inc. Wage & Hour Litig.*, 505 F. Supp. 2d 609, 615 (N.D. Cal. 2007). Nevertheless, a court may strike class allegations prior to discovery in cases where plaintiffs fail to make a prima facie

showing of Rule 23's prerequisites or where it is apparent that discovery measures will not be "likely to produce persuasive information substantiating the class action allegations." *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 942 (9th Cir. 2009) (citations omitted).

## DISCUSSION

### I. Plaintiff's TCPA Claims

Congress enacted the Telephone Consumer Protection Act ("TCPA") in response to increasing consumer complaints concerning unsolicited telemarketing calls, which consumers regarded as a nuisance and an invasion of privacy. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009). The TCPA "establishes the substantive right to be free from certain types of phone calls and texts absent consumer consent." *Van Patten v. Vertical Fitness Grp., LLC,* 847 F.3d 1037, 1043 (9th Cir. 2017); *see also* 47 U.S.C. § 227(b)(1). The basic elements of a TCPA claim require that Plaintiff establish (1) the defendant called a cellular phone; (2) using an automatic telephone dialing system; (3) without the recipient's prior express consent. 47 U.S.C. § 227(b)(1). For at least some purposes, discussed in greater detail below, a text message counts as a "call" under the TCPA. *Howard v. Republican Nat'l Comm.,* 164 F.4th 1119, 1123 (9th Cir. 2026).

Plaintiff has brought three distinct TCPA claims against Defendant. All are putative class allegations. Defendant has moved to dismiss all three claims pursuant to Rule 12(b)(6).

#### *A. Plaintiff's "Internal Do Not Call" Claim*

A TCPA claim requires that the communications received by a consumer be unwanted and that texts be sent without the recipient's prior express consent. *See* FAC ¶ 2; 47 U.S.C. § 227(b)(1)(A); *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012). Defendant has argued that Plaintiff's claims should be dismissed because Plaintiff has consented

to the communications. Def.'s Mot. 13. Plaintiff first argues that the Court should disregard this because it is "an affirmative defense inapplicable for adjudication under Rule 12(b)(6)." Pl.'s Resp. 4. But when an affirmative defense is apparent based on the face of the complaint, it can be adjudicated at the motion to dismiss stage. *Sams v. Yahoo! Inc.,* 713 F.3d 1175, 1179 (9th Cir. 2013) (citing *Jones v. Bock*, 549 U.S. 199 (2007)). Here, the presence or absence of consent can be determined from the text exchange, which is part of Plaintiff's complaint. FAC, Ex. A.

Further, Plaintiff's prima facie "internal do not call list" claim must allege that Defendant's contact occurred despite Plaintiff's "request not to receive such calls." 47 C.F.R. § 64.1200(d). The Court finds that Plaintiff has not pled facts to support his claim that Defendant's texts were unwanted and continued despite Plaintiff "previously requesting that such calls stop." FAC ¶ 96. Without this, Plaintiff has no case.

Plaintiff's text messages do not reflect an unwilling recipient. On the contrary, the FAC and the Attentive Call Log demonstrate that the Plaintiff consented to the messages, induced the Defendant to send further texts, and failed to take the one step which Defendant indicated would have terminated the exchange: texting the word STOP.

Plaintiff's initial responses to Defendant's marketing communications were all messages of either explicit or tacit approval. Plaintiff claims that these messages should be disregarded by the Court because they were "sent accidentally due to a "quick response" feature on Plaintiff's phone." FAC ¶ 24. At this stage, well-pleaded allegations in a complaint are ordinarily accepted as true, but it is extremely improbable that Plaintiff's representation is true. For instance, on August 23, 2024, Defendant texted Plaintiff "Xero Shoes: Thank you for letting us know. Have a great day!" FAC, Ex. 1. And in response, Plaintiff replied, "You two" [sic]. While Plaintiff may

confuse homophones, it is unlikely that his mobile phone's operating system would offer up a pre-written reply with such an error.

Further, Plaintiff is the only party in the position to know whether his messages were a "mistake." He could have cured any message that was sent by "mistake" by sending a follow-up message. Or texting "STOP" to end all communications. He never did.

Ultimately, Plaintiff's subjective intent or lack of mistake does not matter for a consent analysis. "If words or conduct are reasonably understood by another to be intended as consent, they constitute apparent consent and are as effective as consent in fact." RESTATEMENT (SECOND) OF TORTS, § 892. Especially here, where Defendant had no nontextual clues about Plaintiff's intent, Defendant cannot be expected to read Plaintiff's mind to discern which text messages were sent "by mistake" and those that were not.

Plaintiff's messages, which are part of his complaint, objectively manifested consent. The Ninth Circuit recently considered consent in a TCPA case. *See Moskowitz v. American Savings Bank, F.S.B.*, 37 F.4th 538 (9th Cir. 2022). In *Moskowitz*, the defendant was a bank that texted the TCPA plaintiff using a five-digit short code. *Id.* at 540. Plaintiff claimed the messages were sent without his "prior express consent." *Id.* The *Moskowitz* court disagreed, applying a prior decision which already found that "providing a telephone number to a business as part of the telephone communication to that business constitutes express contact to a responsive contact from that business within the scope of that communication." *Id.* (citing *Van Patten v. Vertical Fitness Group, LLC*, 847 F. 3d 1037, 1046 (9th Cir. 2017)). It then upheld judgment for the defendant on the basis that "each text message from [Plaintiff's] mobile phone constituted prior express consent for each of [Defendant's] reply texts to his mobile phone." *Moskowitz*, 37 F.4th at 541. The *Moskowitz* court noted that the Defendant's reply messages always provided

"information that the short code was [defendant's] and how to stop or continue communication." *Id.* at 542 (citing *Van Patten*, 847 F.3d at 1046). "By sending text messages to [defendant's] short code, [plaintiff] expressly consented to receive reply text messages." *Moskowitz*, 37 F.4th at 542.

The facts in *Moskowitz* are strikingly similar to those in Plaintiff's FAC. The Court finds that Plaintiff's conduct constituted express consent under *Van Patten* and *Moskowitz*.

"When an individual sends a message inviting a responsive text, there is no TCPA violation." *Zemel v. CSC Holdings LLC*, No. 18-CV_2340-BRM-DEA, 2018 WL 6242484, at *5 (D.N.J. Nov. 29, 2018). "Other courts have held that responding to text messages that include, as here, the clear directive 'Reply STOP to cancel' . . . fails to state a claim for violation of the TCPA because a plaintiff who does not reply 'STOP' but instead texts back a verbose sentence with the same sentiment does not use a reasonable method to revoke consent." *Rando v. Edible Arrangements International, LLC*, No. 17-CV-701-JBS/AMD, 2018 WL 1523858, at *6 (D.N.J. Mar. 28, 2018) (citing *Viggiano v. Kohl's Department Stores, Inc.*, 17-0243-BRM-TJB, 2017 WL 5668000, at *4 (D.N.J. Nov. 27, 2017) and *Epps,* 2017 WL 1424637, at *5).

Plaintiff never replied "STOP." Indeed, until his final message, Plaintiff never conveyed that the messages were unwanted using any reasonable methods, thus failing to effectuate any revocation of consent.[1] Instead, Plaintiff sent several messages which objectively conveyed an eagerness and willingness to receive further marketing communications. Plaintiff did not convey any revocation of consent until his last message on January 30, 2026, when he stated "Please halt

[1] Plaintiff also argues that the serving of the original complaint should also be viewed as a communication from Plaintiff that the Defendant's messages were unwanted. But only two messages were sent after that point, the latter of which arrived four days after service. The Court finds those communications were within the TCPA's safe harbor provision, which states that opt-out requests must be honored within 10 business days. 47 C.F.R. § 64.1200(d)(3).

these texts please. They are disturbing my life." FAC, Ex. 1. The FAC reflects that Defendant did indeed "halt" the texts after that communication. *Id.*

The FAC alleges in multiple places that Defendant's text messages were "unwanted" or without Plaintiff's consent. FAC ¶¶ 21, 26, 55, 63, 64 "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and pleadings that are "no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 678–79. The Court finds that Plaintiff has not alleged facts which support this claim.

***B. Plaintiff's Caller ID Claim***

Plaintiff also brings a claim against Defendant for violating TCPA's "caller identification information" requirements. FAC ¶¶ 13–16, 88–94; 47 C.F.R. § 64.1601(e). Plaintiff alleges that Defendant failed to transmit any CPN or ANI information alongside the telemarketing text messages. *Id.* ¶ 89. Plaintiff alleges that this failure represents its own cause of action. Plaintiff also alleges that this failure necessarily means that the Defendant is also violating the requirement that such caller identification information "must permit any individual to make a do-not-call request during regular business hours." *Id.* ¶ 90; 47 C.F.R. § 64.1601(e)(1).

The OC stated that "Plaintiff received at least 16 telemarketing text message calls from Defendant from the telephone number and transmitted the caller ID, in the form of both CPN and ANI, as 65099 between September 27, 2025, and at least December 2025." OC ¶ 25. The FAC has reversed course and stated that "[a] telephone number code like 65099 is not a compliant "CPN" under applicable regulation, meaning that no CPN, and consequently, no ANI was transmitted *at all*." FAC ¶ 35 (emphasis in original).

The FAC is now the operative pleading, and the parties disagree as to whether Defendant transmitted CPN and ANI via its texts. Def.'s Mot. 29, Pl.'s Resp. 17. In his response brief,

Plaintiff introduced a significant amount of engineering information related to telecommunications network infrastructure and "the inner workings of SS7" to support his factual allegation that "[a] short code is a different kind of identifier entirely from CPN/ANI." Pl.'s Resp. 16–19. Defendant rebuts Plaintiff's claim with its own detailed explanation of "SMS Gateways or Aggregators." Def.'s Reply Brief 18, ECF No. 31.

The parties have a material factual dispute about a technologically complex matter. When considering a motion to dismiss, the Court must "accept all allegations of material fact as true and construe them in the light most favorable to the nonmoving party." *Gibson v. Cendyn Grp., LLC*, 148 F.4th 1069, 1079 (9th Cir. 2025) (citing *Burgert v. Lokelani Bernice Pauahi Bishop Tr.*, 200 F.3d 661, 663 (9th Cir. 2000)). Thus, for the purposes of this motion, the Court accepts Plaintiff's allegation that Defendant's text message did not contain CPN or ANI data.

However, "[t]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. Plaintiff has alleged a claim under the TCPA. The Court must still determine whether Plaintiff has stated a cognizable claim based on the relevant statutory and regulatory language. Plaintiff's legal conclusion that text messages must bear CPN or ANI data is not readily apparent from the face of the regulation cited by Plaintiff, which refers to a "telemarketing call." 47 C.F.R. § 64.1601(e)(1). The Court has found no binding authority on this question from the Ninth Circuit. Nor has the Court found any Circuit Court that has interpreted the regulation in the manner Plaintiff advances.

Plaintiff argues that he states a claim with a private right of action by pointing to the "landmark" *Dobronski* decision from the Eastern District of Michigan. Pl.'s Resp. to Def's. Mot. 16; *Dobronski v. Selectquote Ins. Servs.,* 773 F. Supp. 3d 373 (E.D. Mich. 2025). Of course, "[a] decision of a federal district court judge is not binding precedent in either a different judicial

district, the same judicial district, or even upon the same judge in a different case." *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) (quoting 18 J. Moore et al., Moore's Federal Practice § 134.02[1] [d], p. 134–26 (3d ed.2011)). Regardless, *Dobronski* held that "47 C.F.R. § 64.1601(e)(1) was promulgated to enforce 47 [U.S.C.] 227(c)" and that "the private right of action in § 227(c)(5) is, therefore, available for violations of § 64.1601(e)." *Dobronski*, 773 F. Supp. 3d at 380. But the case presented in *Dobronski* did not concern text messages, and it does not address whether either 47 U.S.C. § 227(c) or 47 C.F.R. § 64.1601(e)(1) applies to text messages. Therefore, even if this Court were to adopt its reasoning, the holding in *Dobronski* is not instructive.

Congress passed TCPA in 1991, and the FCC promulgated 47 C.F.R. § 64.1601(e) in 2003. *Rules and Regulations Implementing the Telephone Consumer Protection Act (TCPA)*, 68 Fed. Reg. 44,144, 44,156 (July 25, 2003). At the time FCC adopted its rule, text messaging was not contemplated, let alone five-digit short code messaging. This fact alone isn't necessarily dispositive in Defendant's favor, but it does create an ambiguity.

"[A] provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme." *Hall v. United States Dep't of Agric.*, 984 F.3d 825, 838 (9th Cir. 2020) (internal quotation marks omitted) (quoting *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 371 (1988)). This ambiguity does not appear to have been resolved in the Ninth Circuit.

The FAC states broadly that "text messages are "calls" for the purposes of the TCPA." FAC ¶ 40. The only authority cited for this claim in the FAC is the Supreme Court case *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153 (2016).[2] The relevant portion of *Campbell-Ewald*

---

[2] The pincite provided by Plaintiff is to the decision's syllabus, not the opinion itself.

merely states that "[a] text message to a cellular telephone, it is undisputed, qualifies as a "call" within the compass of 47 U.S.C. § 227(b)(1)(A)(iii)." 577 U.S. at 156. But in a later case, the Supreme Court limited the implications of this pronouncement, stating that because "neither party dispute[d] that the TCPA's prohibition also extends to sending unsolicited text messages," the *Campbell-Ewald* opinion "assume[d] that it does without considering or resolving that issue." *Facebook, Inc. v. Duguid*, 592 U.S. 395, 400 & n.2 (2021) (citing *Campbell-Ewald*). Therefore, the Court finds *Campbell-Ewald* unhelpful for resolving this issue.

The FAC also refers to unnamed and uncited decisions of "the Ninth Circuit" to support Plaintiff's interpretation that text messages constitute a "call" for the purposes of FCC's caller identification requirement. FAC ¶ 40. The Court has identified two relevant Ninth Circuit cases, though neither addresses the precise regulation at issue. *See Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir. 2009); *Howard v. Republican National Committee*, 164 F.4th 1119 (9th Cir. 2026).

First, in *Satterfield*, the Ninth Circuit relied on the now-disfavored "*Chevron* deference" doctrine and deferred to the FCC's interpretation of its own regulations in holding that text messages are calls for purposes of a different TCPA provision. *Satterfield*, 569 F.3d at 954 (holding that "[t]he FCC's interpretation of 47 U.S.C. § 227(b)(1)(A) is consistent with the dictionary's definition of call . . . [a]ccordingly, we find that the FCC's interpretation of the TCPA is reasonable").

Of course, courts no longer engage in *Chevron* deference. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412–413 (2024). Instead, courts are instructed to interpret statutes under "ordinary principles of statutory interpretation, affording appropriate respect to the

agency's interpretation." *McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146, 168 (2025).

But if the Court were to defer to more recent and relevant agency guidance on the question before it now, the Court would almost surely resolve this question in favor of Defendant. The FCC recently stated flatly that it "does not adopt at this time [TCPA's] caller ID authentication requirements for text messaging." *Targeting and Eliminating Unlawful Text Messages*, 89 Fed. Reg. at 5100 (Jan. 26, 2024). So, the rationale of *Satterfield* does little to advance Plaintiff's interpretation.

In *Howard*, the Ninth Circuit engaged in its own post-*Chevron* independent statutory interpretation and re-affirmed *Satterfield*'s holding. *Howard,* 164 F.4th at 1122–28. The Ninth Circuit held that in light of "the statute's declared purpose to protect privacy rights," text messages counted as a "call." *Id.* at 1124. But the court in *Howard*, like the court in *Satterfield*, addressed only whether text messages count as "calls" for the purposes of 47 U.S.C. § 227(b). This section prohibits automated or prerecorded calls without the recipient's consent. *Id.* Plaintiff's caller identification claim is brought under a caller identification regulation promulgated under different statutory authority—47 U.S.C. § 227(c).

In *Howard,* the Ninth Circuit looked to the § 227(b)'s purpose and the interest it was designed to protect. 164 F.4th at 1124. The court noted that a text message "frequently entails an immediate intrusion on privacy comparable to that associated with the ring of an incoming auto-dialed phone call." *Id.* In both cases, there is "a display of a preview and that this is "the particular type of intrusion on privacy at which the statute is aimed." *Id.* In other words, the text message counts as a "call" under § 227(b) because the statute's purpose is the same: preventing

the actual intrusion of unwanted contact. But it isn't immediately apparent that 47 C.F.R. § 64.1601(e)'s caller identification requirement has this same purpose.

Just as it was in *Howard*, the question is whether applying 47 C.F.R. § 64.1601(e) to text messages is appropriate because text messages represent "the particular type of intrusion on privacy at which the statute is aimed." See *Howard*, 164 F. 4th at 1124; ANTONIN SCALIA AND BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 56 (2012) ("words are given meaning by their context, and context includes the purpose of the text.").

The regulations promulgated pursuant to 47 U.S.C. § 227(b) were implemented to prevent the intrusion of a phone call or communication *at all*. On the basis of this purpose, *Howard* held that text messages should be treated as "calls." But that is not the intrusion here. The regulation was designed to prevent the intrusion of a phone call or communication by an unidentified caller making it impossible for the recipient to stop the call.

47 C.F.R. § 64.1601 is titled "Delivery requirements and privacy restrictions." It is designed to protect the integrity and availability of caller identification information. The FCC's caller identification requirement was implemented to address the problem of unidentified, anonymous traditional voice calls which did not display or make available information about the party that originated the call. This frustrated the statute's purpose, because without this information, telephone subscribers did not have at their disposal "the methods" by which they could "give or revoke" their permission to be contacted for solicitation. 47 U.S.C. § 227(c)(3). So, the caller identification requirement promulgated at 47 C.F.R. § 64.1601(e) was implemented for the purpose of allowing *identification* of the originating party:

> Caller ID allows consumers to screen out unwanted calls and to identify companies that they wish to ask not to call again. Knowing the identity of the caller is also helpful to consumers who feel frightened or threatened by hang-up and "dead air" calls.

*Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*. 68 Fed. Reg. at 44,166 (July 25, 2003).

These problems do not arise in the context of a text message. Text messages are not "screened" by their recipients prior to answering. They are simply delivered. There is no such thing as an unsettling "hang-up" or "dead air" with the delivery of a text message. And the recipient of a text message can immediately reply to the sender utilizing the same interface and number in which they received the communication.

The Court finds that the purpose of the caller identification requirements in 47 C.F.R. § 64.1601(e), which was promulgated under the authority of 47 U.S.C. § 227(c), can be materially distinguished from the purpose of those requirements that were promulgated under 47 U.S.C. § 227(b), which was the subject of *Howard*. And after considering its own distinct purpose, as well as the overall regulatory and statutory scheme surrounding it, the Court finds that 47 C.F.R. § 64.1601(e)'s requirements cannot and do not apply to text messages.

The purpose of 47 C.F.R. § 64.1601(e) was to facilitate *identification*, not to prevent the *contact itself.* It is obvious that when the FCC implemented the regulation in 2003 it required the conveyance of CPN and ANI data because there was no alternative means of identifying the originating party that was available to "the vast majority of the United States." *See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 68 Fed. Reg. at 44,166 (July 25, 2003). And identification of callers was necessary to make effective the other provisions of the TCPA, including its Do Not Call Registry.

But text messages are different. Even without CPN or ANI information, the identity of the sender of a text message can be readily ascertainable. And the recipient can contact the originating party utilizing the same modality of communication, by simply replying to the

message. Indeed, the Defendant here provided an easy means of opting out of future communications by replying "STOP" to the same five-digit code that originated the message. Plaintiff did not do so.

Holding that 47 C.F.R. § 64.1601(e) applies to text messages would also lead to absurd and unworkable conclusions. First, it would render the regulation's requirement that the provided telephone number must "permit any individual to make a do-not-call request during regular business hours" nonsensical. Unlike traditional voice telephone lines, text message lines do not require that an attendant person be available during designated hours to answer the phone. Plaintiff was able to text "STOP" at all hours of the day and have their request delivered to Defendant.

Plaintiff has seized upon this to try to assert a second, distinct cause of action. FAC ¶ 90; *see also* FAC ¶ 67 ("Telemarketing Caller ID Class" definition). But rather than providing TCPA plaintiffs with an additional claim, Plaintiff's logic merely demonstrates the flaw of his interpretation. As Plaintiff notes, the overall purpose of TCPA and its Do Not Call Registry is to provide "a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes." FAC ¶ 2. But Plaintiff here is demanding a *less* convenient means of opting out of telemarketing text messages—a separate, voice telephone line staffed only during business hours. Rather than follow this *reductio ad absurdum*, the Court finds that Plaintiff's observation is more evidence that the only reasonable interpretation is that 47 C.F.R. § 64.1601(e) does not apply to text messages.

Plaintiff's interpretation would also mean that *any* time a business utilizes a five-digit code to send marketing messages, it would represent a TCPA violation and a cause of action with attendant statutory damages. Liability would attach even in cases where it is undisputed that

a plaintiff instigated the messages, consented, or opted-in to receive the messages. This is because, as Plaintiff points out, "[t]here is no consent defense to 47 C.F.R. § 64.1601(e)(1)." FAC ¶ 15.

Of course, the lack of a consent defense makes sense when viewed in the context of the regulation's *identification* purpose. A consumer's "consent" would be uninformed and meaningless in the context of anonymous and untraceable callers. But here, applied to a different context, and to a means of communication not contemplated by the 2003 regulation, Plaintiff's interpretation would all but guarantee an explosion of manufactured bad faith TCPA claims. Plaintiff minimizes this possible outcome as a "parade of horribles." Pl.'s Resp. 19. But the Court is wary of the dangers of judicially creating a new species of TCPA litigation that isn't supported by the plain language or purpose of the statute.

The Seventh Circuit recently went even further than the Court does here. *Steidinger v. Blackstone Medical Services*, 182 F. 4th 532 (7th Cir. 2026). In *Steidinger*, the Seventh Circuit declared that text messages categorically "do not fall within the private right of action created by § 227(c)(5)." *Steidinger*, 182 F.4th 532, 540 (7th Cir. 2026). It reached this holding after considering "what [a] telephone call meant in 1991," in the context of "both the overall statutory scheme and the ordinary public meaning of telephone call." *Id.* at 537. This Court does not need to reach this broader question to decide the case before it, and its recommendation is confined to the specific caller identification regulation found at 47 C.F.R. § 64.1601(e). But it is noteworthy that the Court's findings are harmonious with a recent circuit court decision that engaged in a broad and deep analysis of TCPA's statutory scheme. This suggests that TCPA cases involving text messages that arise under § 227(c) should receive careful examination.

### *C. Plaintiff's Do Not Call Registry Claim*

Lastly, Plaintiff alleges that Defendant violated TCPA by placing telemarketing calls "to Plaintiff and members of the National Do Not Call Registry Class despite their numbers being on the National Do Not Call Registry." FAC ¶ 84. Plaintiff's claim fails because he has failed to allege facts necessary to support this claim.

Nowhere in the FAC (or the OC) did Plaintiff allege that the 503- phone number that was texted by Defendant was ever placed on the Do Not Call Registry. Nor did Plaintiff allege that it was placed on the Do Not Call Registry prior to receiving the communications from Defendant.

The omission is conspicuous. Plaintiff alleges the phone number is "non-commercial" and "not associated with any business." FAC ¶ 18. Plaintiff alleges this telephone number is used "for personal, residential, and household purposes only." *Id.* ¶ 19. Plaintiff alleges that he "does not use the number for business purposes and has never used it in connection with any business." *Id.* ¶ 20. And Plaintiff alleges a general lack of consent for Defendant's communications. *Id.* ¶ 21. But there is an absence of any plain factual statement that Plaintiff placed this number on the Do Not Call Registry.

Even after having an opportunity to amend the pleading and being put on notice of the defect by Defendant's original Motion to Dismiss, Plaintiff's only allegations regarding the Do Not Call Registry are indirect. It states that Plaintiff has a cognizable claim simply by referring back to the broad, generalized "National DNC Class" definition. *Id.* ¶¶ 67, 84, 87. But if the Plaintiff fails to establish his own case against the Defendant, he may not seek relief on behalf of himself or any other member of the class. *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974).

Additionally, the class is defined too loosely for Plaintiff to stake his claim on the class definition alone. The class is defined as persons whose "telephone numbers were on the National

Do Not Call Registry for at least 31 days" if those *persons*—but not necessarily those *numbers*—received "more than one telemarketing call or text message from or on behalf of Defendant." *Id.* ¶ 67. As Plaintiff has argued, the protection of the Do Not Call Registry List follows the specific number that received the solicitation. But the construction of this class definition—upon which Plaintiff relies entirely for stating his own claim—has a fatal lack of nexus between these conditions.

As defined, members of the class include individuals if they have any telephone number on the Do Not Call List, even if that number isn't the same one that Defendant utilized for their marketing communications. And because Plaintiff's own "Do Not Call Registry" claim simply refers to this class definition without ever alleging that the 503- number that was texted by Defendant was ever placed on the Do Not Call Registry, Plaintiff has failed to allege his own cognizable TCPA claim.

If Plaintiff registered the 503- phone number on the National Do Not Call Registry, that information should be in the possession of Plaintiff and would have been simple to include in the pleading.[3] Indeed, Plaintiff failed to plead that he placed *any* phone number on the Do Not Call Registry at all. "A plaintiff is the master of his complaint and responsible for articulating cognizable claims." *Newtok Vill. v. Patrick*, 21 F.4th 608, 616 (9th Cir. 2021). It is not proper for the Court to assume that Plaintiff can prove facts that he has not alleged. *Associated Gen.*

---

[3] The Court has already taken judicial notice that Plaintiff has extensive experience litigating TCPA claims. The Court also takes judicial notice that counsel for Plaintiff, Andrew Perrong, recently litigated another Do Not Call Registry TCPA claim in this District. *Wilson v. MAH Group, Inc.*, No. 6:25-cv-00855-MC. The complaint in that case *did* specifically allege that "Plaintiff had registered his number on the National Do Not Call Registry for at least 30 days prior to receiving the calls at issue." Compl. ¶ 15, ECF No. 1 (May 19, 2025). That case involved a different phone number ending in 9999. *Id.* ¶ 8. The absence of similar straightforward factual pleading in this case, together with the disjointed class definition, is unlikely to be an oversight.

*Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983). Plaintiff has failed to allege facts to satisfy one of the basic elements of this TCPA claim.

Further, even if Plaintiff's 503- number was on the Do Not Call Registry at the time of Defendant's messages, Plaintiff would fail to state a claim for violating the TCPA's "Do Not Call Registry" provisions for the same reason his "internal do not call list" claim was defeated: Plaintiff consented to the communications.

Plaintiff argues that there exists a distinction between the "consent regime for calls on the Do Not Call Registry under Section 227(*c*) of the TCPA" and the "consent regime for prerecorded calls under Section 227(*b*) of the TCPA." Pl.'s Opp. to Def.'s Mot. 9 (emphasis in original). The Court disagrees, and points to Section 227(*a*) which defines terms for both "regimes." Here, the TCPA defines "telephone solicitation" to exclude calls or messages sent "to any person with that person's prior express invitation or permission." 47 U.S.C. § 227(a)(4)(A). The regulation also mirrors the definition of "telephone solicitation" to exclude those calls or messages "to any person with that person's prior express invitation or permission." 47 C.F.R. § 1200(f)(15). The Court has already applied the holdings of *Van Patten* and *Moskowitz* and found that Plaintiff's conduct constituted express consent to receive Defendant's texts.

Plaintiff highlights 47 C.F.R. § 64.1200(c)(2)(ii) and argues that Defendant can only establish consent only if there exists an "express, signed, written, seller-specific and number-specific consent." Pl.'s Opp. to Def.'s Mot. 10. Except this is a defense available to any "person or entity making telephone solicitations." 47 C.F.R. § 1200(c)(2). If Plaintiff gave invitation or permission to Defendant to send its text messages, those messages are definitionally not "telephone solicitations." 47 C.F.R. § 1200(f)(15). To the extent Plaintiff is asking the Court to disregard that definition and find that the FCC provided for a unique consent requirement for

members of the Do Not Call Registry in 47 C.F.R. § 64.1200(c)(2)(ii), such a regulatory tiered "consent regime" would be unsupported by the authorizing statute. This makes any such distinction unenforceable. *See Bradford v. Sovereign Pest Control of Tex. Inc.*, 167 F.4th 809, 811–813 (holding that because the relevant statutory provision of the TCPA "provides no basis for concluding that telemarketing calls require prior express *written* consent," an FCC regulation to the "contrary" should be disregarded under *McLaughlin* and *Loper Bright*).

Plaintiff failed to plead that his 503 number was on the Do Not Call Registry. But even if the number was, Defendant's messages were not "telephone solicitations." Plaintiff thus fails to state a claim.

## II. Plaintiff's Class Allegations

The Court finds that all three of Plaintiff's claims have failed to satisfy *Iqbal* and *Twombly's* pleading standards. Plaintiff's legal conclusions are based on a misapprehension of TCPA and its regulations. Additionally, Plaintiff's factual allegations are plainly controverted by the facts as alleged in the text log attached to the FAC. Necessarily, the Court recommends that Plaintiff's class allegations also be dismissed pursuant to 12(b)(6). If the district court declines to adopt that recommendation, the Court recommends that Plaintiff's class allegations be stricken because they fail to satisfy Rule 23's requirements for predominance, typicality, and adequacy.

### *A. All Three Classes Fail Rule 23's Predominance Requirement*

> The Rule 23(b)(3) predominance inquiry asks the court to make a global determination whether common questions prevail over individualized ones. For purposes of this analysis, an individual question is one where members of a proposed class will need to present evidence that varies from member to member, while a common question is one where the same evidence will suffice for each member to make a prima facia showing.

*Ruiz Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1134 (9th Cir. 2016) (quoting *Tyson Foods, Inc. v. Bouaphakeo,* 577 U.S. 442, 453 (2016)) (citation modified).

In evaluating Rule 23's predominance requirement, "the district court must weigh the common issues against the individualized issues and determine whether the common issues are, on balance, important enough to justify class-wide treatment despite the existence of individualized issues." *Rusoff v. Happy Grp., Inc.*, 187 F.4th 1182, 1197 (9th Cir. 2026) (citing *Ruiz Torres*, 835 F.3d at 1125).

Plaintiff's own claim proves that individualized issues would overwhelm common issues of fact and law. Individual inquiries would be necessary to ascertain whether there was consent for the communications and whether each member submitted a reasonable request that the texts stop. Plaintiff and Defendant each attached an exhibit reflecting a log of all the texts between the parties. This is because these communications were necessary to ascertain whether Plaintiff alleged a plausible claim and whether Defendant had an apparent affirmative defense. These inquiries are necessary to resolve these TCPA claims and they are unique to specific parties. If a potential class member would want to offer nuance or context to salvage any communications that indicate consent, as Plaintiff did here by characterizing them as "erroneous," that also would create the need for further individualized inquiries and "mini-trials" to evaluate the appropriate weight of the evidence. Plaintiff seems to concede as much when he alleges that "Defendant's own records can be analyzed to ascertain . . . whether or not Defendant possesses putative consent to contact any numbers it contacted, determine what the responses to those messages were, and whether those numbers were reassigned after any date of putative consent." FAC ¶ 50. This isn't feasible for a class action, and it demonstrates that Plaintiff's class action fails on predominance.

### *B. Plaintiff's Claims Are Not Typical*

Plaintiff may only sue on behalf of the class if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The facts as pled here would present problems with typicality. From the face of the complaint, Defendant would be able to present strong defenses to the class allegations, given the nature of Plaintiff's "mistaken" text replies and the failure of Plaintiff to place his phone number on the Do Not Call Registry. Plaintiff argues that his texts were accidental, but as discussed above, this raises issues related to apparent consent and manifestation of assent that would be atypical of the class. This would have to be litigated, and Plaintiff's "mistake" presentation hinges uniquely on establishing his credibility with the jury or factfinder. This is a hurdle which wouldn't exist for most other class members. The claims and defenses presented are atypical of class members.

### *C. Plaintiff is Not an Adequate Class Representative*

Plaintiff may only represent a class if he will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "[C]lass certification should not be granted if 'there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it.'" *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (quoting *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 180 (2d Cir. 1990)). Because the previously discussed atypical issues in Plaintiff's claim represent vulnerabilities for his case, his role as class representative would undermine the interests of the other class members.

The Court also notes that Plaintiff's role as a serial TCPA litigant would also undermine the interests of the class. In class action litigation in the Northern District of California, the court found that a Plaintiff's "more than unusual" litigation history meant that he failed Rule 23(a)(4)'s

adequacy test. *Wuest v. MyPillow, Inc.*, No. 18-03658 WHA, 2019 WL 3577176, at *3 (N.D. Cal. Aug. 6, 2019). The plaintiff in *Wuest* had filed eleven prior putative class actions and settled ten of those cases on an individual basis without accomplishing anything on behalf of the class. *Id.* Here, the Court has taken judicial notice of 32 TCPA claims filed by Plaintiff. Def.'s Req. for Jud. Not. 3–4, ECF No. 11. All 32 of Plaintiff's lawsuits are or were putative class actions. Six of these actions are currently pending or stayed. The remaining 26 cases have all been dismissed as a result of a voluntary or stipulated dismissal. In every one of those dismissals, Plaintiff failed to prosecute the case to a Rule 23 certification and accomplish anything for the class. For the same reasons cited in *Wuest,* the Court recommends that the class claims be stricken because Plaintiff would fail to adequately represent the class's interests.

## III. Leave to Amend Should Not Be Granted

A court has discretion to deny leave to amend "when amendment would be futile, when it would cause undue prejudice to the defendant, or when it is sought in bad faith." *Chappel v. Lab'y Corp. of Am.*, 232 F.3d 719, 725–26 (9th Cir. 2000) (citing *Bowles v. Reade*, 198 F.3d 752, 757 (9th Cir. 1999)).

Here, the Court finds that granting leave to amend would be futile as no amendment would allow Plaintiff to allege facts sufficient to save his claims in light of the text message communications included in the FAC and the Attentive Call Log. The text messages from Plaintiff, which only came to light after Defendant filed a declaration in response to the original complaint, show that Plaintiff cannot state a claim that the messages from Defendant were unwanted. Plaintiff also cannot change the nature of the FCC's caller identification requirement, which the Court finds is inapplicable to text messages.

Additionally, despite Plaintiff having extensive experience litigating TCPA claims, including Do Not Call Registry claims, he has not alleged that he registered his 503- number on the Do Not Call Registry. In its first motion to dismiss, Defendant put Plaintiff on notice of this deficiency with a heading that read "the First Cause of Action Fails Because Plaintiff Does Not Allege that He Registered His Phone Number on the National DNC Registry." Def.'s Mot. to Dismiss 23, ECF No. 10. When given an opportunity to address this deficiency in his amended complaint and plead that he placed his 503 number on the Do Not Call Registry, Plaintiff did not. Allowing another opportunity to amend the complaint to cure these defects would only open the door to bad faith, shifting pleadings. Leave to amend need not be granted if, as amended, the complaint will remain subject to dismissal. *Reinbold v. Alaska Airlines, Inc.,* No. 25-901, 2026 WL 1416375, at *2 (9th Cir. May 20, 2026). Plaintiff had two opportunities to allege the facts necessary to state a claim, and both times he failed to do so.

Furthermore, the Attentive Call Log shows that Plaintiff manifested consent for Defendant's texts. This alone defeats both his Do Not Call Registry claim and his "internal do not call" claims. Indeed, in messages undisclosed in his OC, he literally *thanked* the Defendant for its messages. FAC, Ex. 1. Plaintiff thus induced Defendant to send the very texts that then formed the basis of his TCPA claims, wherein he alleged the text messages were "unwanted." FAC ¶ 55.

Plaintiff and his counsel are experienced in TCPA litigation. And Plaintiff now acknowledges that he had in his control the complete text exchange between him and Defendant. FAC ¶ 23. Plaintiff knew or should know that if his messages came to light, they would dramatically undermine the OC's factual narrative. Despite the existence of earlier texts, the timeline in Plaintiff's OC starts in late 2025, omitting any mention of communication in 2024.

Plaintiff pled his complaint with an anonymized "XXX-XXXX" phone number. Plaintiff knew that Defendant's records indicated it was texting "Joseph." Pl.'s Resp. to Def.'s Mot. 33. Yet the Defendant's text messages that Plaintiff selectively chose to provide in his OC were none of the ones which included "Joseph" in the message (which could have allowed Defendant and its third-party vendor to more easily ascertain Plaintiff's identity and discovery the complete text history). OC ¶ 32; *contrast with* FAC, Ex. 1. And then Plaintiff declined to allow Defendant additional time to work with its third-party vendor to obtain the full exchange between the parties.

The facts, taken together, suggest an effort on Plaintiff's part to hide his messages because they reveal that he not only consented to Defendant's text messages, but he also provoked them. And Plaintiff now implausibly blames his phone's auto-population feature for his text messages, including those with typos. Plaintiff's gamesmanship should not be rewarded with a third bite of the apple and yet another opportunity to amend his deficient TCPA complaint.

**RECOMMENDATION**

For the reasons discussed above, the Court recommends that Defendant's motion to dismiss be GRANTED, and that the Plaintiff not be given leave to amend.

If Defendant's motion to dismiss is denied, the Court recommends that Plaintiff's class allegations be STRICKEN.

**SCHEDULING ORDER**

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due fourteen (14) days from service of the Findings and Recommendation. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

A party's failure to timely file objections to any of these findings will be considered a waiver of that party's right to de novo consideration of the factual issues addressed herein and will constitute a waiver of the party's right to review of the findings of fact in any order or judgment entered by a district judge. These Findings and Recommendation are not immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment.

DATED this 19th day of November 2026.

/s/Amy E. Potter
AMY E. POTTER
United States Magistrate Judge